Daniel W. Bower, ISB #7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
Facsimile: (208) 345-4461
dbower@morrisbowerhaws.com

Monte Neil Stewart, ISB #8129
11000 Cherwell Court
Las Vegas, Nevada 89144
monteneilstewart@gmail.com

*Attorneys for Proposed Intervenors-Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>        Defendant. | Case No. 1:22-cv-00329-BLW<br><br>**MEMORANDUM IN SUPPORT OF IDAHO LEGISLATURE'S MOTION TO INTERVENE** |

## I Factual Background: The Idaho Legislature and Its Abortion Laws.

*A. Legislative Action*

 In enacting the 622 Statute and Idaho's other abortion laws, the Legislature acted

on its now-vindicated expectation that the day would soon come when the regulation of

abortion, with all its great moral and political questions, would be returned to the people and their elected legislators for resolution.

In its 2020 session, the Legislature enacted the 622 Statute. When it becomes effective, it will constitute Idaho's comprehensive regulation of abortion. That Statute allows for certain abortions that meet guidelines governing cases of medical emergency, rape, or incest and prohibits all other abortions. Enforcement is by executive-branch action through the criminal justice system and through the licensing system governing health care providers in this State. Although expressing the strongly held values and traditions of Idaho and its people relative to abortion, the 622 Statute was not to become effective until the United States Supreme Court returned regulation of abortion to the respective States' legislatures and their people, this delay being in deference to the federal constitution's Supremacy Clause and related principles of our federalism. *Dobbs v. Jackson Women's Health Org.*, —— U.S. ——, 142 S. Ct. 2228 (June 24, 2022), "triggered" the Statute's effective date, August 25, 2022.

In its 2021 session, the Legislature enacted Idaho's Fetal Heartbeat Preborn Child Protection Act, now codified at Idaho Code Title 18, Chapter 88 ("Heartbeat Act"). The Heartbeat Act allows more and prohibits fewer abortions than does the 622 Statute. For one thing, it does not subject to any enforcement mechanism abortions performed before detection of a fetal heartbeat. For another thing, the Heartbeat Act has a broader definition of "medical emergency" than does the 622 Statute. The Legislature made that definition broader by adding language reflecting language in the federal Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). *Compare* Idaho Code 18-

8801(5) (defining "medical emergency" in part to mean a "condition … for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function") *with* EMTALA, § 1395dd § (1)(A) (defining "emergency medical condition" to mean in part a condition that "could reasonably be expected to result in-- . . . "(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part").

In that 2021 session, the Legislature provided for enforcement of the Heartbeat Act by executive-branch action through the criminal justice system and through the licensing system governing health care providers in this State. The Heartbeat Act was not to become effective until a federal appellate court upheld against federal constitutional challenge another State's fetal heartbeat act similar to Idaho's, with this delay again being in deference to the federal constitution's Supremacy Clause and related principles of our federalism. By upholding on July 20, 2022, Georgia's fetal heartbeat act, the Eleventh Circuit with *SisterSong Women of Color Reprod. Just. Collective v. Governor of Georgia*, 40 F.4th 1320 (11th Cir. 2022), "triggered" the Heartbeat Act's effective date, August 19, 2022.

In its 2022 session, the Legislature amended the Heartbeat Act by adding to it, through Senate Bills 1309 and 1358, provisions for additional enforcement by a private cause-of-action, that is, by private attorneys' general ("2022 Amendments"; now codified in material part at Idaho Code § 18-8807). The effective date for these private enforcement provisions was April 22, 2022, meaning that, from that date until the "triggering" of the

Heartbeat Act's other enforcement provisions, the private cause of action would be the Act's exclusive enforcement mechanism.[1]

## B. Planned Parenthood Litigation

(All dates hereafter are in 2022.) With enforcement of the Heartbeat Act set to begin on April 22, by way of the private cause-of-action, Planned Parenthood and one of its doctors filed on March 30, a petition with the Idaho Supreme Court ("Court"), invoking its original jurisdiction, seeking a declaration that the 2022 Amendments were unconstitutional in their entirety under (and only under) the Idaho constitution, and asking for a stay of implementation of those Amendments. The only Respondent at that time was the State of Idaho, represented by the Idaho Attorney General's Office. In that early going, specifically, on April 8, the Court, as part of a broader order, stayed implementation of the 2022

---

[1] The 2022 Amendments prohibited anyone acting under color of state law from participating in any way in such a private civil action, this with the purpose of precluding any state or federal constitutional challenge to the Heartbeat Act in federal court, while preserving judicial review of the Act's state and federal constitutionality in state court. In this way, the 2022 Amendments well (indeed, in the only way possible) advance Idaho's important and legitimate interest in having the Idaho Supreme Court, either initially (through original jurisdiction) or ultimately (through appellate jurisdiction), rather than the court of a different sovereign, interpret the Heartbeat Act and determine its validity under the Idaho constitution.

Idaho indeed has a legitimate and powerful interest in seeing its laws interpreted by its own courts, especially its Supreme Court, in important part because of the unparalleled expertise of its Supreme Court in the interpretation and application of state law and in equally important part because the Idaho Supreme Court's interpretation becomes not just advisory but binding on all federal courts dealing with the law thereafter. The Legislature has sensibly determined that the Idaho Supreme Court, which is deeply embedded in and perceptive of not just the laws of this State but its society, culture, and people, is a superior forum for understanding, appreciating, and adjudicating Idaho's constitution and statutes. In so advancing those important and legitimate state interests, the Legislature did not do so out of enmity towards or a disparaging view of the federal judiciary; indeed, it has expressly acknowledged that under our federalism, federal judges perform vital and noble work. But as many of those judges themselves would readily acknowledge, when it comes to understanding and interpreting Idaho's constitution and statutes, the Idaho Supreme Court is the superior forum.

Amendments.[2] (Because Planned Parenthood has now filed three petitions with the Court, we hereafter refer to the proceeding initiated by the first petition as the "First Case.")

On April 14, the Legislature petitioned the Court for leave to intervene, this at a time before the Intervention Statute was effective.[3] The Court granted that leave, and the Legislature timely filed its brief on the merits and its subsequent brief on certain procedural issues. On August 3, the Court held a hearing on the procedural issues, and counsel for the Legislature and the Attorney General's Office divided equally the Respondents' allotted time.

The First Case is fully briefed on the merits, and the parties are waiting to see whether the Court will require oral argument before ruling.

With *Dobbs* being decided on June 24, Planned Parenthood filed its second petition on June 27, again invoking the Court's original jurisdiction, seeking a declaration that the entirety of the 622 Statute violates the Idaho constitution, and asking for an immediate stay of its implementation ("Second Case"). The original Respondents were various executive-branch officers, county prosecutors, and licensing boards, all represented by the Idaho Attorney General's Office. Citing the Intervention Statute, the Legislature moved to intervene on July 28, and on August 2, the Court granted that motion. Thus, the next day, the Legislature's counsel also argued important aspects of the 622 Statute before the Court.

---

[2] In relevant part, the order read: "The parties having both requested action by this Court to preserve the status quo to give the parties the ability to adequately brief this case, pursuant to l.A.R. 13(g) the implementation of Senate Bill 1309 is STAYED, pending further action by this Court."
[3] Its effective date was July 1.

With *SisterSong* being decided on July 20, Planned Parenthood filed its third petition on July 25, again invoking the Court's original jurisdiction, seeking a declaration that the rest of the Heartbeat Act, that is, the criminal and licensing enforcement provisions, violate the Idaho constitution, and asking for an immediate stay of their implementation ("Third Case"). The original Respondents were the same as in the Second Case, and again all are represented by the Idaho Attorney General's Office. Citing the Intervention Statute, the Legislature moved to intervene on July 28, and on August 2, the Court granted that motion.

The Clerk of the Idaho Supreme Court has provided online at https://coi.isc.idaho.gov/ all filings in the First Case (# 49615-2022), the Second Case ( # 49817-2022), and the Third Case (# 49899-2022).

\* \* \* \* \* \* \* \* \* \*

We recite these facts about legislative activity and the Planned Parenthood litigation in important part to demonstrate that the Legislature is well suited, and in some respects uniquely well suited, to illuminate the entire legal and factual setting of the United States' challenge to the 622 Statute and thereby to aid this Court in its resolution of that challenge. It is fair to say that no other entity or individual has been as immersed in and centrally involved with that legal and factual setting as the Legislature. It is thus likewise fair to say that the Legislature both has important interests at stake in this civil action and the

motivation and resources to best defend those interests—all in a way making for the just and speedy resolution of this civil action.[4]

\* \* \* \* \* \* \* \* \* \*

The following section, Section II, explains how Federal Rule of Civil Procedure 24(a)(2), as interpreted and applied by *Berger v. N.C. State Conf. of the NAACP*, --U.S.--, 142 S. Ct. 2191 (2022), requires a holding that the Legislature may intervene in this civil action as a matter of right.

Section III demonstrates that the Legislature satisfies all guidelines under Federal Rule 24(b) for permissive intervention.

Section IV shows that, at the very least, this Court should allow the Legislature to brief the United States' preliminary injunction motion and participate in the August 22 hearing on it.

## II Federal Rule of Civil Procedure 24(a)(2), as interpreted and applied by *Berger*, requires a holding that the Legislature may intervene in this civil action as a matter of right.

In relevant part, Federal Rule of Civil Procedure 24(a)(2) provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
….
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[4] See Federal Rule of Civil Procedure 1.

In a case with procedural facts and circumstances the same as this case, the United States Supreme Court recently held that under Federal Rule of Civil Procedure 24(a)(2), a state legislature could intervene as a matter of right. *Berger v. N.C. State Conf. of the NAACP*, --U.S.--, 142 S. Ct. 2191 (2022) (8-1 decision).

In *Berger*, a civil rights organization filed suit in federal district court, challenging the constitutionality of North Carolina's recently enacted "voter ID" law and naming as the defendants the Governor and the North Carolina Elections Board, both represented by the State's Attorney General.

A North Carolina statute similar to the Intervention Statute gives that State's legislature a right to intervene when any statute is challenged in federal or state court.[5] This statute specifies that the Speaker of the House of Representatives and the President Pro Tempore of the Senate, "as agents of the State, by and through counsel of their choice, including private counsel," are the ones "to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution."[6] Invoking that statute and F.R.C.P. 24, the North Carolina legislature sought to intervene by right and, in the alternative, by permission.

The federal district court denied intervention, and the Fourth Circuit affirmed. *Berger, supra,* at 2199-2200. Both courts applied a presumption that the Legislature's interests were adequately represented by the Attorney General. *Id.*

---

[5] North Carolina Gen. Stat. § 1-72.2.

[6] *Id.*

The United States Supreme Court reversed, holding that the North Carolina legislative leaders could intervene as a matter of right because they met all three of the factors listed in F.R.C.P. 24(a)(2)—that the court must "permit anyone to intervene who, (1) on timely motion, (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, (3) unless existing parties adequately represent that interest." *Id.* at 2200-01.

Timeliness was not an issue; the Supreme Court addressed the second and third factors. It focused "first on the question whether the legislative leaders have claimed an interest in the resolution of this lawsuit that may be practically impaired or impeded without their participation." *Id.* at 2201. The Supreme Court then set forth three indisputable realities: (1) The "States possess 'a legitimate interest in the continued enforce[ment] of [their] own statutes.'" (2) "States may organize themselves in a variety of ways." (3) "[W]hen a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." *Id.* It then went on to hold that

> Appropriate respect for these realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law. To hold otherwise would not only evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials. It would not only risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests. It would encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court. It would tempt litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle

favorably and quickly. All of which would risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments.

*Id.*

This holding was reinforced by "important national interests" and "many, clear, and recent" Supreme Court precedents. *Id.* at 2201–2202.

The Supreme Court then concluded that "[t]hese principles and precedents are dispositive here," rejected contrary arguments from the plaintiff and the Attorney General, and ruled in favor of the Legislature on Rule 24(a)(2)'s second factor. *Id.* at 2202–2203.

The Supreme Court then turned to the last issue, adequacy of representation. It noted that the lower federal courts had applied a variety of tests on this issue, generally, ones making it difficult for intervenors to meet the adequacy-of-representation requirement, such as the presumption relied on by the district and circuit courts in *Berger*. The Supreme Court disagreed with these tests, noting that "Rule 24(a)(2) *promises intervention* to those who bear an interest that may be practically impaired or impeded 'unless existing parties adequately represent that interest' … that "this Court has described the Rule's test as presenting proposed intervenors with only a *minimal challenge*." (*Id*. at 2203 (emphasis added). Accordingly, the Supreme Court ruled that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 2204. After all, "[f]or a federal court to presume a full overlap of interests *when state law more nearly presumes the opposite* would make little sense and do much violence to our system of cooperative federalism." *Id.*

After reviewing the particular facts in *Berger*, the Supreme Court concluded that the requisite *minimal* difference among the state actors in perspectives and therefore interests was present and, on that basis, ruled in favor by the Legislature. *Id*. at 2204–2206. In doing so, it rejected suggestions of possible problems with case management, finding them untenable. *Id*. at 2205–2206.

The Supreme Court's conclusion merits attention:

> Through the General Assembly, the people of North Carolina have authorized the leaders of their legislature to defend duly enacted state statutes against constitutional challenge. Ordinarily, a federal court must respect that kind of sovereign choice, not assemble presumptions against it. Having satisfied the terms of Federal Rule of Civil Procedure 24(a)(2), North Carolina's legislative leaders are entitled to intervene in this litigation.

*Id*. at 2206. And because it underscores the *minimal* nature of *Berger's* adequacy-of-representation standard, this language of Justice Sotomayor's sole dissent also merits attention:

> [T]he Court holds that two leaders of the North Carolina General Assembly are entitled to intervene as a matter of right to represent the State's interest in defending the constitutionality of North Carolina law, even though that interest is already being ably pursued on the State's behalf by an existing state party to the litigation.

*Id*.

With respect to defense of Idaho's abortion laws, the adequacy-of-representation issue must likewise be resolved in favor of intervention. The perspectives of Idaho's executive branch, represented by the Idaho Attorney General's Office, diverge from those of the Legislature and its legal team enough to satisfy *Berger's* minimal standard. That

divergence is unavoidable given the many strategic decisions and judgment calls that complex litigation like this calls for.

In the Planned Parenthood litigation, for example, the Legislature refused to endorse the Attorney General's Office's decision to argue against the Idaho Supreme Court's original jurisdiction and make that argument paramount. Indeed, the Legislature told the Court that, "[b]ecause we believe that the Court will be the court providing the final word on the issues presented here, and because we desire an expeditious final resolution of those issues, we will not be displeased if this Court holds that it does have jurisdiction."[7] (That "not displeased" term illuminates the tight-rope that the Legislature as a practical and political matter must walk without, on one side, unduly underscoring its interests and perspectives differing from those of its titular ally, the Attorney General's Office, and, on the other side, inadequately advocating for those interests and perspectives. The Legislature has and will continue to walk that walk, always adequately advocating for its own differing interests and perspectives.)

Then, at the August 3rd hearing before the Court, the Attorney General's Office focused on both its objection to original jurisdiction and some particular defenses of the 622 Statue, while the Legislature's counsel twice told the Court: "The Legislature's

---

[7] Brief of the Idaho Legislature at 5–6 n.6 filed April 28, 2022 in the First Case; available at https://coi.isc.idaho.gov/.

paramount interest is in the termination now of the stay of implementation of the Heartbeat Act."[8] One justice of the Court expressly questioned that divergence.[9]

In this case, the Legislature has a unique interest in an important issue of fact—the extent to which, if at all, Idaho emergency-room abortions occurred in this State under the now de-legitimized *Roe/Casey* abortion regime. In the Legislature's unique judgment, that issue of fact has a material role relative to the question of injunctive relief.

Further, based on past experience, it seems highly likely that the Legislature will have unique perspectives and interests relative to negotiation of stipulated injunctive language. That matters exactly because most cases of this type in the end are resolved in that fashion. That fact still obtains here even though the Legislature presently believes that the United States has no adequate grounds for injunctive relief, either preliminarily or permanently.

Finally, the Legislature's unique experience with Idaho's abortion laws, set forth in Section I above, assures that it will have unique interests and perspectives on key procedural and substantive issues bound to arise in a case of this type. (This case is still in its earliest, albeit crucial, phase.) It could not be otherwise. The Planned Parenthood litigation has demonstrated that pattern of difference and divergence on the Respondents' side again and again and will undoubtedly continue to do so.

To hold that the Legislature has not met here the minimal *Berger* standard is to ignore and rule contrary to that decision. To paraphrase only slightly, through their

---

[8] Notes and recollection of the Legislature's counsel.

[9] *Id.*

Legislature, the people of Idaho have authorized the leaders of their Legislature and their

Legislature itself to defend duly enacted state statutes against constitutional challenge. A

federal court *must* respect that kind of sovereign choice, not assemble arguments or reasons

against it. Having satisfied the terms of Federal Rule of Civil Procedure 24(a)(2), the Idaho

Legislature and its leaders are entitled to intervene in this litigation.

## III The Legislature has satisfied F.R.C.P. 24(b)'s provisions and standards for permissive intervention.

F.R.C.P. Rule 24(b) provides:

> **(b) Permissive Intervention.**
> **(1)** *In General.* On timely motion, the court may permit anyone to intervene who:
> **(A)** is given a conditional right to intervene by a federal statute; or
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.
> **(2)** *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
> **(A)** a statute or executive order administered by the officer or agency; or
> **(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order.
> **(3)** *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

As to the first requirement, a timely motion, "[t]imeliness is determined

with reference to three factors: (1) the stage of the proceeding at which an applicant

seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the

delay. . . . Under our longstanding precedent, [a] party seeking to intervene  must act as

soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."[10]

The Legislature has satisfied the timeliness requirement here. The United States filed its Complaint on Tuesday, August 2. On Friday, August 5, the Attorney General advised the Legislature of the status conference held that same day in this case and of the filing deadlines coming out of that conference, with the first being Monday, August 8, for the filing of the United States' motion for a preliminary injunction. The next business day, Monday, August 8, the Legislature filed this Motion to Intervene. Consequently, timeliness is not an issue under any approach or standard.

The "common question of law or fact" requirement is likewise not an issue here. As shown by the Legislature's proposed Answer attached as Exhibit A, the Legislature will be engaging the entirety of the United States' Complaint with a number of defenses, some of which will undoubtedly be in common with the Attorney General's Office's Answer once filed.

That leaves the question "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." F.R.C.P. 24(b)(3). Delay is not an issue here; the Legislature is willing and able to, and will, meet all deadlines set by this Court and/or by the parties by stipulation. As shown in the Planned Parenthood litigation, a preeminent interest of the Legislature is in the quick, even expedited, resolution of the

---

[10] Peruta v. Cty. of San Diego, 771 F.3d 570, 572 (9th Cir. 2014) (citations and internal quote marks omitted).

various challenges to its abortion laws. And the Legislature's legal team has the resources needed to avoid causing any delays.

As to prejudice, we can think of nothing that the Legislature's party status may do to prejudice either the United States or Idaho's executive branch. The fact that an intervening party may bring skilled, zealous advocacy and deep expertise in the subject matter to a case cannot qualify as prejudice, especially where all the original parties are public entities whose preeminent interest must be justice, not mere winning.

It is considerations such as these that recently led a federal district court in *Priorities USA v. Benson*, 448 F. Supp. 3d 755 (E.D. Mich. 2020), to grant permissive intervention to Michigan's legislature to defend its statute. In *Priorities USA*, the Legislature sought to intervene in a lawsuit challenging its absentee-ballot voting laws. *Id.* at 758. The Legislature moved to intervene in a timely manner—before the original defendant (Michigan's secretary of state) even responded and thus before the litigation could get into full swing. *Id*. at 763. The court noted that the Plaintiff "filed this lawsuit on October 30, 2019 and the Legislature moved to intervene on November 27, 2019, a mere twenty business days later (nineteen, accounting for the effect of Veterans' Day). It is difficult to imagine a more timely intervention." *Id.*

The court found that there was a common question of law or fact in the Legislature's interest in protecting its laws. *Id*. Importantly, the Court pointed out that as a "separate and coequal branch of government" to the executive, the Legislature also had an interest in defending the state's statutes, stating that "[a]lthough the Executive Branch, represented by Defendant, is tasked with enforcing the law and providing the primary defense against

lawsuits directed at the State, the Legislature has an interest in the preservation and constitutionality of the laws governing the State." *Id.* at 764. Furthermore, the outcome of the lawsuit could affect the Legislature and its makeup—a matter of interest to the Legislature. *Id.* The court found that these considerations constituted a common question of law or fact. *Id.* at 765.

Finally, because the Legislature was "not attempting to inject wholly unseen, unnecessary, or irrelevant issues" into the litigation, and it moved to intervene early in the litigation, the court found that the Legislature's intervention would not cause undue delay or prejudice to the original parties. *Id.*[11] "The court finds that Plaintiffs will not be unfairly prejudiced in having a motivated opponent that is willing to contest this case's important legal questions. Defendant, again, offers no dispute about the Legislature's entry into the case." *Id.* Based on these considerations, the court granted permissive intervention to the Legislature.

---

[11] The court expressed this helpful insight:

> [T]he Legislature attempts no more than to become a defendant and litigate the claims Plaintiffs have currently presented. It may be true that adding another party would add time and energy, for example requiring additional deposition questions or additional briefing on some motions. It may also be true that the Legislature could add different, and potentially successful, defenses to the signature matching laws during the course of litigation. However, expending such additional energy is not a waste, and appears to the court's satisfaction as important to effectuate the Legislature's purpose, providing a vigorous defense to Michigan's election laws. If there are costs or inefficiencies in the process, the court finds them worthwhile.

*Id.* at 765.

Again, a close paraphrase is appropriate: This Court should find that neither the United States nor the original defendants will be unfairly prejudiced in having a motivated opponent that is willing to contest this case's important legal questions.

In light of the foregoing, the Legislature respectfully urges this Court to grant it Rule 24(b) leave to intervene.

## IV At the very least, this Court should allow the Legislature to file an *amicus curiae* brief regarding, and participate in the hearing on, the United States' motion for preliminary injunction.

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 1:15-CV-1191, 2017 WL 11454764, at *1 (W.D. Mich. Oct. 30, 2017), sets for well the governing standard:

> A federal district court has broad discretion to allow the participation of *amici curiae* in a case. . . . The Federal Rules of Civil Procedure do not address motions for leave to appear as amicus curiae in a federal district court, . . . and the decision to allow an appearance as *amicus curiae* falls under the district court's inherent authority . . . . When making such a decision to permit or deny *amicus* status, courts have considered a variety of factors, including the opposition of the parties, interest of the movants, partisanship, and adequacy of representation. . . . District courts focus on both the usefulness of the brief and the timeliness of the brief. (Citations omitted.)

The facts set forth in the prior Sections of this Memorandum satisfy these guidelines. The Legislature will meet the same filing deadline of August 19, facing the Attorney General's Office. There is no need to belabor these points.

## V Conclusion.

In light of all the foregoing, the Legislature respectfully urges that this Court grant its Rule 24(a)(2) motion to intervene as of right, with the Legislature then becoming subject to all scheduling and deadlines already set in this case.

In the event this Court denies that motion, it should grant the Legislature's Rule 24(b) motion to intervene by permission, with the same proviso regarding deadlines.

In the event this Court refuses intervention, it should allow the Legislature to file an *amicus curiae* brief by August 19 and participate in the August 22 hearing. The Legislature says this, however, viewing such allowance as wholly inadequate to bring about the just resolution of this civil action. Intervention is the right and only adequate ruling.

Dated this 8th day of August, 2022.

MORRIS BOWER & HAWS PLLC

By:  */s/ Daniel W. Bower*
        Daniel W. Bower

*/s/ Monte Neil Stewart*
Monte Neil Stewart

*Attorneys for Proposed Intervenors-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Brian David Netter
DOJ-Civ
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530

☐ U.S. Mail
☐ Hand Delivered
☐ Facsimile:
☒ ECF Email: brian.netter@usdoj.gov

*Attorneys for Plaintiff*

Daniel Schwei
DOJ-Civ
Federal Programs Branch
1100 L Street, N.W., Ste. 11532
Washington, D.C. 20530

☐ U.S. Mail
☐ Hand Delivered
☐ Facsimile:
☒ ECF Email: daniel.s.schwei@usdoj.gov

*Attorneys for Plaintiff*

Julie Straus Harris
DOJ-Civ
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530

☐ U.S. Mail
☐ Hand Delivered
☐ Facsimile:
☒ ECF Email: julie.strausharris@usdoj.gov

*Attorneys for Plaintiff*

Lisa Newman
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005

☐ U.S. Mail
☐ Hand Delivered
☐ Facsimile:
☒ ECF Email: lisa.n.newman@usdoj.gov

*Attorneys for Plaintiff*

Anna Lynn Deffebach
DOJ-Civ
Civil Division, Federal Programs Branch
1100 L Street, N.W., Ste. 12104
Washington, D.C. 20005

☐ U.S. Mail
☐ Hand Delivered
☐ Facsimile:
☒ ECF Email: anna.l.deffebach@usdoj.gov

*Attorneys for Plaintiff*

Christopher A. Eiswerth                ☐   U.S. Mail
DOJ-Civ                                ☐   Hand Delivered
Federal Programs Branch                ☐   Facsimile:
1100 L Street, N.W., Ste. 12310        ☒   ECF Email:
Washington, D.C. 20005                     christopher.a.eiswerth@usdoj.gov

*Attorneys for Plaintiff*

Emily Nestler                          ☐   U.S. Mail
DOJ-Civ                                ☐   Hand Delivered
1100 L Street                          ☐   Facsimile:
Washington, D.C. 20005                 ☒   ECF Email: emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff*

Lawrence G. Wasden                     ☐   U.S. Mail
Attorney General                       ☐   Hand Delivered
                                       ☐   Facsimile: (208) 334-2400
Steven L. Olsen                        ☒   ECF Email:  steven.olsen@ag.idaho.gov
Chief of Civil Litigation                                megan.larrondo@ag.idaho.gov
Megan A. Larrondo                                         dayton.reed@ag.idaho.gov
Dayton P. Reed                                           ingrid.batey@ag.idaho.gov
Ingrid C. Batey
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010

*Attorneys for Defendant*


                                 */s/ Daniel W. Bower*
                                _____
                                 Daniel W. Bower