# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>    Defendant. | Case No. 1:22-cv-329<br><br>**DECLARATION OF<br>KYLIE COOPER, M.D.** |

## DECLARATION OF KYLIE COOPER, M.D. IN SUPPORT OF THE UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION

I, Kylie Cooper, being first duly sworn under oath, state and depose upon personal knowledge as follows:

1.  I am a double board-certified Obstetrician-Gynecologist ("Ob-Gyn") and Maternal-Fetal Medicine ("MFM") physician at St. Luke's Regional Medical Center in Boise, Idaho. In that capacity, I specialize in high-risk obstetrics. I submit this declaration in support of the Motion for Preliminary Injunction filed by the United States in the above-captioned matter. Unless otherwise stated, the facts set forth herein are true of my own personal knowledge, and if called as a witness to testify in this matter, I could and would testify competently thereto.

2.  I graduated from the University of Iowa Carver College of Medicine and subsequently completed my residency in Obstetrics and Gynecology at the University of Vermont. Following residency, I completed my Maternal-Fetal Medicine Fellowship at the University of Vermont. I am the current vice chair of the Idaho section of the American College of Obstetricians and Gynecologists (ACOG). I am teaching faculty for the Primary Care Obstetrics Fellowship with

1

Full Circle Health Family Medicine Residency which is a program to train family medicine physicians in obstetrical care to be used in their rural practice settings. This is particularly important given that there are no residency programs in OB/Gyn in Idaho. I also serve as an advisory board member for the Idaho Perinatal Project. My professional memberships include ACOG, the Society of Maternal-Fetal Medicine, and the Idaho Medical Association.

3.      I came to Idaho specifically for my job as a maternal-fetal medicine physician at St. Luke's Regional Medical Center. As I was interviewing for MFM positions around the country it was clear that Idaho had a great need for high-risk obstetricians given the growing population and multitude of health conditions and pregnancy complications, such as obesity which impacts pregnancy in a multitude of ways. Additionally, there were very few female MFM physicians in Idaho, and I wanted to provide high quality and compassionate care to Idahoan families.

**Idaho Code § 18-622 and the Impact on Providers and Patients**

4.      Over the course of my seven-year career as a practicing Ob-Gyn, I have treated thousands of pregnant women and delivered innumerable babies.

5.      Pregnancy is not always straight forward and complication free.  As an MFM physician my goal is to achieve the healthiest outcomes possible for my patients; however, there are many situations where pregnancy termination is the medically indicated treatment and is in the best interest of the patient's health and life.  I will describe several recent examples of patients whom I have treated, which illustrate some circumstances that make it medically necessary to terminate a pregnancy.  These cases occurred between September 2021 and June 2022.

**Jane Doe 1**

6.      Jane Doe 1 presented to the emergency department at 15 weeks gestation feeling unwell and was found to have severe range blood pressures. Her fetus had recently been diagnosed

with triploidy, a chromosomal abnormality with an entire extra set of chromosomes leading to multiple severe birth defects and though there was a fetal heartbeat, this condition was not compatible with life. Fetal triploidy carries an increased risk of development of preeclampsia in the mother. She was admitted to the hospital with persistent stroke range blood pressures requiring high dose antihypertensive therapy and magnesium to reduce her risk for seizures. A diagnosis of preeclampsia with severe features was made. The only cure for preeclampsia is to end a pregnancy either by delivery of the neonate if after viability or by termination of pregnancy if pre-viable. The medical treatment for preeclampsia with severe features in patients who are at a previable gestational age is termination of pregnancy. Given her severe illness placing her at risk for stroke, seizure, pulmonary edema, development of HELLP syndrome (hemolysis, elevated liver enzymes, and low platelets), urgent termination of pregnancy was the recommended treatment to stop her disease progression to preserve her health and life.

7.     The only medically acceptable action to preserve her health and life was termination of the pregnancy.

### Jane Doe 2

8.     Jane Doe 2 presented to the emergency room at 20 weeks gestation with acute and progressive right upper abdominal pain requiring intravenous narcotics. Her pregnancy was complicated by a recent diagnosis of severe intrauterine growth restriction and though there was a fetal heartbeat, there was abnormal amniotic fluid level and abnormal umbilical cord blood flow portending a poor prognosis. She was found to have elevated blood pressures and lab abnormalities consistent with a diagnosis of HELLP syndrome. Her labs quickly deteriorated as would be expected with HELLP syndrome. Her platelets were dropping so quickly she required a platelet transfusion; she had evidence of hemolysis and concern for liver injury based on rising liver

enzymes and upper abdominal pain. HELLP syndrome placed her at risk for Disseminated Intravascular Coagulation (DIC) which is a life-threatening emergency related to the body's inappropriate consumption of blood-clotting factors leading to systemic bleeding, liver hemorrhage and failure, kidney failure, stroke, seizure, pulmonary edema. The only cure is to end a pregnancy either by delivery of the neonate if after viability or by termination of pregnancy if pre-viable. In the setting of pre-viable HELLP syndrome, urgent termination of pregnancy is the necessary treatment to stop her disease progression to preserve her health and life.

9.      The only medically acceptable action to preserve her health and life was termination of the pregnancy.

### Jane Doe 3

10.     Jane Doe 3 presented to the emergency room at 15 weeks gestation with acute onset severe abdominal pain. She was noted to be hypertensive and lab abnormalities were consistent with a diagnosis of HELLP syndrome.  Additionally, fetal and placental ultrasound was concerning for anomalies most consistent with fetal triploidy, a lethal fetal condition. Her abdominal pain and rapidly rising liver enzymes were indicative of liver injury, and her platelets were declining rapidly. In the setting of pre-viable HELLP syndrome she was at risk for DIC, liver hemorrhage and failure, kidney failure, stroke, seizure, pulmonary edema. The medically necessary treatment to stop her disease progression and protect her health and life was termination of pregnancy.

11.     The only medically acceptable action to preserve her health and life was to terminate the pregnancy.

12.     Prior to Idaho's trigger law, my medical training and judgment allowed me to promptly identify what the appropriate standard of care treatment was for these patients.  I was

4

able to expeditiously care for them in the appropriate manner to prevent long-term harm. The trigger law threatens to criminalize medically indicated termination of pregnancy. In the future, though I know what the appropriate medical treatment is for my patients, I would be hesitant to provide the necessary care due to the significant risk to my professional license, my livelihood, my personal security, and the well-being of my family.

I declare under penalty of perjury under the laws of the State of Idaho that the foregoing is to the best of my knowledge true and correct. Executed this 8th day of August 2022, in Boise, Idaho.


8/8/2022
Date

Kylie Cooper MD

5