# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-329-BLW |
| | ) | |
| v. | ) | |
| | ) | |
| The State of Idaho, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID R. WRIGHT

I, David R. Wright, of the Centers for Medicare & Medicaid Services ("CMS") declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the course of my official duties.

1. I am the Director of the Quality, Safety & Oversight Group ("QSOG") in the CMS Center for Clinical Standards & Quality ("CCSQ"), United States Department of Health and Human Services ("HHS").  QSOG provides guidance to state survey agencies and accrediting organizations that evaluate Medicare health and safety standards for providers on behalf of CMS.  One of these Medicare health and safety standards is the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd.

2. Hospitals apply to become Medicare-certified by completing a CMS Form 855, Medicare Enrollment Application (https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms855a.pdf).

3. Once the 855 form is submitted and approved, there is a certification process, designed to determine whether a hospital complies with the standards required by Federal law and

1

regulation, including Medicare Conditions of Participation ("CoPs").  42 C.F.R. pt. 482 and 2 C.F.R. pt. 485.

4. If approved for Medicare certification, the hospital receives a CMS Form 1561-Health Insurance Benefit Agreement, which is signed by both the hospital and CMS (on behalf of the Secretary of HHS).  https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1561.pdf.  The CMS Form 1561 states that "…the provider of services, agrees to conform to the provisions of section 1866 of the Social Security Act and applicable provisions in 42 CFR," which includes EMTALA.

5. The hospital additionally submits an assurance of compliance with Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973 as amended.

6. Similar to the affirmations above, when a hospital submits its Medicare cost report following the completion of its fiscal years, the Chief Financial Officer or hospital Administrator must certify that he or she is "familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations," which include EMTALA. *See* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R3P240f.pdf

7. All of the attestations on these forms and reports discussed above—including the CMS Form 1561, the assurance of compliance with nondiscrimination laws, and the certification on the hospital's Medicare cost report—are essential to the functioning of the Medicare program. CMS reimburses providers only upon the understanding that those providers are complying with the statutes and regulations governing the program.

8. There are 52 Medicare-participating hospitals in Idaho.  39 of these hospitals filed claims with CMS for emergency room costs on their Medicare cost reports.

9. There are sixteen government-owned hospitals that participate in Medicare in Idaho. State Hospital South (Blackfoot, Idaho) is a psychiatric hospital owned by the State of Idaho. Additionally, Madison Memorial Hospital (Rexburg, Idaho), Kootenai Health (Coeur d'Alene, Idaho), Bear Lake Memorial Hospital (Montpelier, Idaho), Benewah Community Hospital (St.

Maries, Idaho), Caribou Medical Center (Soda Springs, Idaho), Cascade Medical Center (Cascade, Idaho), Lost Rivers Medical Center (Arco, Idaho), Minidoka Memorial Hospital (Rupert, Idaho), Nell J. Redfield Memorial Hospital (Malad, Idaho), Power County Hospital District (American Falls, Idaho), Shoshone Medical Center (Kellogg, Idaho), Steele Memorial Medical Center (Salmon, Idaho), Syringa General Hospital (Grangeville, Idaho), Valor Health (Emmett, Idaho), and Weiser Memorial Hospital (Weiser, Idaho) are county-owned hospitals. All of the above-listed hospitals, with the exception of State Hospital South, have filed cost reports that include emergency department costs.

10. Medicare participating hospitals must meet the requirements of the EMTALA statute enacted as Section 1867 of the Social Security Act (42 U.S.C. § 1395dd), the accompanying regulations in 42 CFR § 489.24, and the related requirements at 42 CFR § 489.20(l), (m), (q), and (r). EMTALA requires hospitals with emergency departments to provide an appropriate medical screening examination to any individual who comes to the emergency department and requests such an examination. And EMTALA prohibits hospitals with emergency departments from refusing to examine or treat individuals with an emergency medical condition. The term "hospital" includes critical access hospitals, which are typically smaller hospitals in rural communities that provide limited inpatient and outpatient services.

11. Some obligations under EMTALA apply only to Medicare-participating hospitals that have a dedicated emergency department, e.g., requirements related to providing a medical screening examination and any necessary stabilizing treatment. However, some EMTALA recipient hospital obligations, such as the obligation to provide stabilizing treatment, can also apply to Medicare-participating hospitals that do not have a dedicated emergency department, such as a hospital with specialized capabilities or facilities.

3

12. A hospital's EMTALA obligations apply both when a patient presents to the emergency department directly or by way of a transfer[1] from another medical provider. A Medicare-participating hospital that has specialized capabilities or facilities may not refuse to accept an appropriate transfer of an individual with an unstabilized emergency medical condition that requires such specialized capabilities or facilities. Hospitals with specialized capabilities or facilities may include, but are not limited to, hospitals with burn units, shock trauma units, neonatal intensive care units, or hospitals that are regional referral centers that serve rural areas as defined by the requirements at 42 CFR 412.96. This requirement to accept a transfer applies to any Medicare-participating hospital with specialized capabilities that has appropriate staff and facilities available to treat the condition, regardless of whether the hospital has a dedicated emergency department.

13. The goal of CMS' health and safety oversight is compliance with the Medicare CoPs and EMTALA, which themselves have the object of ensuring adequate care and advancing beneficiary and general patient health and safety. 42 CFR § 489.53(b) provides the basis for termination of a hospital's Medicare provider agreement for failure to comply with the requirements of EMTALA.

14. Through the passage of EMTALA, Congress obligated the Secretary of HHS to enforce the statute to protect any individual coming to the emergency department requesting examination or treatment for an emergency medical condition. As previously noted, CMS conditions the receipt of Medicare money, in part, on compliance with the EMTALA statute.

15. HHS cannot meet its Congressional EMTALA mandate if state law prohibits providers from providing the full range of care contemplated by the statute. Enforcing EMTALA aligns with the missions of HHS and CMS, of which protecting and promoting access to healthcare and emergency care are paramount.

---

[1] A Medicare-participating hospital's EMTALA obligations apply regardless of how a patient arrives at its emergency department. However, in cases where a patient has arrived at that hospital through an inappropriate transfer from another Medicare-providing hospital, the receiving facility should also report the inappropriate transfer to CMS. 42 U.S.C. §1395(d)(2)(B).

16.     EMTALA assists in protecting those objectives while requiring healthcare providers to render care to all individuals presenting to an emergency department that accepts Medicare funding, regardless of their medical condition, ability to pay for medical services, or directly conflicting state laws.

17.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of August, 2022 in Baltimore, Maryland.

David R. Wright -S
Digitally signed by David R. Wright -S
Date: 2022.08.08 16:09:29 -04'00'

David Wright
Director
Quality, Safety, and Oversight Group
Centers for Clinical Standards & Quality
Centers for Medicare & Medicaid Services
United States Department of Health and Human Services