Daniel W. Bower, ISB #7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
Facsimile: (208) 345-4461
dbower@morrisbowerhaws.com

Monte Neil Stewart, ISB #8129
11000 Cherwell Court
Las Vegas, Nevada 89144
monteneilstewart@gmail.com

*Attorneys for Proposed Intervenors-Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>Defendant. | Case No. 1:22-cv-00329-BLW<br><br>**THE IDAHO LEGISLATURE'S REPLY TO THE UNITED STATES' RESPONSE TO ITS MOTION TO INTERVENE [DKT. 15]** |

The Speaker of the Idaho House of Representatives Scott Bedke, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Sixth Idaho Legislature (collectively the "Legislature") respectfully submit this reply brief in support of their Motion to Intervene (Dkt. 15) and in response to the United State's Response to the Idaho Legislature's Motion to Intervene [Dkt. 23].

RESPONSIVE DISCUSSION

**Relevant Facts:  The Legislature's Unique Defense**

On Monday evening, August 8, 2022 (all dates hereinafter are 2022), the Legislature filed its Motion to Intervene (Dkt. 15)—just four business days after the Plaintiff ("Government") filed its Complaint (Dkt. 1) (and before the filing of any other document going to the merits of this case). The Motion to Intervene was filed just one business day after this Court ordered an expedited briefing and hearing schedule (Dkt 13). It was that expedited schedule—which the Legislature has committed to comply with—that caused the Legislature to act immediately with its Motion to Intervene.

At the time of that Motion's filing, the Legislature knew—based on its long history of legislating about abortion—that the Complaint's claim and especially its demand for injunctive relief was based on a false "factual" foundation. The falsehood is that "Relevant Abortions" were occurring in Idaho's Medicare-funded emergency rooms. Relevant Abortions are those emergency-room abortions that fall (i) *inside* the prohibition of abortion found in Idaho Code § 18-622 ("the 622 Statute") and (ii) *outside* the overlap between the 622 Statute's medical-emergency exception and EMTALA's medical-emergency mandate but still *inside* EMTALA's mandate.

Here is what that definition (first part) means in application. Ectopic "pregnancies" fall *outside* the 622 Statute's prohibition. That is the Legislature's clear understanding and intent, one shared by the executive branch. The Government probably believed as much when filing its Complaint (Dkt. 1). It says in relevant part: "Termination of an ectopic

pregnancy—which can never lead to a live birth and poses inherent danger to pregnant patients—is not considered an abortion by medical experts." *See* Complaint, p.7, n.1 (Dkt. 1). But, for reasons that will become clear in a moment, the Government chose to play the "reader-in-bad-faith" card with the 622 Statute: "However, the termination of an ectopic pregnancy appears to fall within Idaho's broad definition of abortion." *Id.* The Government then proceeded in its Complaint and its Motion for Preliminary Injunction and related papers on the basis that ectopic "pregnancies" fall *inside* the 622 Statute's prohibition. They do not. And, after all, it is Idaho's right, not the Government's, to define the scope of this State's laws.

Continuing with the second part of the definition: In their operation, there is an overlap as a matter of fact between the 622 Statute's medical-emergency exception and EMTALA's medical-emergency mandate. That overlap encompasses those medical emergencies where no informed and honest person, whether doctor or lawyer, can or will say that the abortion is not necessary to save the woman's life.

But theoretically, there are also medical cases that fall *outside* that overlap but still *inside* EMTALA's mandate. Those are the Relevant Abortions, and those are the only abortions, well, relevant to the Government's claim. That is because *only* when a Relevant Abortion case arises in the real world is there a real conflict between Congress's Spending Clause power and Idaho's regulatory power. No Relevant Abortions, no conflict. No conflict, no Article III case or controversy, only an invitation for an unconstitutional advisory opinion. And certainly, if no Relevant Abortions, no factual or legal basis for asking this Court to exercise its extraordinary equitable powers and tell a sovereign State

that it cannot enforce its own laws in full. After all, if there are no Relevant Abortions, the Government would be left saying: "We can't show that Relevant Abortions have been happening in Idaho, and therefore we have no basis for showing that they will in the future, but theoretically it could happen, so, your honor, enter an injunction telling Idaho it cannot exercise in full its police power, its regulatory power reserved to it and its people by the Tenth Amendment and very recently fully sustained by *Dobbs*." No good law exists that would sustain that kind of plea.

So in this case, the presence or absence of Relevant Abortions in Idaho is a *material* issue of fact (among a few more we discuss below). That leads to consideration of the Government's Motion for Preliminary Injunction (Dkt. 17) and "supporting" exhibits (Dkt. 17-1 through 17-13) (collectively "P.I. Motion"), filed just a couple of hours after the Legislature's Motion to Intervene.

Our careful review of the P.I. Motion leads to this firm conclusion: the Government has presented no admissible, credible evidence of Relevant Abortions. The Government creates a big smoke screen, as if it were really presenting such evidence, but it has not done so. A big part of the smoke screen is the presentation of data covering ectopic "pregnancies," which the Government treats as Relevant Abortions. That data is not at all relevant, but the Government has found it useful in generating a big smoke screen. We say "not at all relevant" because the 622 Statute does not prohibit or otherwise cover the termination of ectopic "pregnancies." And that in turn is because, as the Government itself made clear in its Complaint (Dkt. 1, p. 7 n. 1), an ectopic "pregnancy" can never end in a live birth and always creates a real risk, absent treatment, of the mother's death.

Nor do any of the doctor declarants present any admissible, credible evidence of Real Abortions happening in Idaho. Their declarations are written as if they are presenting just such evidence, but those declarations do not withstand close scrutiny and do not present the requisite admissible, credible evidence. (That defect, the Legislature is confident, will be fully illuminated during cross-examination of those doctors and further illuminated during the testimony on direct of the doctors and other witnesses the Legislature will call.)

Because this issue of fact—the presence or absence of Relevant Abortions in Idaho—is material, and, if the Legislature is a party, will be robustly contested, it can properly be resolved only through an evidentiary hearing. This Court cannot make findings of fact on the basis of conflicting competent affidavits. It will have to hear live testimony. Until it does, it cannot be said that the Government has met its heavy burden of showing entitlement to the extraordinary equitable remedy of an injunction directed against a sovereign State's exercise of its legitimate regulatory power.

In light of this reality, the Legislature's legal team has done two things. One, at the conclusion of its close scrutiny of the P.I. Motion, it immediately began making plans, based on anticipated party status, for the requisite evidentiary hearing, plans detailed in the following paragraphs. Two, it reached out to the Attorney General's Office to learn to what extent, if at all, that Office intends and is prepared to present evidence countering the Government's position on the material issues of fact. What we learned is that that Office has no clear present intent or plan to do anything of the sort.

Hence the need for party status for the Legislature. After all, only a party can present to this Court affidavits, declarations, live witnesses, and other forms of evidence. Only a

party has subpoena power. Only a party can cross-examine. Only a party willing to do all these things can show this Court the holes in the "factual" foundation of the P.I. Motion. What follows is the Legislature's plan to do that necessary work. In presenting that plan, we cannot guarantee that, because of the short time allowed, all parts of the plan will come to fruition, although we believe they will. What we can and do guarantee is that we will continue our intense efforts hour by hour in the preparation of the factual defense that is definitely there to be made on behalf of the 622 Statute and against the P.I. Motion.

The Legislature's present litigation plan encompasses the following:

The Legislature will subpoena the Idaho doctors the Government used as declarants. Our cross-examination of them will disclose the holes in their declarations, specifically, the absence of admissible evidence of Relevant Abortions and, also, the absence of a sound basis for the purported "fears" induced by the alleged "chilling" effect of the 622 Statute. (We are presently in doubt as to our subpoena power over the Government's Pennsylvania doctor.)

The Legislature will call one or more doctors who will give testimony countering and therefore discrediting the testimony of the Government's Idaho doctors, primarily on the two specifics just identified.

The Legislature will subpoena Ada County Prosecuting Attorney Jan M. Bennetts to testify regarding prosecutorial discretion and its exercise in instances of emergency-room abortions. (This sentence will be news to her.) She may be neutral, friendly, or hostile to the Legislature's cause; we do not know yet, but we know she will be an honest witness. Being that, her testimony will go a long way to discredit the Government's false picture of

the 622 Statute being applied indiscriminately to all emergency-room abortions. And, thereby, her testimony will also discredit the Government's false picture of Idaho's emergency-room doctors having to live in fear when confronting "close" cases.

The Legislature will subpoena a past or present State of Idaho official with knowledge of the State's abortion-reporting practices and records as required by law.[1] The Legislature will also subpoena a person knowledgeable in the coding of medical procedures for hospital records purposes in general and Medicare compliance purposes in particular. The testimony of those two witnesses, we presently believe, will counter what the Government must show but has not, the presence of Relevant Abortions in Idaho.

This is the kind of defense of the 622 Statute that the people of Idaho both expect and deserve, and the Legislature's unique ability and willingness to provide that defense in this case underscores the wisdom in enacting the Intervention Statute, Idaho Code § 67-465.

## Rule 24(a) Mandatory Intervention

In any event, what the Legislature has set out above puts the lie to the Government's argument that the Attorney General's Office will "adequately defend" the State's interests

---

[1] See Idaho Code § 18-506 (mandating the reporting of abortions and the basis of the determination of the existence of a medical emergency in certain cases); § 39-261 (charging the vital statistics unit of the DHW to compile, store, and publicly publish reported abortion information); § 18-609G(1)(b) (requiring reporting of abortions performed on minors including whether there was a medical emergency); 18-609(7) (requiring reporting of abortions performed without certification and delivery of educational materials and the medical emergency that necessitated it).

and that therefore the Legislature has not satisfied Rule 24(a). See United States' Response to the Idaho Legislature's Motion to Intervene (Dkt. 23) ("Opposition") at 5–7.

Equally false is the Government's assertion that the Legislature "has not identified a sufficient interest in defending" the 622 Statute. *See* Opposition (Dkt. 23) at 3–5. The Legislature's interest begins with seeing that the 622 Statute is defended to the fullest extent that, under the law and the facts, a zealous party can defend it. The Legislature's interest is augmented in seeing that a federal district court, this Court, does not enter an injunction against the full exercise of the Legislature's hard-won, legitimate regulatory power in this realm of great moral, medical, and political importance—when that injunction is entered on a false "factual" basis that prevails only because not zealously challenged. *Those truths lead to an understanding of the Legislature's unique interest, the interest that is really at stake here*—its unique power and authority and duty to answer the hard questions posed by abortion, including this one: What is the moral value of a preborn child? And this one: In what situations are the mother's interests more weighty than the moral value and interests of the preborn child? That power and authority and duty do not reside with the executive branch but rather with and only with the Legislature. That power and authority and duty are indeed what is really at stake here and constitute the Legislature's "sufficient interest" that fully justifies its Rule 24(a) intervention.

With respect to *Berger* and intervention as of right, the Government seeks to evade *Berger's* mandate, squarely based on principles of our federalism, by throwing out distinctions that do not make a difference; in large measure, the Government bases its Opposition on the fact that the North Carolina statute respected in *Berger* has some words

different from the Intervention Statute. In doing so, the Government ignores, and tries to get this Court to ignore, that the evident intent, purposes, and policies of both statutes are all the same. The quintessential objective of both statutes is to assure that no state statute is subjected to constitutional challenge without a full, zealous, thorough-going defense. The key insight underlying both statutes is that, although executive-branch officials and other state actors may at times want to present either a luke-warm or no defense for a statute (and not infrequently do just that), the creators of that statute, the ones who labored to bring it forth, will invariably be strongly motivated to give their creation the best possible defense. And it is fair to say that that insight has its greatest validity in the context of regulating abortion, exactly because of the hard, hard nature of the Legislature's duty in that context. *Berger* says to the lower federal courts to honor that objective and give full scope to that insight.

## Rule 24(b) Permissive Intervention

In light of all the foregoing and for one more reason, the Government's Opposition to Rule 24(b) permissive intervention fails. Opposition at 7–8. It says that the Attorney General's Office's defense of the 622 Statute will be adequate considering all the circumstances of this case. That statement is no longer plausible. The Opposition says that the Legislature does not have a defense to offer different from what the Attorney General's Office will provide. Again, that statement is no longer plausible.

And then the Opposition says nothing about something important. The Legislature has set forth an on-point case fully supporting permissive intervention by the Legislature. That case is *Priorities USA v. Benson*, 448 F. Supp. 3d 755 (E.D. Mich. 2020), which

THE IDAHO LEGISLATURE'S REPLY TO THE UNITED STATES' RESPONSE TO ITS MOTION TO INTERVENE [DKT. 15] - 9

granted permissive intervention to Michigan's legislature to defend its statute that was under constitutional attack. The Opposition says nothing about that case. Yet that case addresses and refutes every argument the Opposition makes against permissive intervention and does so on remarkably similar facts.

## Cries of "Delay" and "Undue Prejudice"

That leaves only the assertions of "delay" and "undue prejudice to the United States." We grant that the Legislature's intervention will interfere with the Government's plans to steamroll the P.I. Motion through to a quick and easily won Order of its fashioning. We grant that the Legislature's intervention will make more work for the Government's lawyers. But that is not "prejudice to the United States," let alone "undue prejudice." The interest of the United States is in seeing justice done, in seeing cases decided on real facts and not smoke screens, in seeing due and proper scope given not only to Congress's Spending Clause powers but also to Idaho's (and its people's) Tenth Amendment right, so recently reaffirmed by *Dobbs*, to regulate abortion, and, here, in seeing that an administration openly and admittedly hostile to Idaho's right and to *Dobbs* is required to meet, if it can, a zealous, robust defense of the exercise of that right.

The Legislature is mindful of the August 25 "trigger" date and how this Court may be wondering about the compatibility of the Legislature's zealous, robust defense with this Court's understandable desire to rule on the P.I. Motion, one way or the other, before that date. To that wondering, the Legislature makes three points.

First, because historically in Idaho there have not been Relevant Abortions, there is no genuine urgency to rule on the P.I. Motion. We believe that the absence of Relevant

Abortions means that motion is fatally defective and cannot be granted. But at the very least, that absence counsels against getting stampeded into a premature ruling, one not based on a true and valid factual basis.

Two, there has been only one delay in this whole matter. That is the Government's delay from June 24 to August 2, with June 24 being the day *Dobbs* was announced and the "trigger" date became known with considerable certainty, and with August 2 being the date the Government filed its Complaint here. That is a lot of delay, especially considering how everything the parties and most certainly the Legislature have done since August 2 has been measured in single days, even hours. And because of the abominable leak of the majority opinion in *Dobbs*, a prudent Government, knowing about the "trigger" date here in Idaho, would have begun preparing its Complaint and P.I. Motion even before June 24. The Government is the only party to blame if the absolutely required evidentiary hearing cannot be completed before August 25.

Having said that, and this is point three, the Legislature is working at breakneck speed to prepare the Legislature's defense for presentation to this Court in an evidentiary hearing beginning Monday morning, August 22, and fully intends to be ready. The Legislature cannot see why the Government cannot do the same. Such a hearing can be completed before the "trigger" date. And it appears that this Court agrees; we understand from communications with the Attorney General's Office that this Court has set aside all of August 22 for just such an endeavor.

CONCLUSION

The way things are shaping up, if the Legislature is not in this case as a party, the fairness, justness, and rightness of any resolution favorable to the Government will be a very difficult sell. It will be a difficult sell to the people of Idaho. It will be a difficult sell to the multitude of people across the Nation who have their eyes on this case. It will be a difficult sell to law students over the coming years, even those who are pro-*Roe* and anti-*Dobbs*. The fairness and justness and rightness of such a resolution will be a hard sell because of the account set forth in this Reply of the defense that should have been heard but was not because the Legislature was not afforded party status.

Fortunately, the law and the facts unequivocally call for a ruling granting the Legislature's Motion to Intervene.

Dated this 11th day of August, 2022.

MORRIS BOWER & HAWS PLLC

By:  /s/ Daniel W. Bower
        Daniel W. Bower

 /s/ Monte Neil Stewart
Monte Neil Stewart

*Attorneys for Proposed Intervenors-Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| Brian David Netter<br>DOJ-Civ<br>Civil Division<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530<br><br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Facsimile:<br>ECF Email: brian.netter@usdoj.gov |
| Daniel Schwei<br>DOJ-Civ<br>Federal Programs Branch<br>1100 L Street, N.W., Ste. 11532<br>Washington, D.C. 20530<br><br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Facsimile:<br>ECF Email: daniel.s.schwei@usdoj.gov |
| Julie Straus Harris<br>DOJ-Civ<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, D.C. 20530<br><br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Facsimile:<br>ECF Email: julie.strausharris@usdoj.gov |
| Lisa Newman<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, D.C. 20005<br><br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Facsimile:<br>ECF Email: lisa.n.newman@usdoj.gov |
| Anna Lynn Deffebach<br>DOJ-Civ<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W., Ste. 12104<br>Washington, D.C. 20005<br><br>*Attorneys for Plaintiff* | ☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Facsimile:<br>ECF Email: anna.l.deffebach@usdoj.gov |

| | |
|---|---|
| Christopher A. Eiswerth<br>DOJ-Civ<br>Federal Programs Branch<br>1100 L Street, N.W., Ste. 12310<br>Washington, D.C. 20005 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Facsimile:<br>☒ ECF Email:<br>christopher.a.eiswerth@usdoj.gov |

*Attorneys for Plaintiff*

| | |
|---|---|
| Emily Nestler<br>DOJ-Civ<br>1100 L Street<br>Washington, D.C. 20005 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Facsimile:<br>☒ ECF Email: emily.b.nestler@usdoj.gov |

*Attorneys for Plaintiff*

| | |
|---|---|
| Lawrence G. Wasden<br>Attorney General<br><br>Steven L. Olsen<br>Chief of Civil Litigation<br>Megan A. Larrondo<br>Dayton P. Reed<br>Ingrid C. Batey<br>Deputy Attorneys General<br>954 W. Jefferson Street, 2nd Floor<br>P.O. Box 83720<br>Boise, ID 83720-0010 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Facsimile: (208) 334-2400<br>☒ ECF Email:  steven.olsen@ag.idaho.gov<br>megan.larrondo@ag.idaho.gov<br>dayton.reed@ag.idaho.gov<br>ingrid.batey@ag.idaho.gov |

*Attorneys for Defendant*

                                       */s/ Daniel W. Bower*
                                       Daniel W. Bower