UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>THE STATE OF IDAHO,<br><br>   Defendant. | Case No. 1:22-cv-00329-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court is a motion to intervene filed by the Idaho Legislature (Dkt. 15). For the reasons expressed below, the Court will grant the motion in part and deny it in part. The Court will deny the motion to the extent the Legislature seeks to intervene as of right. But the Court will grant permissive intervention on a limited basis to allow the Legislature to present argument and evidence (including witnesses) in opposition to the United States' pending Motion for Preliminary Injunction. As explained further below, the Legislature's participation will be limited to presenting evidence and arguments the Legislature has said will show "the holes in the 'factual' foundation" of the United States' motion. *See Legislature's Reply Br.,* Dkt. 25, at 6. Thus, the Legislature will be allowed to participate in the preliminary-injunction proceedings only – and in that limited

fashion. Otherwise, if during the course of this litigation the facts develop such that it becomes clear the State and Legislature's interests diverge, and the State can no longer adequately represent the Legislature's interests, the Court will entertain a renewed motion to intervene.

## BACKGROUND

In 2020, the Idaho Legislature passed a law making it a felony for anyone to perform or attempt to perform or assist with an abortion. Idaho Code § 18-622(2). This law allows for affirmative defenses to prosecution where the abortion is necessary to prevent the death of a pregnant woman, or the pregnancy resulted from rape or incest that was reported to law enforcement. *Id.* § 18- 622(3) (the "Total Abortion Ban.") Idaho Governor Brad Little signed the bill, but the Total Abortion Ban did not become law when signed. Rather, recognizing the constitutional impediments presented by *Roe v. Wade*, 410 U.S. 113 (1973), the bill contained a provision – commonly referred to as a "trigger" – stating that the prohibition would take effect 30 days following "[t]he issuance of the judgment in any decision of the United States supreme court that restores to the states their authority to prohibit abortion . . . ." Idaho Code § 18-622(1)(a).

On June 24, 2022, the United States Supreme Court handed down *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (June 24, 2022), overruling *Roe* and holding that the "Constitution does not prohibit the citizens of

each State from regulating or prohibiting abortion." 142 S. Ct. at 2284. The

Supreme Court's decision in *Dobbs* triggered the Total Abortion Ban, which is

now set to go into effect on August 25, 2022.

Governor Little has consistently offered his full-throated support for *Roe's*

overruling and for Idaho's Total Abortion Ban. In July 2021, he joined ten other

governors submitting an *amicus* brief in *Dobbs*, arguing that *Roe* should be

overturned and regulation of abortion should be returned to the states. (Idaho

Attorney General Lawrence Wasden also joined more than 20 other attorneys

general in a similar *amicus* brief.) And on the same day the Supreme Court issued

*Dobbs*, Governor Little issued a press release lauding the decision and commenting

that Idaho's Total Abortion Ban would take effect later this summer:

> I join many in Idaho and across the country today in welcoming the
> high court's long awaited decision upholding state sovereignty and
> protecting preborn lives. The decision provides clarity around landmark
> cases at the center of passionate debate in our country for nearly five
> decades. This is now clear – the 'right' to an abortion was a judicial
> creation. Abortion is not a right expressed in the U.S. Constitution, and
> abortion will be entrusted to the states and their people to regulate.
>
> Idaho has been at the forefront of enacting new laws to protect preborn
> babies. The pro-life bill I signed into law in 2020 will go into effect
> later this summer.
>
> Today's decision is the culmination of pro-life efforts to defend the
> defenseless – preborn babies who deserve protection. It also is
> affirmation of states' rights, a fundamental aspect of our American

government.[1]

Waiting six weeks from the issuance of *Dobbs*, and with only three weeks until the Total Abortion Ban is due to take effect, the United States of America filed this case against the State of Idaho on August 2, 2022. The United States challenges the constitutionality of the Total Abortion Ban on the grounds that it violates the Supremacy Clause and is preempted to the extent it is contrary to the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd. The United States seeks to enjoin the statute's taking effect on August 25, 2022.

The tight timeline between the United States' filing its complaint and the law's effective date necessitated the parties agree to an expedited brief schedule. The schedule proposed by the parties, and which the Court adopted, provided for the United States to file its preliminary injunction motion on August 8, the State to file its response on August 16, and the United States to file its reply on August 19 by noon Mountain Daylight Time. *Order*, Dkt. 13. The Court has scheduled the hearing on the motion for August 22, 2022.

Shortly before the United States filed its Motion for Preliminary Injunction, on the evening of August 8, the Legislature moved to intervene as an intervenor-

---

[1] *Gov. Little Comments on SOCUTS Overrule of Roe v. Wade, dated June 24, 2022,* https://gov.idaho.gov/pressrelease/gov-little-comments-on-scotus-overrule-of-roe-v-wade/ (last visited Aug. 13, 2022).

defendant pursuant to Federal Rule 24(a) or Rule 24(b). The Legislature seeks to

intervene because, it argues, Idaho law and Rule 24 allow it to intervene as of right

in any actions challenging the constitutionality of a state law, and the State will not

adequately represent all of the Legislature's interests in this litigation. If denied the

opportunity to intervene, it further requests permission to file an *amicus curiae*

brief and participate in the August 22 hearing.

      The United States does not oppose the Legislature's participation in this case

as an *amicus curiae*, and it further states that it does not oppose the State's ceding

some of its oral argument time to the Legislature if the State chooses to do so. But

the United States opposes the Legislature's intervention on the basis that the

Legislature has failed to identify any divergence between its interests and the

interests of the State in this case and has failed to provide any justification that its

intervention would aid the Court's decision in this case. The United States further

argues that the Legislature's intervention would prejudice the United States under

the expedited briefing schedule unless the Court were to take steps to mitigate the

prejudice.

## LEGAL STANDARD

      The Federal Rules of Civil Procedure permit a party to intervene as of right

under Rule 24(a) and permissively under Rule 24(b). *Cooper v. Newsom*, 13 F.4th

857, 864 (9th Cir. 2021). An applicant for intervention as of right must satisfy four

criteria under Rule 24(a)(2): "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Animal Legal Def. Fund v. Otter*, 300 F.R.D. 461, 464 (D. Idaho 2014) (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)); *see also Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citing Fed. R. Civ. P. 24(a)(2)).

"In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations." *Callahan v. Brookdale Senior Living Cmty., Inc.*, --- F.4th ---, 2022 WL 3016027, at *5 (9th Cir. June 29, 2022) (internal quotation marks and citation omitted). Although courts construe Rule 24(a) broadly in favor of proposed intervenors, *id.*, an applicant seeking intervention bears the burden of proving that these requirements are met. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

By contrast, permissive intervention under rule 24(b) requires only that the

proposed intervener "have a question of law or fact in common" with the underlying action, that the request be timely made, and that the court have an independent basis for jurisdiction over the proposed intervener's claims. Fed. R. Civ. P. 24(b). When ruling on a motion for permissive intervention under Rule 24(b), a district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(b)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cooper*, 13 F.4th at 868.

## ANALYSIS

When an applicant moves to intervene in a pending lawsuit under Federal Rule of Civil Procedure 24(a)(2), a federal court has no authority to grant the motion if an existing party to the case adequately represents the movant's interests. Fed. R. Civ. P. 24(a)(2). Here, the Legislature has failed to meet its burden of showing that the State will not adequately represent its interests in the litigation. The Legislature's failure to satisfy this requirement is fatal to its application for intervention as of right. *Perry*, 587 F.3d at 950.

As already noted, however, the Court will allow the Legislature to intervene on a limited basis, as explained in further detail below.

## 1.  Intervention as a Matter of Right

A movant seeking intervention typically bears a "minimal" burden of showing inadequacy of representation by an existing party, and such burden is satisfied if the applicant can demonstrate that representation of its interests may be inadequate. *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2205 (2022) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). In *Berger*, the Supreme Court addressed a request by two leaders of North Carolina's state legislature to intervene in a federal lawsuit challenging a voter-identification law and explained what it takes to meet this "minimal" burden. There, the NAACP sued Executive Branch officials sympathetic to its position—namely, the Governor, who had vetoed the law after its passage and continued to actively oppose it, and members of the State Board of Elections (collectively, the "Board"), who were appointed and potentially removable by the Governor. *Id.* at 2198. The state's attorney general assumed responsibility for defending the Governor and the Board. *Id.* Like the Governor, the attorney general had opposed an earlier voter-ID law and participated in a legal challenge against it. *Id.* Further, the North Carolina attorney general's office had a history of opposing laws enacted by the legislature and declining to fully defend those laws in federal litigation. *Id.* at 2197.

After the NAACP sued these officials in *Berger,* two legislative leaders

moved to intervene on behalf of the state legislature, arguing, inter alia, that

"without their participation, important state interests would not be adequately

represented in light of the Governor's opposition to [the bill], the Board's

allegiance to the Governor, and the attorney general's opposition to earlier voter-

ID efforts." *Id.* They also claimed the Board had offered only a "tepid" defense of

the law in a parallel state-court proceeding. *Id.* at 2198-99. The district court

denied their motion without prejudice and again denied their renewed motion. *Id.*

at 2199.

   As the litigation proceeded without the legislative leaders, the NAACP

moved to enjoin the Board from enforcing the voter-ID law in the upcoming

litigation; by this time, the Governor had been dismissed from the suit, and only

the Board members, represented by the attorney general, remained as defendants.

*Id.* The legislative leaders, unsatisfied with the vigor of the Board's response to the

request for injunctive release, sought to lodge an *amicus* brief, five expert reports,

and several other declarations. *Id.* "At the end of the day, however, the District

Court refused to consider the amicus brief and accompanying materials, struck

them from the record, and granted a preliminary injunction barring enforcement of

[the voter-ID law]." *Id.*

   The legislative leaders appealed the ruling denying intervention. The Board

also appealed the ruling granting the preliminary injunction but did not seek a stay

of the injunction because of "disruptive effect such relief would have had on election administration." *Id.* (internal quotation marks omitted). The law was therefore not enforced during the state's March 2020 primary election. *Id.* at 2200. Meanwhile, the Governor had filed an *amicus* brief in the appeal in favor of the injunction, arguing that the district court "had not gone far enough." *Id.* But the Fourth Circuit ultimately side with the legislative leaders with respect to the injunction, who had also filed an *amicus* brief opposing it, finding the district court had abused its discretion in issuing the injunction. The Fourth Circuit, however, affirmed the district court's denial of intervention in an *en banc* decision. The Supreme Court granted certiorari.

The Supreme Court reversed the Fourth Circuit's *en banc* decision, holding North Carolina's legislative leaders were entitled to intervene in the litigation. In so holding and "[c]asting aspersions on no one," the Court observed, "this litigation illustrates how divided state governments sometimes warrant participation by multiple state officials in federal court. *Id.* at 2205. It explained how the legislative leaders requesting to intervene sought to give voice to a perspective different from that of the Board – which remained beholden to a Governor that had vetoed the law at issue and who had filed his own briefs in the litigation, "calling the law 'unconstitutional' and arguing that it 'should never go into effect,'" and which at all times had been represented by an attorney general

who publicly opposed an earlier version of the law. Critically, the Board had also conceded in the parallel state-court proceedings "that its 'primary objective' wasn't defending [the law], but obtaining guidance regarding which law it would need to enforce in an upcoming election ([the current law being challenged] or preexisting law)." *Id.* at 2199. Thus, the Board, more concerned about the state's interest in "stability and certainty," had aimed its focus in the litigation on obtaining guidance for the administration of upcoming elections – instead of focusing wholeheartedly on defending the law from the constitutional challenge. *Id.*

By contrast, the legislative leaders remained unburdened "by misgivings about the law's wisdom" and, if allowed to intervene, had pledged to focus solely on "defending the law vigorously on the merits, without an eye to crosscutting administrative concerns" – concerns that had plagued the Board's defense throughout the litigation. *Id.* This "unalloyed interest in vindicating the law from constitutional challenge," *id.* at 2196, the Supreme Court reasoned, set the legislative leader's interests apart from the interests of the Board, who were more concerned with election administration than defending the law. *Id.* at 2205. Because the legislative leaders had shown that they sought to vindicate valuable state interests distinct from the Board's interests – and had further shown that the Board's preoccupation with administrative concerns and its allegiance to a Governor, who opposed the law, prevented it from adequately representing those

distinct interests – the Supreme Court held that the legislative leaders had a right to intervene in the litigation. *Id.*

In this case, unlike in *Berger*, the Legislature has failed to show that it brings a distinct state interest to bear on this litigation that the State cannot adequately represent – even given the Legislature's minimal burden. As just discussed, in *Berger*, the legislative leaders provided evidence that the existing state defendants' "primary objective" in the litigation differed from their own *and* that existing state defendant's preoccupation with these other interests, together with their misgivings about the wisdom of the law, prevented them from providing a full-throated defense of the law on the merits. But no such concerns exist here. The Idaho Legislature can point to no evidence that the State, represented by the Attorney General, has expressed any misgivings about the Total Abortion Ban, or that the State is concerned with interests distinct from the Legislature's that would prevent it from focusing solely on "defending the law vigorously on the merits," without an eye to other concerns. Nor has the Attorney General ever publicly opposed the Total Abortion Ban or a similar law, and nothing otherwise indicates that he would decline to defend it. To the contrary, all signs lead to the conclusion that not only does the State assert "an unalloyed interest" in vindicating the law from constitutional challenge, indicating it will offer the most robust defense of the law, but also that the State and Legislature's interests are fully aligned in this litigation.

Despite this reality, the Legislature claims that it has a "*unique interest, the interest that is really at stake here*—its unique power and authority and duty to answer the hard questions posed by abortion," such as "What is the moral value of a preborn child?," or "In what situations are the mother's interests more weighty than the moral value and interests of the preborn child?" *Legislature's Reply Br.*, Dkt. 25, at 8 (emphasis in original). The Legislature maintains only it can answer these questions, and not the executive branch. *Id.* But the United States has not sued any executive branch officials; instead, it has sued the State, and the Legislature utterly fails to explain how it is uniquely positioned – separate and apart from the State – to answer these questions. The Legislature's criticism of the Executive Branch in this case is particularly puzzling given Governor Little's statements unequivocally supporting the *Dobbs* decision and the Total Abortion Ban. Likewise, as noted, all indications suggest that the Attorney General remains fully on board in defending the law.

In fact, to this point, the Legislature has presented no credible argument that it itself is distinct from the "the State," either formally or functionally for purposes this litigation, and therefore a "new" party entitled to intervene under Rule 24(a). Again, this case is distinguishable from *Berger* in that the United States has not sued particular officers of the State but rather the State itself. As the United States argues, "[b]y virtue of being part of the State of Idaho itself, the Idaho Legislature

is *already* a party, and the Legislature articulates no reason why this Court should grant intervention when the State is *already* a party. *United States Resp.* at 6, Dkt. 23 (citing *Berger*, 142 S. Ct. at 2203) (rejecting the argument that "the legislative leaders are already effectively 'existing' parties to this suit" because the plaintiff "has not sued the State"). And, critically, as the United States also points out, because the State itself is the defendant, the practical concerns animating *Berger* do not exist here: there is no risk United States has "select[ed] as their defendants those individual officials [it] consider[s] most sympathetic to [its] cause or most inclined to settle favorably and quickly." *Id.* at 2201. Indeed, even if the United States tried, it is difficult to see what state official it could have picked who it may have considered more sympathetic to its cause or who would have been more inclined to settle this case favorably and quickly. In this case, the State appears fully united thus far.

In sum, the Court finds the circumstances of this case readily distinguishable from *Berger* and further finds that the Legislature has failed to show it seeks "to give voice to a different perspective" than the State's, or that the State will not adequately represent the Legislature's interests. Even as it is, *Berger* will make litigation in federal court involving states far more burdensome. As Justice Sotomayer noted in her dissent, "[i]t is difficult to overstate the burden the Court's holding [in *Berger*] will foist on district courts." *Id.* at 2211. But to ignore

**MEMORANDUM DECISION AND ORDER - 14**

distinctions between this case and *Berger* – and to allow a legislature the right to intervene in every federal case whenever it says it should be allowed to do so *and* without requiring the legislature to meet even its minimal burden of showing it possesses a distinct interest or that its interests are inadequately represented – would allow a state to turn into a nine-headed Hydra whenever it so chooses. This Court does not read *Berger* as intending or permitting such a result in a case such as this one – where not a speck of evidence exists that the State and the Legislature's interests diverge in any real and practical sense. This Court therefore finds that the Legislature has shown no right to intervene in this case – at least at this stage in the litigation.

As explained below, however, the Court will allow the Legislature to permissively intervene for the limited purpose of opposing the United States' motion for preliminary injunction, including an opportunity to present witnesses at the August 22 hearing if it so chooses.

## 2.  Permissive Intervention

"A district court may grant permissive intervention under Rule 24(b)(1)(B) where the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955 (internal quotation marks and citation omitted). "Where a putative intervenor has met these

requirements, the court may also consider other factors in the exercise of its discretion. *Id.* "These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The Court may also consider "whether the intervenors' interests are adequately represented by other parties" and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.*

"When making this discretionary determination, a district court 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Lucent,* 642 F.3d at 741(quoting Fed. R. Civ. P. 24(b)(3)). "The district court's discretion under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Id.* (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir.1974) (internal quotation marks and ellipses omitted).

Here, the Court finds that the Legislature's motion is timely and that its Proposed Answer reflects defenses that present common issues of fact and law. As the Legislature has met the threshold requirements for permissive intervention, the Court may consider other factors in its discretion, including whether the

Legislature "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329.

In its reply brief, the Legislature says it would call witnesses at the preliminary injunction hearing to present evidence of whether "Relevant Abortions"[2] are "occurring in Idaho's Medicare-funded emergency rooms," but the State may not. *Legislature's Reply* at 5, Dkt. 25. While the Court – in light of the evidence it currently has before it – would not consider the State's decision not to call witnesses at the preliminary injunction hearing on this narrow factual question a reason to justify the Legislature's intervention as of right, it nonetheless finds that that justifies the Legislature's permissive intervention *on this sole issue*. *Lucent*, 642 F.3d at 741 (limiting intervention to discrete issues).

The Legislature may therefore permissively intervene, but it will be limited at this juncture to presenting argument and evidence in opposition to the United States' motion for preliminary injunction. More specifically, the Legislature's participation in the preliminary-injunction proceedings will be limited to allowing

---

[2] The Legislature defines "Relevant Abortions" as "those emergency-room abortions that fall (i) inside the prohibition of abortion found in Idaho Code § 18-622 ("the 622 Statute") and (ii) outside the overlap between the 622 Statute's medical-emergency exception and EMTALA's medical-emergency mandate but still inside EMTALA's mandate." *Legislature's Reply* at 2, Dkt. 25.

it to show "the holes in the 'factual' foundation" of the motion on the issue of "Relevant Abortions," as the Legislature has specifically laid out in its reply. *Legislature's Reply*, 6-7, Dkt. 25 (describing the Legislature's "present litigation plan"). The Court, of course, will allow the Legislature to modify its proposed plan in responding to the preliminary injunction motion on this particular issue as the Legislature sees fit. But the larger point is that, substantively, the Legislature's participation will be limited to allowing it to present evidence and argument aimed at "showing the holes" in the factual foundation of the United States' motion.

Lastly, the Court cannot ignore the issue of whether the Legislature's permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." The United States argues that granting the Legislature will prejudice it because it negotiated the briefing schedule with the State under the assumption they would be the only parties in the case – and the "briefing schedule is extraordinarily expedited in light of the impending effective date of the challenged law." *United States' Resp.*, Dkt. 23, at 8. The United States claims that the Legislature's intervention at this juncture would be unfair because "the United States would need to respond to two opposition briefs of up to 20 pages each (plus an unknown number of factual submissions), but would, under the briefing schedule, have only two and a half days (and ten pages) to do so." *Id.*

First, the Court notes that any prejudice to the United States stemming from

the briefing schedule is largely of the United States' own making. It chose to delay filing this case and its motion for preliminary injunction for over six weeks after the Supreme Court issued the *Dobbs* decision. Nonetheless, the Court acknowledges that the Legislature's intervention may cause some prejudice to the United States. To mitigate that prejudice, the Court has limited the Legislature by subject matter, as already explained.

Further, in terms of briefing deadlines, the Court will adopt this schedule:

(1) The Legislature must file its brief on **August 16, 2022** – which is the same day the State's brief is due. If the Legislature intends to present affidavits, any such affidavits shall likewise be due on **August 16, 2022**.

(2) The United States must file its optional combined reply brief – addressing both the State's and the Legislature's briefing – by the existing reply deadline of **12:00 p.m. Mountain Time on August 19, 2022**.

As for page limitations, the State will be permitted 20 pages, and the Legislature 15. The United States will be allowed 20 pages for its combined reply brief.

Finally, in an effort to ensure that the preliminary-injunction proceedings are efficient and streamlined, the Court will not allow the State and the Legislature to pursue duplicative strategies during the preliminary-injunction proceedings. More

specifically, during an informal conference, the State indicated it views the United States' motion as presenting purely legal questions. The Legislature, on the other hand, says it is "prepared to present evidence countering the Government's position on the material issues of fact." *Legislature Reply Br.* Dkt. 25, at 5. Accordingly, to the extent that the Legislature intends to present factual evidence (or challenge the United States' factual submissions) – including by calling witnesses – the Court will not allow the State to duplicate those efforts.

## ORDER

**IT IS ORDERED that** the Idaho Legislature's Motion to Intervene (Dkt. 15) is **GRANTED in part and DENIED in part**, as explained above.

DATED: August 13, 2022

_____

B. Lynn Winmill
U.S. District Court Judge