Daniel W. Bower, ISB #7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
Facsimile: (208) 345-4461
dbower@morrisbowerhaws.com

Monte Neil Stewart, ISB #8129
11000 Cherwell Court
Las Vegas, Nevada 89144
monteneilstewart@gmail.com

*Attorneys for Intervenor-Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No. 1:22-cv-00329-BLW |
| Plaintiff, | **IDAHO LEGISLATURE'S BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| THE STATE OF IDAHO, | |
| Defendant, | |
| and | |
| SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE, | |
| Intervenor-Defendants. | |

The Speaker of the Idaho House of Representatives Scott Bedke, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Sixth Idaho Legislature (collectively the "Legislature") respectfully submit this brief in opposition to the Government's Motion for Preliminary Injunction (Dkt. 17).

RESPONSIVE DISCUSSION

## I.    Introduction

The preeminent issue here is one of fact, whether in the real world EMTALA[1] actually conflicts with the 622 Statute.[2] In other words, does EMTALA ever require Idaho medical professionals to perform a medical procedure prohibited by the 622 Statute? Section II below addresses that factual question and makes clear that the answer is "no." That factual question, of course, presupposes that each of EMTALA and the 622 Statute is being given a correct reading and accorded its proper and actual scope. Section III below addresses that subject.

The Complaint (Dkt. 1)—as well as the United States Attorney General's press conference accompanying its filing—presented to the American public a picture of wide and deep conflict and therefore a civil action of wide scope and consequence, one that would enable the performance of hundreds and hundreds of abortions otherwise prohibited by the 622 Statute.[3] False picture. As the volume of a large stock-water trough is to the volume of a thimble, so is the scope of the Complaint's false picture to the scope of what is really at stake here. And worse, the thimble is

---

[1] 42 U.S.C. § 1395dd.

[2] Idaho Code § 18-622.

[3] Opponents of the 622 Statute, like Planned Parenthood, like to refer to it as the "Total Abortion Ban," a phrase that this Court itself used in its Order ruling on the Legislature's Motion to Intervene. Dkt. 27 at P. 2. A respect for accuracy (and an aversion to Orwellian labels) will lead to rejection of that phrase, especially by this Court. The 622 Statute clearly does not ban all abortions and clearly does not criminalize emergency medical procedures undertaken to preserve the life of the mother even though the death of the preborn child is thereby made certain.

empty; the Government has not shown and cannot show *any* real-world cases where medical procedures supposedly required by EMTALA will not take place unless this Court grants the Government its requested injunctive relief.

The Government uses five mechanisms to present this case as being of much wider scope and consequence than it really is. One, it deems treatment of ectopic "pregnancies" to be abortions within the scope of the 622 Statute. This was a clumsy and unseemly blunder on the Government's part (although the motivation for it is clear). As the Legislature's Reply re Intervention, Dkt. 25 at P. 2 said: "Ectopic 'pregnancies' fall *outside* the 622 Statute's prohibition. That is the Legislature's clear understanding and intent, one shared by the executive branch." (Emphasis in original.) That Reply went on to show that the Government almost certainly knew that it was working a deception. *Id*. at 2-3. And, as Dr. Reynolds says in her declaration: "Termination of an ectopic pregnancy is not an abortion and no competent physician would deem it to be such. It is therefore not prohibited by the 622 Statute. Any effort to redefine abortion to include treatment of ectopic pregnancies is medically baseless and, in my judgment, inexcusable." *See* Declaration of Tammy Reynolds, M.D. ("Reynolds Declaration") at ¶ 12. Section II. A. below exposes this first misleading mechanism for what it is.

Two, directly through the testimony of the three Idaho doctor-declarants used by the Government (and indirectly through the testimony of its Pennsylvania doctor-declarant), the Government attempts to show that a not insubstantial number of pregnancy-related medical emergencies in Idaho require, under EMTALA, emergency medical treatment that will result in loss of the preborn child's life but that the 622 Statute prohibits. This attempt fails. The declarations of Drs. French and Reynolds establish quite clearly that the Government's presentation is premised on the warping of both medical realities and the proper scope and understanding of EMTALA and

the 622 Statute. Indeed, the French and Reynolds declarations establish quite conclusively that the Government has failed to present any credible evidence of any pregnancy-related medical emergencies in Idaho requiring, under EMTALA, emergency medical treatment that will result in loss of the preborn child's life but that the 622 Statute prohibits. Section II. B. below exposes the fatal defects in the Government's second misleading mechanism.

Three, the Government predicts, as if such were a present reality, the rather absurd idea that this State's prosecuting attorneys will in effect zealously second-guess the judgment of the medical professionals providing emergency medical treatment to pregnant women and thereby bring prosecutions against those involved whenever the treatment is related to the death of the preborn child—and do so as a matter of course, if not automatically. The declaration of Prosecuting Attorney Bryan Taylor debunks that absurd and misleading notion. Section II. C. below fully exposes this third misleading mechanism for what it is.

Four, the Government speaks of there being only two affirmative defenses to a prosecution making a *prima facie* showing of a violation of the 622 Statute in the context of emergency medical treatments—good-faith medical judgment that the treatment was necessary to prevent the death of the pregnant woman and reported rape or incest. But of course, there is a third defense—that the 622 Statute is unconstitutional under the Supremacy Clause and preemption doctrines to the extent it operates to prohibit or interfere with EMTALA's mandate. That is the Government's claim here, and its filings suggest the Government's strong belief that its claim is a slam dunk. If it is that, the Government's "factual" presentations about "fears of prosecution" and "chilling effects on medical judgments" must be adjudged misleading at best. No further elaboration is required to show this fourth misleading mechanism for what it is.

The Government's fifth misleading mechanism brings us back to what we said before, that attention to the key factual question presupposes that each EMTALA and the 622 Statute is being given a correct reading and accorded its proper and actual scope. The Government tries to subvert that presupposition. It constantly and without warrant tries to expand EMTALA's supposed scope, to minimize and distort the 622 Statute's language limiting its own scope, and thereby to expand the scope of the 622 Statute's prohibition. All this for the purpose of fabricating a conflict that does not exist but without which the Government has no case, let alone grounds for the exercise of this Court's extraordinary equitable powers. As noted, Section III below corrects this fifth misleading mechanism.

These are the Government's five mechanisms used to paint its false picture about a supposed actual "conflict" and hence about the scope and consequence of its case against Idaho.

What is really at stake amounts to the content of a thimble. The Government must say (and has tried to show but has failed to do so) that the thimble is full. We say and have shown with not just admissible but credible evidence that the thimble is empty. The thimble is empty if all it contains is the *concept* of Relevant Abortions; it has some real content to the extent, but only to the extent, that Relevant Abortions occur in Idaho. And the law is clear that this Court can issue an injunction against the 622 Statute's operation in that very small realm (and only in that very small realm) *only* if the thimble has something in it.

For clarity, we state here what we mean by the phrase Relevant Abortions, with this definition being a refined and improved version compared to our prior efforts. The phrase Relevant Abortions means that class of emergency medical conditions (i) where medically appropriate treatment of the mother will result in the death of the preborn child, (ii) where EMTALA requires

that treatment, but (iii) where the 622 Statute prohibits it because it is not necessary to save the life of the mother.

## II.      The Thimble Is Empty.

### A.  Treatment of an ectopic pregnancy is not an abortion.

It is hard to overstate how greatly the Government, in its effort to manufacture a conflict, relies on its erroneous characterization of the medical treatment of ectopic pregnancies as abortion and therefore within the scope of the 622 Statute's prohibition. That this characterization is erroneous is certain. We so demonstrated in our Reply in Support of the Legislature's Motion to Intervene.[4] Dr. Reynolds's testimony, quoted above, so demonstrates. And Dr. French's testimony is quite thorough in exposing the falsity of this mischaracterization.

Dr. French testifies: "I have reviewed the declaration of Dr. Lee A. Fleisher, and he uses the example of an ectopic pregnancy as a life-threatening scenario whereby an abortion is necessary to save the life of the mother. I agree that a life-saving procedure is necessary, but the life-saving surgery is *not* considered an abortion. Idaho law does not prohibit any life-saving surgery, even if it results in the death of the unborn child." *See* Declaration of Richard Scott French, M.D. ("French Declaration") at ¶ 17 (emphasis added). He goes on to explain in detail why he "would question the competence of an obstetrician who said they were going to perform an abortion on a patient bleeding out from a ruptured ectopic pregnancy." *Id*. at ¶ 18. He makes that explanation in ¶¶ 18–20, all of which leads to this conclusion at ¶ 21:

The life threat of an ectopic pregnancy is covered in 18-622(4) that specifies the health of the woman is of primary importance:

---

[4]  Dkt. 25 at 2-3.

Medical treatment provided to a pregnant woman by a health care professional as defined in this chapter that results in the accidental death of, or unintentional injury to, the unborn child shall not be a violation of this section.

The only credible evidence before this Court is that the 622 Statute does not cover medical treatments for ectopic pregnancy. That being so, there is no conflict between it and EMTALA.

**B.  The Government has failed to show the presence of Relevant Abortions in Idaho.**

The grand objective of the four doctor declarations filed by the Government (Drs. Cooper, Corrigan, Seyb, and Fleisher) is to make it appear that Relevant Abortions are not uncommon in Idaho. But the declarations of Drs. French and Reynolds put the needle to that balloon.

Dr. Reynolds testifies at ¶ 7:

In this context, I note that none of the Jane Doe cases described in the declarations filed in this civil action by Idaho doctors Cooper, Corrigan, and Seyb constitutes a Relevant Abortion. That is so because, based on the plain language of those descriptions, each case involved an emergency medical procedure to save the life of the mother. In other words, in my opinion, each case involved a lawful medical procedure under the 622 Statute. Indeed, in my judgment and based on my experience, each case presented a situation where no informed, competent professional would second-guess the legality of the procedure.

Dr. French goes into great detail in his analysis of each of Jane Doe cases set forth in the declarations of the Government's three Idaho doctors and also into Dr. Fleisher's hypotheticals. *See* French Declaration at ¶¶ 17–29 (rebutting Dr. Fleisher's hypotheticals); *id*. at ¶¶ 30–55 (explaining and correcting the Jane Doe accounts of the three Idaho doctors). On that strong basis, he is able to provide this clear and powerful conclusion:

I have reviewed the declarations submitted by Dr. Lee A. Fleisher, Dr. Emily Corrigan, Dr. Kylie Cooper, Dr. Stacy T. Seyb and the cases they present. In my opinion, the examples of pregnancy-related medical emergencies in these declarations are presented in a way that creates a false conflict/false dichotomy between the life and health of the mother and the life and health of the unborn child and appear to assume that under Idaho Code § 18-622, physicians will give the health and welfare of the mother less consideration than the health and welfare of the unborn child. In my experience, in the emergency situations presented in these examples and anticipated by EMTALA, the subordination of the mother's life and

health in favor of the unborn child by a physician has not and will not occur. Further, these same physicians would never interpret Idaho Code 18-622 to mean that the mother's health and welfare are secondary to the baby. Every physician understands the Hippocratic Oath of "do no harm", and physicians certainly understand that the baby's health is dependent upon the mother's health. This is why in the tragic and rare circumstances whereby the mother dies, then a post-mortem C-section is promptly performed. Since there is no chance to save the mother, then the focus turns to the baby's health.

*Id.* at ¶ 9.

What we said before merits repeating: The declarations of Drs. French and Reynolds establish quite conclusively that the Government has failed to present any credible evidence of any pregnancy-related medical emergencies in Idaho requiring, under EMTALA, emergency medical treatment that will result in loss of the preborn child's life but that the 622 Statute prohibits. No Relevant Abortions, therefore no conflict between EMTALA and the 622 Statute.

Dr. Reynolds's declaration in particular teaches of the rarity of emergency medical procedures undertaken to save the life of the mother and resulting in the death of the preborn child. Reynolds Declaration at ¶¶ 3, 6. The official data fully support her declaration. The Idaho Department of Health and Welfare collects data from treating physicians on abortions where (i) the patient is under 18, (ii) the postfertilization age of the preborn child is undetermined, and (iii) the postfertilization age is over 20 weeks. That data, going back to 2007 for # 1 and 2013 for # 2 and # 3, gives these numbers for emergency medical procedures undertaken to save the life of the mother and resulting in the death of the preborn child: for # 1, one procedure since 2007; for # 2, zero since 2013; and for # 3, four since 2013. See Declaration of Pam Harder (with Exhibits A and B).

Yet more credible evidence that the thimble is empty.

**C. As it will be applied by Idaho's prosecuting attorneys, the 622 Statute poses no threat of interference with any EMTALA-required medical procedure or of causing any "fears" or "chills" in any competent medical professional.**

As with the treatment of ectopic pregnancies, it is hard to overstate the extent to which the Government relies on its third misleading mechanism. That mechanism is to misread (minimize) the language in the 622 Statute that limits its own scope and to misread (maximize) the scope of its prohibition—and then to *assume* that this State's prosecuting attorneys will zealously second-guess the judgment of the medical professionals providing emergency medical treatment to pregnant women and thereby bring prosecutions against those involved whenever the treatment is related to the death of the preborn child—and do so as a matter of course, if not automatically. False picture and one painted without any factual support.

We believe that the only admissible, credible evidence before this Court relevant to this third mechanism will be to this effect: When some serious medical condition exists that requires an emergency medical procedure under EMTALA, with that procedure ending the life of the pre-born child, this State's prosecuting attorneys, in the standard and ordinary exercise of their prosecutorial discretion, will not second-guess the judgments and decisions of the involved medical professionals. Indeed, they will not even seriously consider prosecuting under the 622 Statute. There is one caveat to these facts but one that helps the Government not at all: if a prosecuting attorney were to receive clear and convincing evidence that the procedure was done in bad faith, that is, as a fabricated emergency medical condition and a sham designed to evade the 622 Statute, then they will seriously consider prosecution.

We base this summary of the evidence on conversations with multiple Prosecuting Attorneys in Idaho. We believe in good faith that we will be filing a declaration from one of them by our Wednesday, August 17, 2022, noon filing deadline. We also believe in good faith that, if

this Court allows live testimony, through the use of our subpoena power this Court will hear testimony fully consistent with our summary above and none materially contrary to it.

On this basis, we respectfully submit that, yet again, the Government's picture of a conflict between EMTALA and the 622 Statute is fabricated and false, without any foundation in fact.

III.   **The Correct Factual and Legal Understanding of the Scope of Both EMTALA and the 622 Statute Defeats the Government's Efforts to Warp and Distort Their Scope.**

   A.   **A correct factual understanding of the scope of the two statutes, founded on the realities of emergency medicine, reveals the thimble to be empty.**

Dr. Reynolds's declaration at ¶ 8 teaches that "part of a treating Ob-Gyn physician's duty of care is possession of accurate knowledge of the language and real-world application of the jurisdiction's laws regulating abortion." Dr. French's declaration demonstrates an Idaho physician's fulfillment of that duty. Dr. French provides careful analysis of the actual language of the 622 Statute, including its language limiting its own scope, and—and this is important—how in the real world of emergency medicine that language applies. This analysis appears throughout his declaration.

We have already quoted above the French Declaration at ¶ 9 where he demonstrates the error of the Government's doctors' false assumption that under the 622 Statute "physicians will give the health and welfare of the mother less consideration than the health and welfare of the unborn child." This assumption is false exactly because "in the emergency situations presented in these examples [real and hypothetical given by the Government's doctors] and anticipated by EMTALA, the subordination of the mother's life and health in favor of the unborn child by a physician has not and will not occur." *Id*. In turn, this is so exactly because "these same physicians would never interpret Idaho Code 18-622 to mean that the mother's health and welfare are secondary to the baby." *Id*.

Continuing to apply the 622 Statute in the context of real-world emergency medicine, Dr. French testifies regarding the Government doctors' real and hypothetical cases and "similar procedures in the same or similar circumstances":

> The Idaho law as written in no way precludes this life-saving procedure or other similar procedures in the same or similar circumstances. As stated in Section 18-622(4):

> Medical treatment provided to a pregnant woman by a health care professional as defined in this chapter that results in the accidental death of, or unintentional injury to, the unborn child shall not be a violation of this section.

*Id*. at ¶ 15. *See also id*. at ¶ 21.

Turning to EMTALA, Dr. French testifies that "EMTALA is designed and intended simply to facilitate the transfer of patients to facilities that have the capacity to treat them – it is not a statute that mandates any particular type of treatment, but rather "stabilizing treatment" until the patient can be transferred." *Id*. at 10. This is important because, relative to many of the real and hypothetical cases presented by the Government's doctors, those doctors are assuming "that every hospital has the capability to take care of high-risk pregnancy cases." *Id*. Obviously, that is not true "in a rural state such as Idaho." *Id*. And here is a further error in the "scenarios presented in [the Government doctors'] declarations"—those scenarios "imply that in extreme emergency situations, the physician may be confused as to whether his or her first duty is to abort babies or save the life of the mother before transferring her to an appropriate hospital." In the real world, that confusion simply does not happen; the emergency medical providers "the most appropriate action to save the mother's life [which] is to send [her] to the closest hospital with the appropriate resources and personnel for the care of a critically ill pregnant woman." *Id*.

In ¶ 23, Dr. French goes on to explain how specific provisions of EMTALA apply when "the patient is too unstable to transport and the transferring hospital is unable to provide the proper

medications or treatments necessary to 'stabilize' the patient." One provision limits the hospital's EMTALA obligation to provide such screening and treatment as may be within the resources of "'the staff and facilities available at the hospital.' (42 U.S.C. § 1395dd(b)(1)(a).)" *Id.* The second provision provides that EMTALA does not prohibit the transfer of an unstable patient upon a particular medical judgment: when, "based upon the information available at the time of transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual and, in the case of labor, to the unborn child from effecting the transfer." This language is from 42 U.S.C. § 1395dd(c)(1)(A)(ii). *Id.* These EMTALA provisions, which Idaho emergency medical providers apply routinely, show the unworldly, unrealistic nature of one of Dr. Fleisher's key hypothetical examples. *Id.* at ¶ 22.

All this careful analysis of the correct meaning and application of EMTALA and the 622 Statute in the real world sustains Dr. French's key conclusion that "in the emergency situations presented [by the Government's doctors] . . . and anticipated by EMTALA, the subordination of the mother's life and health in favor of the unborn child by a physician *has not and will not occur.*" *Id.* at ¶ 9 (emphasis added). "Further, these same physicians would *never* interpret Idaho Code 18-622 to mean that the mother's health and welfare are secondary to the baby." *Id.* (emphasis added).

The true picture presented by Dr. French is a much-needed antidote to the Government's misleading picture of a state law of draconian reach wreaking havoc in the world of emergency medicine (the 622 Statute) and of a federal law that has as its purpose and effect—surprise—rolling back *Dobbs*' restoration to the States of their Tenth Amendment right, power, and authority to regulate abortion, including the making of all the hard moral decisions that right, power, and

authority require. Attention to Dr. French's analysis leads to the confident conclusion that, instead of havoc, there is harmony. Certainly, there is no conflict between EMTALA and the 622 Statute.

So, yes, as a matter of fact, the thimble is empty.

**B. A correct legal understanding of the scope of the two statutes, especially EMTALA, also reveals the thimble to be empty.**

We have in hand a thorough-going analysis of the law governing any invocation and application of EMTALA. That analysis demonstrates that the Government's invocation and application of EMTALA here are accurately seen as wrong and abusive. Because of this Court's currently in-place order limiting the Legislature to fact issues and precluding it from making legal arguments, we cannot present that analysis in this brief and can only hope that the Attorney General's Office adequately mirrors what we have in hand (which we have shared with it).

Our legal analysis demonstrates that:

1. EMTALA does not preempt the 622 Statute expressly.

2. EMTALA does not impliedly preempt the 622 Statute.

3. The Government's interpretation of EMTALA conflicts with serious constitutional doctrines.

   a. As read by the Government, EMTALA poses serious separation-of-powers conflicts because of the statute's deprivation of state authority affirmed by the United States Supreme Court in *Dobbs*.

   b. As read by the Government, EMTALA poses serious concerns that it violates the Major Questions Doctrine.

   c. As read by the Government, EMTALA poses serious concerns that it violates the limits of the Spending Clause.

In the event this legal analysis is not adequately presented to the Court in defense of the 622 Statute, we will promptly accept this Court's prior invitation to seek a modification of the existing limits on the scope of the Legislature's intervention so as to be able to present the legal analysis to this Court.

Dated this 16th day of August, 2022.

MORRIS BOWER & HAWS PLLC

By:   /s/ Daniel W. Bower
       Daniel W. Bower

  /s/ Monte Neil Stewart
Monte Neil Stewart

*Attorneys for Proposed Intervenors-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Brian David Netter
DOJ-Civ
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530
Email: brian.netter@usdoj.gov

*Attorneys for Plaintiff*

Daniel Schwei
DOJ-Civ
Federal Programs Branch
1100 L St NW, Ste 11532
Washington, DC 20530
Email: daniel.s.schwei@usdoj.gov

*Attorneys for Plaintiff*

Julie Straus Harris
DOJ-Civ
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Email: julie.strausharris@usdoj.gov

*Attorneys for Plaintiff*

Lisa Newman
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Email: lisa.n.newman@usdoj.gov

*Attorneys for Plaintiff*

Anna Lynn Deffebach
DOJ-Civ
Civil Division- Federal Programs Branch
1100 L ST NW
Ste Lst 12104
Washington, DC 20005
Email: anna.l.deffebach@usdoj.gov

*Attorneys for Plaintiff*

Christopher A. Eiswerth
DOJ-Civ
Federal Programs Branch
1100 L Street, NW
Ste 12310
Washington, DC 20005
Email: christopher.a.eiswerth@usdoj.gov

*Attorneys for Plaintiff*

Emily Nestler
DOJ-Civ
1100 L Street
Washington, DC 20005
Email: emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff*

Brian V Church
Dayton Patrick Reed
Ingrid C Batey
Megan Ann Larrondo
Steven Lamar Olsen
Office of the Attorney General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83702-0010
Email: brian.church@ag.idaho.gov
        dayton.reed@ag.idaho.gov
        ingrid.batey@ag.idaho.gov
        megan.larrondo@ag.idaho.gov
        steven.olsen@ag.idaho.gov

*Attorneys for Defendant*

Wendy J. Olson
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702-7705
Email: wendy.olson@stoel.com

Jacob M. Roth *(pro hac vice)*
Charlotte H. Taylor *(pro hac vice)*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Email: ctaylor@jonesday.com
        yroth@jonesday.com

*Attorneys for Amici Curiae The American Hospital Association and The Association of American Medical Colleges*

Amanda K. Rice *(pro hac vice)*
JONES DAY
150 West Jefferson, Suite 2100
Detroit, MI 48226-4438
Email: arice@jonesday.com

*Attorneys for Amici Curiae The American Hospital Association and The Association of American Medical Colleges*

Shannon Rose Selden *(pro hac vice)*
Leah Martin *(pro hac vice)*
Adam Aukland-Peck *(pro hac vice)*
DEBEVOISE &PLIMPTON LLP
919 Third Ave.
New York, NY 10022
Email: srselden@debevoise.com
        lmartin@debevoise.com
        aauklandpeck@debevoise.com


*Attorneys for Amici*

Jeffrey B. Dubner *(PHV forthcoming)*
Skye L. Perryman *(PHV forthcoming)*
John T. Lewis *(PHV forthcoming)*
Maher Mahmood *(PHV forthcoming)*
DEMOCRACY FORWARD FOUNDATION
655 15th St. NW, Ste 800
Washington, D.C. 20005
Email: jdubner@democracyforward.org
        sperryman@democracyforward.org
        jlewis@democracyforward.org
        mmahmood@democracyforward.org


*Attorneys for Amici*

 */s/ Daniel W. Bower*
_____
Daniel W. Bower