**JAY ALAN SEKULOW**,* GA Bar No. 634900
**JORDAN A. SEKULOW**,* DC Bar No. 991680
**STUART J. ROTH**,* DC Bar No. 475937
**LAURA B. HERNANDEZ**,* VA Bar No. 29853
**OLIVIA F. SUMMERS**,* VA Bar No. 86919
American Center for Law & Justice
201 Maryland Avenue
Washington, D.C. 20002
Tel: 202-546-8890;
Fax: 202-546-9309
sekulow@aclj.org

*Counsel for Amicus Curiae,*
*American Center for Law & Justice*
*Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:22-cv-329-BLW |
| *Plaintiff*, | |
| v. | *AMICUS CURIAE* **BRIEF OF AMERICAN CENTER FOR LAW & JUSTICE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| **THE STATE OF IDAHO**, | |
| *Defendant*. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

CORPORATE DISCLOSURE STATEMENT ........................................................1

INTEREST OF *AMICUS* ..................... **ERROR! BOOKMARK NOT DEFINED.**

SUMMARY OF ARGUMENT ................................................................................2

INTRODUCTION ....................................................................................................3

ARGUMENT ............................................................................................................5

    I. THE UNITED STATES LACKS STATUTORY AUTHORITY TO BRING THIS SUIT ..........................................................................................................................6

    II. THE UNITED STATES LACKS IMPLIED AUTHORITY TO BRING THIS SUIT ..........9

CONCLUSION .......................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    140 S. Ct. 2082 (2020)..................................................................................6

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..................................................................................8, 9

*Arizona v. Yellen*,
    34 F.4th 841 (9th Cir. 2022) ........................................................................6

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006)......................................................................................7

*Armstrong v. Exceptional Child Ctr.*,
    575 U.S. 320 (2015).........................................................................6, 7, 8, 9

*Cummings v. Premier Rehab Keller, P.L.L.C. No. 20-219*,
    142 S. Ct. 1562 (2022)..................................................................................7

*Eberhardt v. City of Los Angeles*,
    62 F.3d 1253 (9th Cir. 1995) ....................................................................3, 4

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002).......................................................................................9

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)..............................................................................9, 10

*Jackson v. E. Bay Hosp.*,
    246 F.3d 1248 (9th Cir. 2001) .....................................................................3

*Munaf v. Geren*,
    553 U.S. 674 (2008).......................................................................................5

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012)...................................................................................6, 8

*New York Times Co. v. United States*,
    403 U.S. 713 (1971)......................................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981).....................................................................................6, 8

*Townsend v. Swank*,
    404 U.S. 282 (1971)......................................................................................7

*United States v. City of Philadelphia*,
    644 F.2d 187 (3d Cir. 1980) ..................................................................10, 11

*United States v. Mattson*,
    600 F.2d 1295 (9th Cir. 1979) ..........................................................10, 11, 12

*United States v. Solomon*,
    563 F.2d 1121 (4th Cir. 1977) ....................................................................12

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008).........................................................................................5

**STATUTES**

42 U.S.C. § 1395................................................................................................3, 4, 5

**OTHER AUTHORITIES**

42 C.F.R. § 489.24 .................................................................................................4

David E. Engdahl, *The Spending Power*,
    44 DUKE L.J. 1 (1994)....................................................................................7

*New York Times Co. v. United States*,
    403 U.S. 713 (1971)......................................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981).....................................................................................6, 8

*Townsend v. Swank*,
    404 U.S. 282 (1971)......................................................................................7

*United States v. City of Philadelphia*,
    644 F.2d 187 (3d Cir. 1980) ..................................................................10, 11

*United States v. Mattson*,
    600 F.2d 1295 (9th Cir. 1979) ..........................................................10, 11, 12

*United States v. Solomon*,
    563 F.2d 1121 (4th Cir. 1977) ....................................................................12

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008).........................................................................................5

**STATUTES**

42 U.S.C. § 1395................................................................................................3, 4, 5

**OTHER AUTHORITIES**

42 C.F.R. § 489.24 .................................................................................................4

David E. Engdahl, *The Spending Power*,
    44 DUKE L.J. 1 (1994)....................................................................................7

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law & Justice is a nonprofit organization that has no parent and issues no stock.

## INTEREST OF *AMICUS*

The American Center for Law & Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys have argued before the Supreme Court of the United States in a number of significant cases involving the freedoms of speech and religion. *E.g., Pleasant Grove City v. Summum*, 555 U.S. 460 (2009). The ACLJ frequently participates as amicus curiae in state and federal courts in support of the sanctity of human life. *E.g., Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022); *Zimmerman v. Texas*, No. 21-0262 (appeal pending) (Tex. 2022). The ACLJ is equally committed to the constitutional principles of state sovereignty and federalism, both of which are threatened by the United States' unauthorized suit challenging Idaho's sovereign right to establish abortion policy.

The ACLJ submits this brief on behalf of itself and nearly 100,000 of its supporters (including more than 1,125 in Idaho).

## SUMMARY OF ARGUMENT

The Emergency Medical Treatment and Labor Act (EMTALA) requires that hospitals receiving Medicare funds provide stabilizing medical treatment without regard to patients' ability to pay. The federal government illegitimately claims authority under the Supremacy Clause to seek declaratory and injunctive relief against Idaho's abortion law, asserting that it might potentially conflict with EMTALA's requirement. No such authority exists. The federal government cannot claim statutory authority under EMTALA because EMTALA's enforcement provisions contain no federal right to equitable relief. The Supremacy Clause does not provide such authority for the simple reason that it provides no independent cause of action. Additionally, because EMTALA is an exercise of Congress's spending power, EMTALA's provisions are contractual in nature and thus, unlike laws adopted pursuant to Congress's other enumerated powers, are not binding on the states.

Under controlling Ninth Circuit precedent, the United States also lacks implied authority to bring this suit. The federal government has implied authority to sue only in rare situations which do not include the enforcement of spending clause program conditions. The federal government seeks unbridled authority that strikes at the heart of the separation of powers and comity between federal and state governments.

## INTRODUCTION

EMTALA does not authorize federal oversight of emergency room medical care:

> Nothing in this subchapter [including § 1395dd] shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . or to exercise any supervision or control over the administration or operation of any such institution, agency, or person [providing health services]

42 U.S.C. § 1395. EMTALA does not set a "national standard of medical care." *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995). EMTALA only requires that hospitals stabilize indigent patients with the same care afforded to other patients. *See Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001). Congress enacted EMTALA, commonly known as the "Patient Anti-Dumping Act," in response to the growing concern about the provision of adequate hospital emergency room medical services to the indigent and the uninsured. *Jackson,* 246 F.3d at 1254. Congress sought to address the practice of hospitals "dumping" patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients or by transferring the patients to other hospitals before the patients' conditions stabilized. *Id*. (citations omitted). Codified within the Social Security Act, EMTALA's purpose is to condition Medicare funds on state hospital agreements to provide stabilizing medical care to patients with emergency medical

conditions regardless of the patient's ability to pay. 42 U.S.C. § 1395dd. Under EMTALA, the relevant issue is "whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate as judged by the medical profession." *Eberhardt*, 62 F.3d at 1258.

EMTALA does not mandate specific procedures, including abortion. 42 U.S.C. § 1395dd(c)(2)(A). EMTALA does, however, protect unborn children. It requires stabilizing "the unborn child." 42 U.S.C. §1395dd(c), (e); 42 C.F.R. § 489.24. Additionally, participating hospitals must evaluate and "minimize[] the risk to . . . the health of the unborn child" when transferring the mother to another medical facility. 42 U.S.C. § 1395dd(c)(2)(A).

EMTALA provides that state law governs standards of care in private lawsuits for EMTALA violations. *Id.* § 1395dd(d)(2). Congress clearly intended that state law controls unless a state requirement "directly conflicts with a requirement of this section." *Id*. § 1395dd(f).

EMTALA is enforced jointly through the Health Care Financing Administration (HCFA) and the Office of Inspector General (OIG) of the Department of Health and Human Services.[1] Violations may result in termination of

---

[1] EMTALA is enforced through a complaint-based process at the state and federal level. Complaints are received by a Health Care Finance Administration regional office (RO). *See* State Operations Manual: Appendix V – Interpretive Guidelines – Responsibilities of Medicare Participating Hospitals in Emergency Cases, CMS.GOV (Dec. 1, 2021),

the hospital's Medicare status[2] or civil fines.[3] Private rights of action are also permitted against any individual or medical facility whose EMTALA violation caused the plaintiff harm. State tort law governs standards of care and claims for compensatory and punitive damages. 42 U.S.C.S § 1395dd(d)(2).

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). It should not be awarded as of right but only if the movant carries the burden of persuasion and demonstrates "a substantial likelihood of success on the merits." *Winter v. NRDC, Inc*., 555 U.S. 7, 20 (2008). Here, the United States cannot carry its burden because it has no authority to bring this lawsuit.

---

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107ap_v_emerg.pdf. The RO authorizes a state survey agency (SA) to investigate the complaint. If the RO reviews the SA's report and finds that the hospital violated "one or more of the anti-dumping provisions of §1866 or 1867" of the Social Security Act, the RO reports the violation to the Office of the Inspector General of the Department of Health and Human Services (OIG), the Center for Medicare and Medicaid Services (CMS), and the Office of Civil Rights.

[2] THE EMERGENCY MEDICAL TREATMENT AND LABOR ACT ENFORCEMENT PROCESS, DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF THE INSPECTOR GENERAL (Jan 2001), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107ap_v_emerg.pdf.

[3] 42 U.S.C. § 1395dd(d)(1)(A) (1994).

## I.     The United States Lacks Statutory Authority to Bring this Suit.

The federal government's lawsuit is a transparent attempt to use Spending Clause legislation to coerce compliance with the administration's preferred abortion policy by hauling a sovereign state into federal court seeking equitable relief for violations of EMTALA that may never occur.  EMTALA does not authorize the federal government to seek equitable relief for current or prospective violations of EMTALA—and for good reason. Spending Clause legislation, such as EMTALA, has no preemptive force under the Supremacy Clause because it is not "law" in the sense that state compliance is constitutionally required. The Spending Clause power permits the federal government to induce state cooperation with federal policy where Congress's enumerated powers do not allow it to directly compel such cooperation. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("*NFIB*") (holding that Congress may use its Spending power to encourage states to take actions that "Congress could not require them to take"). "The *legitimacy* of Congress' power to legislate under the spending power thus rests on whether the State *voluntarily* and knowingly accepts the terms of the contract." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 12 (1981) (emphasis added).

Congress may only indirectly regulate state conduct by attaching "strings" to grants of money given to state and local governments. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2091 (2020); *Arizona v. Yellen*, 34

6

F.4th 841, 844 (9th Cir. 2022). But those "strings" are binding only as contractual obligations, even though they are usually codified in statutes or regulations. *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 324 (2015). Thus, there is no private cause of action under the Supremacy Clause for violation of a Spending Clause program condition. *Id.* at 324 (holding that the Supremacy Clause does not confer a right of action on Medicaid providers for equitable relief to enforce a Medicaid provision); *see also Townsend v. Swank*, 404 U.S. 282, 292 (1971) (Burger, C.J., concurring) (Spending Clause programs are "in no way mandatory upon the States under the Supremacy Clause. The appropriate inquiry [is]. . . simply, whether the State has indeed adhered to the provisions and is accordingly entitled to utilize federal funds in support of its program."); David E. Engdahl, *The Spending Power*, 44 Duke L.J. 1, 71 (1994) (discrediting the "supremacy fallacy" that Spending Clause program conditions are "Laws of the United States" to which the Supremacy Clause applies).

Like all Spending Clause legislation, EMTALA operates based on consent. States cannot voluntarily and knowingly consent to Spending Clause program conditions unless they have been "clearly told" about them. *See, e.g., Cummings v. Premier Rehab Keller, P.L.L.C. No. 20-219*, 142 S. Ct. 1562, 1568 (2022) (holding that emotional distress damages were not recoverable under Spending Clause antidiscrimination statutes because funding recipients were not clearly told that they

7

could be liable for such relief). For the states to be clearly told, program conditions must be set forth "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006); *Armstrong*, 575 U.S. at 332. "Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system." *NFIB*, 567 U.S. at 577. Otherwise, the Spending Clause power would "obliterate distinctions between national and local spheres of interest and power by permitting the Federal Government to set policy in the most sensitive areas of traditional state concern, areas which otherwise would lie outside its reach." *Id.* at 676 (Scalia, Alito, Kennedy, and Thomas, JJ., dissenting) (cleaned up).

Stealth conditions, invented by judges or the Executive branch, and untethered to statutory text, inevitably risk federal coercion of state policy. "Congress's power to legislate under the spending power … does not include surprising participating States with post-acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25; *NFIB,* 567 U.S. at 580 (holding that "post-acceptance" Medicaid expansion provisions exceeded Congress's Spending power because they crossed the line "between encouragement and coercion").

The remedies Congress chose to enforce EMTALA do not include authorization for the federal government to haul sovereign states into federal court seeking equitable relief for violations that may never occur. The "express provision

8

of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *Armstrong*, 575 U.S. at 324 (holding that the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements, a "breach" of the Spending Clause contract, is withholding of Medicaid funds). "We have no warrant to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of a judge-made action at equity." *Id*. at 329.

No EMTALA provision clearly and unambiguously authorizes federal lawsuits seeking equitable relief against prospective violations that may never occur. Permitting this suit to proceed would turn the non-coercion principle of Spending Clause legislation on its head. There would be no limit on the federal government's power to swoop into federal court for the purpose of dictating state policy. The United States' broadside attack on federalism in this case should be repelled.

**II.   The United States Lacks Implied Authority to Bring this Lawsuit.**

For at least two decades, the Supreme Court has repeatedly declined to recognize implied causes of action that Congress did not expressly authorize to enforce a federal law. *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (rejecting implied right of action to enforce the Family Educational Rights & Privacy Act); *Armstrong*, 575 U.S. at 320 (holding that no private right of action exists to enforce Medicaid provision). The Court firmly grounded these holdings on the

principle that implying private rights of action that Congress has not created trenches upon the separation of legislative and judicial power. *See, e.g., Sandoval,* 532 U. S. at 286-87 (2001) ("like substantive federal law itself, private rights of action to enforce federal law must be created by Congress"); *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) ("In later years, we came to appreciate more fully the tension between [implying private rights of action] and the Constitution's separation of legislative and judicial power."); *see also New York Times Co. v. United States*, 403 U.S. 713, 742 (1971) (Marshall, J., concurring) (The Constitution does "not provide for government by injunction in which the courts and the Executive Branch can make law without regard to the action of Congress.") (cleaned up).

The same principle governs federal claims of implied authority to bring suit for equitable relief. Implied authority to bring a suit for equitable relief exists only (1) to prevent interference with national security; (2) to defend a federal property interest; or (3) to remove a burden on interstate commerce. *See United States v. Mattson*, 600 F.2d 1295, 1299 (9th Cir. 1979) (discussing cases). Thus, even where there are ongoing civil rights violations, the United States does not have implied authority to bring a suit for injunctive relief against state and local government officials. *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980). There, the DOJ alleged that the City of Philadelphia, through numerous high-ranking officials of the City and its Police Department, engaged in a "pattern or practice of

10

depriving persons of rights protected by the due process clause of the fourteenth amendment." *Id*. at 190. The Third Circuit labeled the DOJ's assertion of implied authority "an attempt by the federal executive to intervene on a grand scale in the workings of a local government, an area that is manifestly the concern of the states and not the federal government." *Id*. at 198. In poignant language with direct applicability to the United States' suit here, the court warned that

> the power which the Attorney General claims in this case is simply not compatible with the federal system of government envisioned by the Constitution. This power, in essence, would permit the Justice Department to bring a civil suit against any state or local administrative body merely because the Attorney General and his subordinates have determined that the defendant's operating policies and procedures violate any one of the civil rights guaranteed to citizens by the Constitution and laws of the United States. The purpose of such a lawsuit would be to obtain an injunction altering the challenged procedures. Quite literally, there would be no end to the local and state agencies, bureaus, offices, departments, or divisions whose day-to-day operating procedures could be challenged by suit, and changed by injunction.

*Id*. at 200.

The rule against implied authority for the federal government to bring injunctive suits against state governments applies with equal force to spending clause legislation conditions. *Mattson*, 600 F.2d at 1297. *Mattson* involved a DOJ claim of implied authority to bring a suit for injunctive relief to enforce Spending Clause program conditions intended to protect the rights of the mentally disabled.

11

*Id*. at 1299. The relevant statute's enforcement mechanisms were similar to EMTALA's: the federal government could withhold federal funds for violations, and states could impose state law remedies. *Id*. at 1299–1300. The statute did not expressly authorize the federal government to bring suit. Though the federal government had a "keen interest" in protecting the rights of the mentally disabled, that interest did not confer implied authority to bring suit. *Id.*; *see also United States v. Solomon*, 563 F.2d 1121, 1129 (4th Cir. 1977) (holding that "considerations of federalism and comity" require rejection of the United States' claim of implied authority to sue to enforce spending clause legislation).

> The need to protect the individual branches of government from intrusion is a task not to be taken lightly. Just as any potential abuse of the judiciary must be curbed, any attempt by the executive branch to encroach in an area properly reserved for Congress must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system.

*Mattson*, 600 F.2d at 1301 (cleaned up).

The United States lacks implied authority to bring this suit and its attempt to do so violates the separation of powers.

## CONCLUSION

Amicus requests that this Court deny the Plaintiff's Motion for Preliminary Injunction and dismiss its Complaint.

Respectfully submitted,

**AMERICAN CENTER FOR LAW & JUSTICE**

Dated: August 18, 2022

By: /s/Jay Alan Sekulow
Jay Alan Sekulow, Chief Counsel*
Jordan A. Sekulow*
Stuart J. Roth*
Laura B. Hernandez*
Olivia F. Summers*
American Center for Law & Justice
201 Maryland Avenue
Washington, D.C. 20002
Tel: 202-546-8890
sekulow@aclj.org

*Counsel for Amicus Curiae,*
*American Center for Law & Justice*

*Admitted *pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify that, on August 18, 2022, a copy of the foregoing *Amicus Curiae* brief was filed and served pursuant to the Court's electronic filing procedures using CM/ECF.

  /s/Olivia F. Summers
Olivia F. Summers*

*Counsel for Amicus Curiae,
American Center for
Law & Justice*

*Admitted *pro hac vice*