# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No. 1:22-cv-00329-BLW |
| Plaintiff, | |
| v. | |
| THE STATE OF IDAHO, | |
| Defendant, | |
| and | |
| SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE, | |
| Intervenor-Defendants. | |

---

### IDAHO LEGISLATURE'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING PRELIMINARY INJUNCTION

---

Monte Neil Stewart, ISB No. 8129
11000 Cherwell Court
Las Vegas, Nevada 89144
Telephone: (208)514-6360
monteneilstewart@gmail.com

Daniel W. Bower, ISB No. 7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

*Attorneys for Intervenor-Defendants*

<u>TABLE OF CONTENTS</u>

I.      This motion is procedurally proper and satisfies the standard of review ......1

II.     The Idaho Order clearly erred by ignoring Congress's language
        defining the scope of EMTALA and instead using the
        Administration's materially different and misleading language ...................2

III.    Serious legal and constitutional errors render the preliminary
        injunction clearly erroneous............................................................................8

        A.      The Decision Contains Clear Errors of Law Under
                State and Federal Statutes ....................................................................8

        B.      Granting a Preliminary Injunction for the United States
                Commits Clear Errors of Constitutional Law .....................................9

                1.   As read by the Government, EMTALA violates
                     the major questions doctrine .......................................................10

                2.   The Supremacy Clause does not give the United States
                     an implied right of action ............................................................11

                3.   The Preliminary Injunction Exceeds the Court's Powers
                     as an Inferior Court Under Article III .........................................12

                4.   The Court's Decision sanctions an interpretation of
                     EMTALA that exceeds Congress's authority under
                     the Spending Clause ....................................................................13

                5.   The Preliminary Injunction Trenches on Idaho's
                     Reserved Power Under the Tenth Amendment...........................15

CONCLUSION.........................................................................................................16

CERTIFICATE OF SERVICE ...............................................................................17

i

TABLE OF CASES AND AUTHORITIES

**Cases:**

*Alabama Assoc. of Realtors v. Dep't of Health and Human Servs.*,
  141 S. Ct. 2485 (2021)............................................................................10, 11

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)..............................................................................11, 12

*Borden v. United States*,
  141 S. Ct. 1817 (2021).................................................................................7

*Dobbs v. Jackson Women's Health Organization*,
  142 S. Ct. 2228 (2022)...............................................3, 4, 11, 12, 13, 15, 16

*Favia v. Indiana Univ. of Pennsylvania*,
  7 F.3d 332 (3d Cir. 1993)..............................................................................1

*Harrington v. City of Chicago*,
  433 F.3d 542 (7th Cir. 2006) .........................................................................8

*Hayes v. Oregon*,
  No. 1:20-CV-01332-CL, 2022 WL 488069 (D. Or. Feb. 17, 2022)............................1

*Jean v. Nelson*,
  472 U.S. 846 (1985)....................................................................................12

*Katie A., ex rel. Ludin v. Los Angeles Cnty.*,
  481 F.3d 1150, 1152 (9th Cir. 2007) ...........................................................1

*Marbury v. Madison*,
  5 U.S. 137 (1803)........................................................................................16

*NFIB v. OSHA*,
  142 S. Ct. 661 (2022)........................................................................10, 13, 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981)...................................................................................13, 15

*Planned Parenthood of Southeastern Penn. v. Casey,*
    505 U.S. 833 (1992)................................................................................4, 6

*Pyramid Lake Paiute Tribe of Indians v. Hodel,*
    882 F.2d 364 (9th Cir. 1989) ..................................................................1, 2

*Roe v. Wade,*
    410 U.S. 113 (1973)..............................................................................4, 6

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993) .........................................................................1

*Texas v. Becerra,*
    No. 5:22-CV-185-H, 2022 WL 3639525 (N.D. Tex. Aug. 23, 2022) ..............4, 5, 6, 7

*Utility Air Regulatory Group v. EPA,*
    573 U.S. 302 (2014).............................................................................10, 11

*W. Va. v. EPA,*
    142 S. Ct. 2587 (2022)..............................................................................10

*Wholesaler Equity Dev. Corp. v. Bargreen,*
    No. C20-1095RSM, 2021 WL 5648099 (W.D. Wash. Dec. 1, 2021) .........................1

*Wholesaler Equity Dev. Corp. v. Bargreen,*
    No. 21-36010, 2021 WL 7443767 (9th Cir. Dec. 17, 2021)........................................1

**Statutes:**

28 U.S.C. § 1292(a)(1)........................................................................................1

42 U.S.C. § 1395................................................................................................9

42 U.S.C. § 1395dd(b).......................................................................................11

42 U.S.C. § 1395dd(c)(2)(A)..............................................................................3, 7

42 U.S.C. § 1395dd(e)(1)(A) ...............................................................................2

42 U.S.C. §§ 1395dd(e)(1)(A)(i)-(iii) ..................................................................15

I.C. § 18-622 ..............................................................................3, 6, 7, 8, 9, 13, 14, 15, 16

I.C. §§ 18-622(2), (3) ...........................................................................................15

Idaho Code § 18-622(3) ..........................................................................................8

Fed. R. Civ. P. 59(e) ...........................................................................................1, 2

**Other Authorities:**

Affordable Care Act ..............................................................................................14

Exec. Order
      14076, 87 Fed. Reg. 42053, 42053 (July 13, 2022)...........................................4

Social Security Act XVIII .......................................................................................9

U.S. Const. art. I, § 8 ........................................................................................12, 13

Spending Clause.........................................................................................13, 14, 15

Supremacy Clause...............................................................................2, 7, 11, 12

www.hhs.gov ..........................................................................................................4

I.      **This motion is procedurally proper and satisfies the standard of review.**

This motion is procedurally proper.

> When a district court enters an order granting preliminary injunctive relief, parties who take exception to its terms must either file a motion for reconsideration in the district court within ten days under Rule 59(e) [now 28 days], bring an interlocutory appeal from that order under 28 U.S.C.A. § 1292(a)(1), or wait until the preliminary injunction becomes final and then appeal.

*Favia v. Indiana Univ. of Pennsylvania*, 7 F.3d 332, 337–38 (3d Cir. 1993). Motions for reconsideration of orders regarding preliminary injunctions are standard practice in the Ninth Circuit,[1] *see, e.g., Katie A., ex rel. Ludin v. Los Angeles Cnty*., 481 F.3d 1150, 1152 (9th Cir. 2007) ("We have jurisdiction to review the district court's order granting the preliminary injunction and the court's denial of the motion for reconsideration under 28 U.S.C. § 1292(a)(1)."). A motion under Rule 59(e) is timely if "filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). This motion is timely since it follows less than 28 days after the August 24, 2022 entry of the Idaho Order.

This motion satisfies the standard of review. Ninth Circuit precedent holds that "[r]econsideration is appropriate if the district court . . . committed clear error or the initial decision was manifestly unjust . . . ." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). "[A] trial court has discretion to reconsider its prior, non-final decisions. '[T]he major grounds that justify reconsideration involve . . . the need to correct a clear error or prevent manifest injustice.'" *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369

---

[1] Here are some examples from just the past ten months: *Hayes v. Oregon*, No. 1:20-CV-01332-CL, 2022 WL 488069, at *1 (D. Or. Feb. 17, 2022) (reviewing a motion to reconsider denial of a preliminary injunction, stated that a "district court is permitted to reconsider and amend a previous order pursuant to Federal Rule of Civil Procedure 59(e)."); *Wholesaler Equity Dev. Corp. v. Bargreen*, No. C20-1095RSM, 2021 WL 5648099 (W.D. Wash. Dec. 1, 2021), appeal dismissed, No. 21-36010, 2021 WL 7443767 (9th Cir. Dec. 17, 2021) (same).

n.5 (9th Cir. 1989).[2] The following sections demonstrate that reconsideration and alteration of the Idaho Order are necessary to correct a clear error and prevent manifest injustice.

## II.   The Idaho Order clearly erred by ignoring Congress's language defining the scope of EMTALA and instead using the Administration's materially different and misleading language.

In the August 22 hearing, Mr. Stewart spoke of Idaho having drawn its line regulating abortion. Transcript of August 22, 2022 Hearing ("Transcript") at 59. Mr. Netter in response said that the United States had established a different "standard," a different line, protecting abortions in the context of emergency medical conditions. *Id*. at 69. His point was that where Idaho's line went beyond the United States' line, there was a conflict creating a Supremacy Clause issue that must be resolved in favor of the United States by issuing an injunction prohibiting State action in the area of conflict defined by the two lines. *Id*.

Mr. Netter, however, misspoke. The United States has not drawn a line, it has drawn two lines. Congress drew one line, and the current administration ("Administration"), through its Department of Justice ("DOJ") and its Department of Health and Human Services ("DHHS"), has (since and in response to June 24) drawn a different line. A materially different line.

Congress's line and the Administration's newly minted line diverge at subpart (i) of EMTALA's definition of "emergency medical condition." 42 U.S.C. § 1395dd(e)(1)(A) says in relevant part:

> (1) The term "emergency medical condition" means—(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman *or her unborn child)* in serious jeopardy . . . ."

42 U.S.C. § 1395dd(e)(1)(A) (emphasis added).

---

As this language reveals, Congress drew its line to protect *both* the mother *and* the unborn child in an emergency medical situation. By contrast, the Administration draws its line to eliminate all protection for the unborn child in such situations. It did so by a simple expedient—it silently erased "or her unborn child" from all DOJ filings here (including in its Proposed Order, Dkt. 17-2, which this Court used word-for-word in the Idaho Order at 38-39) and from all DHHS Guidance and other communications.

In the August 22 hearing, this was the Legislature's thrice-iterated "most important point." Transcript at 60, 62. The Government's Proposed Order, with its inclusion of the altered subpart (i) language, was seeking to enjoin State action where there was *no* conflict between federal law and state law. This matters because this Court's "authority extends to the boundary of the conflict and no further. You can enjoin 622 to the extent of a conflict …. But that's the limit of your authority to enjoin enforcement and operation of 622." *Id*. at 61. Moreover, and distressingly, the DOJ was erasing Congressional language expressly written to protect the health of preborn children in order to expand the injunction's scope and, thereby, greatly increase the risk of death for such children. That purpose squarely contradicts EMTALA's clear language and Congress's evident intent that "the health of . . . the unborn child" not be put "in serious jeopardy." 42 U.S.C. § 1395dd(c)(2)(A).

Mr. Stewart went on to note correctly that this alteration, this erasure, of Congressional language was done in an effort to fulfill at least in part the Administration's "political promise to push back against *Dobbs*." *Id*. at 62. That political promise was made so publicly and so soon after *Dobbs* that everyone in the courtroom knew what Mr. Stewart was referring to.[3] Soon after *Dobbs*

---

[3] Describing the Supreme Court's decision in *Dobbs* as the cause of a nationwide "health crisis," President Biden responded with an executive order directing HHS to "consider[ ] updates to

overruled the *Roe/Casey* abortion regime and returned to the respective States and their people their constitutional authority to regulate abortion, the Administration publicly announced that the federal executive branch, across all its departments, would use whatever means it could grasp in an effort both to thwart the *Dobbs* decision and to attempt to resurrect to the greatest extent possible the nationwide *Roe/Casey* abortion regime. That was the political promise, with this civil action being one effort to fulfill it—or, more accurately, to create the appearance of fulfilling it. [4]

During the August 22 hearing, the Legislature's counsel sought to share not just the uncensored EMTALA language but also a "blue-line" of the Government's Proposed Order that limited its scope to the scope of the real conflict (defined by Congressional language), rather than the scope of the manufactured conflict (defined by the altered subpart (i) language). Transcript at 62-63. The Court declined to look at the "blue-line," suggesting it could be filed post-hearing. *Id.* at 65. The Legislature did file it following the hearing, later that same day. Dkt. 93.

Then on August 23, the United States District Court for the Northern District of Texas issued its Decision and Order making the same thrice-iterated "most important" point. *Texas v. Becerra*, No. 5:22-CV-185-H, 2022 WL 3639525 (N.D. Tex. Aug. 23, 2022) ("Texas Decision"). This Court had the Texas Decision in hand on August 24, Dkt. 94-1, although the later-filed Idaho Order makes no reference to it.

---

current guidance on obligations specific to emergency conditions and stabilizing care under [EMTALA]." Exec. Order 14076, 87 Fed. Reg. 42053, 42053 (July 13, 2022). HHS promptly obliged. A few days later, it issued "clarifying guidance" under EMTALA, along with Secretary Becerra's statement that the statute "preempts state law restricting access to abortion in emergency situations." https://www.hhs.gov/about/news/2022/ 07/11/following-president-bidens-executive-order-protect-access-reproductive-health-care-hhs-announces-guidance-clarify-that-emergency-medical-care-includes-abortion-services.html. This case is nothing more or less than Administration policy operationalized as high-stakes litigation against the State of Idaho.

[4] We say "create the appearance" because, according to our research, at its broadest the Government's case affects a category of abortions that, under the *Roe/Casey* regime, accounted for less than 2% of all Idaho abortions.

Regarding the Legislature's "most important" point, the Texas Decision first detailed the context and making of the political promise and the scope of efforts to fulfill it, including the DHHS Guidance, *id.* at 6–9, and this Idaho civil action, *id.* at 37. (All Texas Decision page references are to the version filed in this civil action as Document 94-1.)

That Decision then addresses the uncensored language of subpart (i), which created "EMTALA's equal obligations to the pregnant woman and her unborn child" but also "create[d] a potential conflict in duties that [EMTALA] does not resolve," *id.* at 42, specifically, what do doctors do "where emergency medical conditions threaten the health of both the pregnant woman and the unborn child"? *Id.* at 43.

After thorough analysis of the relevant statutory and case law bearing on "the obligations of doctors in cases of conflict between the health of a pregnant woman and her unborn child," the Texas court concluded that "there is no direct conflict between EMTALA and state laws that attempt to address that circumstance." *Id.* at 44. There is no "impossibility" preemption, *id.* at 45– 46, and no "obstacle" preemption, *id.* at 46–49. Because EMTALA simply "does not resolve how stabilizing treatments must be provided when a doctor's duties to a pregnant woman and her unborn child possibly conflict," *id.* at 49, "EMTALA leaves [that resolution] to the states." *Id.*

The Texas Decision utterly rejects the government's attempt to use EMTALA as a wedge to leverage federal control over state abortion laws. That Decision repudiates the government's theory of preemption: since "EMTALA leaves unresolved the conflict between emergency medical conditions that threaten the health of both the pregnant woman and the unborn child—and therefore . . . does not preempt state law filling that void—it becomes clear the Guidance [and the identically worded Proposed Order] goes beyond the language of" EMTALA. *Id.* This is because the Administration's "erasure" scheme requires (DHHS's Guidance) or allows (DOJ's Proposed

Order) "physicians to perform abortions when they believe that an abortion would resolve a pregnant woman's emergency medical condition irrespective of the unborn child's health and contrary state law." *Id*. Thus, the Administration's scheme of omitting statutory language specifically requiring medical care to protect a preborn child "stands contrary to" EMTALA. *Id*. at 50.

The Texas Decision concludes with well-deserved criticism of the Administration's "erasure" scheme—its "conspicuous omission of the reference to the health of the 'unborn child.'" *Id*. Rightly, the Decision found the Administration's distortion of plain statutory language indefensible—especially as a political maneuver to repurpose EMTALA as a kind of *Roe/Casey* Restoration Act. *Id.* at 49–52. Because EMTALA "expresses explicit concern for the unborn child," *id*. at 52, "[t]his concern is critical to understanding how the statute [EMTALA] approaches abortion—if at all." *Id*.

> In such a case, the Court [along with, by this point, every other good-faith reader] finds it difficult to square a statute that instructs physicians to provide care for both the pregnant woman and the unborn child with [preliminary injunction language] excluding the health of the unborn child as a consideration when providing care for a mother. If there ever were a time to include the full definition of an emergency medical condition, the abortion context would be it.

By adopting wholesale the Government's Proposed Order with its altered subpart (i) language, the Idaho Order at 38-39 stepped beyond the bounds of EMTALA and thereby stepped beyond the bounds of any real conflict between federal law (Congress's law, not the Administration's clumsy counterfeit) and Idaho's 622 Statute. That in turn means that the Idaho Order at 38-39 steps beyond this Court's lawful authority. *See* Transcript at 61 (a district court's "authority extends to the boundary of the conflict and no further"). The United States Supreme Court has made the same point, forcefully:

> Simply put, where enforcement of a law would conflict with the Constitution, a court has authority under the Supremacy Clause to enjoin enforcement, but a court *cannot*, consistent with separation of powers, enjoin enforcement of a statute where enforcement would be lawful.

*Borden v. United States*, 141 S. Ct. 1817, 1836 (2021) (emphasis added).

This binding law means that a preliminary injunction should not affect the enforcement of the 622 Statute except insofar as EMTALA requires it. Therein lies the rub. By crediting the Government's misinterpretation of EMTALA—built on a deliberate omission of language requiring the protection of a pregnant woman's unborn child—this Court's preliminary injunction purports to enjoin the 622 Statute where the language of EMTALA does not apply.

We, therefore, urge the Court to amend pages 38 and 39 of the Idaho Order in keeping with the "blue-line" submitted by the Legislature. That "blue-line" document takes out the Government's altered subpart (i) language, while leaving in the subpart (ii) and subpart (iii) language. Idaho's 622 Statute on its face (although not in application) is different from the Texas statute addressed in the Texas Decision relative to those two subparts.

Modifying the preliminary injunction in this way is literally a life-and-death matter. Some of Idaho's preborn children may well die as a consequence of the Idaho Order as now written—children whose lives Idaho's 622 Statute protects properly and constitutionally. If the 622 Statute is to be enjoined at all, the Idaho Order should conform with the actual language of EMTALA—not a version partially erased to serve the Administration's political purposes. Remember that EMTALA clearly requires that the health of the unborn child not be put "in serious jeopardy," 42 U.S.C. § 1395dd(c)(2)(A), let alone in that ultimate jeopardy created by the Administration's "erasure" scheme.

**III.    Serious legal and constitutional errors render the preliminary injunction clearly erroneous.**

A motion for reconsideration should be granted when the judgment rests on a clear error of law. *See Harrington v. City of Chicago*, 433 F.3d 542 (7th Cir. 2006) (altering or amending a judgment is permitted when there has been a manifest error of law). Here, the decision granting a preliminary injunction to the United States relies on a misstatement of Idaho law and an omission of federal law. Even more critically, the decision does not address multiple legal and constitutional errors that the State and Legislature brought to the Court's attention. For those reasons, the preliminary injunction should be vacated.

*A.  The Decision Contains Clear Errors of Law Under State and Federal Statutes.*

The Court's analysis relies on a misstatement of Idaho law. When explaining why the affirmative defenses in Idaho Code § 18-622 did not "cure" the impossibility of complying with both Idaho law and EMTALA, the district court criticized those defenses. Decision at *8. "The affirmative defense admits that the physician committed a crime but asserts that the crime was justified and is therefore legally blameless. And it can only be raised after the physician has already faced indictment, arrest, pretrial detention, and trial for every abortion they perform." *Id.* (citation omitted). Not so. Idaho has not adopted the draconian scheme that the Court has described. Section 622 plainly says that the life of the mother, rape, and incest are "affirmative defense[s] *to prosecution*." Idaho Code § 18-622(3) (emphasis added). No physician faces the gantlet of criminal prosecution, so long as he or she performs an abortion under the circumstances provided for by statute. Because the Court's analysis of the central issue of preemption turns on an incorrect rendition of section 622, the preliminary injunction stands on a clear error of law.

The decision likewise goes awry by neglecting to address a federal statute that expressly limits EMTALA's preemptive force, even though the decision squarely relies on preemption as

the reason for enjoining the 622 Statute. *See* Decision at *18–26 (discussing impossibility and obstacle preemption). That provision says that "[n]othing in *this subchapter* shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided … or to exercise any supervision or control over the administration or operation of any such institution, agency, or person." 42 U.S.C. § 1395 (emphasis added). This directive *not* to preempt state law is controlling because EMTALA falls within subchapter XVIII of the Social Security Act. Since the Court's analysis did not address section 1395, or its effect on the government's preemption claims, that too is a clear error of law that calls for the preliminary injunction to be vacated.

> B.  *Granting a Preliminary Injunction for the United States Commits Clear Errors of Constitutional Law.*

Mistakes of statutory interpretation are surely enough to warrant reconsideration. But it is the multiple constitutional errors raised by the case brought by the United States that make reconsideration especially urgent. Although the State and the Legislature presented serious constitutional objections to the Government's case, the Court declined to address them. The State argued that the government's interpretation of EMTALA renders the statute "invalid as coercive spending clause legislation." *United States v. State of Idaho*, No. 1:22-cv-00329-BLW, 2022 WL 3692618, at *6 (D. Idaho Aug. 24, 2022) (Decision). But that objection was brushed aside as "not sufficiently developed," to which the Court added the inapplicable rule that "courts should [not] anticipate a question of constitutional law in advance of the necessity of deciding it." *Id.* (quotation omitted). For its part, the Legislature submitted substantial constitutional objections in a memorandum attached to its Motion for Leave to File Legal Arguments, but the Court denied the Motion and declined to address those objections. Docket Entry Order, Doc. 75. These rulings

effectively denied the State and the Legislature any hearing on their constitutional objections to the complaint. We respectfully ask the Court to consider those objections now.

       1.   *As read by the government, EMTALA violates the major questions doctrine.*

Under the major questions doctrine courts "expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014). When this rule applies, "something more than a merely plausible textual basis for the agency action is necessary." *Id.* at 2609. Requiring an unusually clear delegation of congressional authority over a matter of national significance reflects the nondelegation doctrine, which preserves the separation of powers by ensuring that "any new laws governing the lives of Americans are subject to the robust democratic processes the Constitution demands." *NFIB v. OSHA*, 142 S. Ct. 661, 669 (2022) (Gorsuch, J., concurring). In this way, the major question doctrine resolves the problem of "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022). Three times in the past year alone, the Supreme Court has invoked the major questions doctrine as sufficient reason to declare certain Administration initiatives unconstitutional. *Id.* at 2616 (invalidating an EPA rule because "[a] decision of such magnitude and consequence rests with Congress itself, or an agency acting pursuant to a clear delegation from that representative body"); *NFIB v. OSHA*, 142 S. Ct. 661, 666 (2022) (setting aside an OSHA standard requiring large employers to ensure that their employees were vaccinated against COVID-19); *Alabama Assoc. of Realtors v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485 (2021) (voiding a nationwide eviction moratorium imposed by the Centers for Disease Control).

The Idaho Order sanctions a violation of the major questions doctrine by deferring to an executive branch interpretation of EMTALA that inaugurates unprecedented authority over a matter of grave political importance, without express congressional approval. The United States

asserts that federal law precludes Idaho from regulating abortion insofar as it qualifies (in the government's view) as needed "stabilizing treatment" for a pregnant woman at a federally funded emergency center. Decision at *2. But exerting federal control over state abortion law is indisputably a matter of "vast … political significance." *Utility Air Regulatory Group*, 573 U.S. at 324. It takes "more than a merely plausible textual basis" to justify a federal assault on the constitutional authority that Idaho possesses under *Dobbs*. *Id.* at 2609. The United States must show that Congress has spoken with unusual clarity in requiring emergency rooms to perform abortion procedures even when unnecessary to save a mother's life. And that the United States has failed to do. EMTALA's glancing reference to "[n]ecessary stabilizing treatment" hardly speaks with the requisite clarity to the issue of abortion procedures, given the prospect of upending Idaho law on a question of enormous public significance. 42 U.S.C. § 1395dd(b). Like the CDC's eviction moratorium, the government's weaponization of EMTALA grants the government "a breathtaking amount of authority," *Ala. Assoc. of Realtors*, 141 S. Ct. at 2489, by imposing a nationwide abortion mandate through an unreasonable interpretation of a narrow statute.

2. *The Supremacy Clause does not give the United States an implied right of action.*

As described more fully in an amicus brief filed by 17 states, the Supremacy Clause does not contain the implied right of action on which this case rests. In another case against the State of Idaho, the U.S. Supreme Court held that providers of residential habilitation services could not bring a suit under the Supremacy Clause challenging the disparity between Idaho's Medicaid reimbursement rates and the supposed requirements of the Medicaid Act. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). Such a suit was barred, the Court explained, because the Supremacy Clause "creates a rule of decision," but not "any federal rights" or "a cause of action." *Id.* at 324–25. Rather, the Clause "instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what

circumstances they may do so." *Id.* at 325. *Armstrong* thus directly forecloses the United States from bringing a lawsuit against the State of Idaho directly under the Supremacy Clause.

Its decision highlights this Court's view that "the Supremacy Clause says state law must yield to federal law when it's impossible to comply with both. *And that's all this case is about*." Decision at *1 (emphasis added). But the Court does not grapple with how *Armstrong* precludes this case. The United States is not "an individual" seeking an injunction to prevent a state regulation from overriding federal immunity. *Id.* at *6 (quoting *Armstrong*, 575 U.S. at 326). Nor does it matter that the United States is "challenging the validity" of Idaho law. *Id. Armstrong* stands for the broad principle that the Supremacy Clause nowhere "give[s] affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." 575 U.S. at 325. On that point, the United States stands in no better position than a private party. Since *Armstrong* bars exactly the kind of claim brought by the Government here, the preliminary injunction rests on another clear error of law.

### 3. The Preliminary Injunction Exceeds the Court's Powers as an Inferior Court Under Article III.

By issuing its preliminary injunction, the Court has exceeded its power as an inferior tribunal. Article III vests "the judicial power of the United States" in "one supreme Court." U.S. Const. art. III, § 1. The resulting judicial hierarchy makes U.S. Supreme Court precedents binding on this Court. *Jean v. Nelson*, 472 U.S. 846 (1985) ("this Court's judgments are precedents binding on the lower courts"). Only weeks ago, the U.S. Supreme Court issued a historic decision overruling 50 years of its own precedents holding that abortion is a federal constitutional right. *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2284 (2022). *Dobbs* specifically held that eliminating a federal right to abortion would result in the return of regulatory authority concerning abortion "to the people and their elected representatives." *Id.* Despite *Dobbs*, the Idaho

Order blocks the State of Idaho from exercising that authority by enjoining the 622 Statute. Since this Court's order does not explain how a statutory interpretation can impede the transfer of constitutional authority pronounced in *Dobbs*, that decision is in error.

> 4. *The Court's Decision sanctions an interpretation of EMTALA that exceeds Congress's authority under the Spending Clause.*

The State fairly briefed the Court on its concern that the Government's interpretation of EMTALA violates the Spending Clause. That is the Clause granting Congress the power "to pay the Debts and provide for the … general Welfare of the United States." U.S. Const. art. I, § 8. To guard against allowing that power to obliterate the fundamental distinction between federal and state powers, the Constitution places "limits on Congress's power … to secure state compliance with federal objectives." *NFIB v. Sebelius*, 567 U.S. 519, 576 (2012). For instance, when "conditions take the form of threats to terminate other significant independent grants, the conditions are properly viewed as a means of pressuring the States to accept policy changes." *Id.* at 580. Federal strings may attach to federal dollars, but "the States must have a genuine choice whether to accept the offer." *Id.* at 588. Also, retroactive conditions on federal funding are disallowed. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981) ("Though Congress' power to legislate under the spending power is broad, it does not include surprising the States with post-acceptance or 'retroactive' conditions."). Both limits are transgressed here.

*First*, the United States threatens to withhold all Medicare funding unless Idaho complies with the Government's novel abortion mandate under EMTALA. That threat is evident from an insistence that "a *hospital* participating in Medicare must comply with EMTALA as a condition of receiving federal funds" and that "*hospitals* enter into written agreements with the [HHS] Secretary confirming they will comply with EMTALA." Mem. in Supp. of Mot. for a Prelim. Inj., United States v. State of Idaho, No. 1:22-cv-329-BLW, at 5 (S.D. Idaho Aug. 8, 2022) ("Mem.")

(emphasis added). The United States insists that EMTALA imposes duties for "all patients, not just for Medicare beneficiaries." *Id.* at 19. This expansive reading of EMTALA leads to a sweeping outcome. Because Idaho Code § 18-622 governs all abortions performed in the state, the Government says, state law will "disrupt the [Medicare] program and deprive the United States of the benefit of its bargain by prohibiting Idaho hospitals from performing EMTALA-mandated services, notwithstanding that hospitals' receipt of Medicare funds is conditioned on them doing so." *Id.* On the Government's view, EMTALA requires Idaho hospitals to perform abortion procedures whenever the Government says so, and noncompliance may result in the loss of all Medicare funds.

Those funds are considerable. By the Government's own estimate, between 2018–20, Idaho's hospitals received $3.4 billion in Medicare funds and the state's 39 emergency centers received $74 million in federal funding—all of which was "conditioned on compliance with EMTALA." *Id.* at 6. Framed in these terms, the threatened loss of federal funding is not limited to support for abortion-related emergency care or abortion-related emergency care for Medicare beneficiaries. As the Government would have it, compliance with EMTALA embraces all Medicare-funded emergency centers and all patients—not only Medicare recipients. *Id.* at 6. Its memorandum lays out the case for denying Idaho hospitals funding under the Medicare program, solely because of its dispute with perceived noncompliance as to a single medical procedure governed by Idaho law and available at only 39 of 52 Medicare-certified hospitals. *Id.*

Threatening to withhold all Medicare-related funding for hospitals in Idaho unless emergency centers comply with an expansive interpretation of EMTALA exceeds the Government's authority under the Spending Clause. Consider a parallel threat in the original Affordable Care Act. There, states complained that "Congress [was] coercing the States to adopt

the changes it wants by threatening to withhold all of a State's Medicaid grants, unless the State accepts the new expanded funding and complies with the conditions that come with it." *NFIB*, 567 U.S. at 575. Agreeing with that objection, the Court held that this provision of ACA amounted to "economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion." *Id.* at 582 (footnote omitted). Likewise here. The Government's threat to withhold all federal funding to any emergency center found to violate EMTALA is not a policy nudge—but "a gun to the head." *NFIB*, 567 U.S. at 581.

*Second*, the United States has sprung this abortion mandate under EMTALA on Idaho long after it agreed to other conditions of participating in Medicare. Trying to impose its abortion mandate on Idaho hospitals retroactively is an independent reason for concluding that the Government is exceeding its powers under the Spending Clause. *Pennhurst*, 451 U.S. at 25.

5. *The Preliminary Injunction Trenches on Idaho's Reserved Power Under the Tenth Amendment.*

The preliminary injunction violates the State of Idaho's reserved power to regulate abortion. *Dobbs* held that that authority now belongs "to the people and their elected representatives." 142 S. Ct. at 2284. There can be no reasonable dispute that Idaho possesses the authority to regulate abortion as a matter of federal constitutional law. But the preliminary injunction will thwart the return of authority prescribed by *Dobbs*. Specifically, the injunction prevents Idaho from carrying out sections 622(2) and (3), to the extent that those provisions collide with provisions under EMTALA that protect a pregnant woman's health from "serious jeopardy," pose a "serious impairment to [her] bodily functions," or threaten to cause a "serious dysfunction of any bodily organ or part." Decision at *15 (quoting 42 U.S.C. §§ 1395dd(e)(1)(A)(i)-(iii)). This order overrides the political, practical, and moral judgment of Idaho lawmakers to protect both mother *and* child by permitting abortion when necessary to save the mother's life and to allow

abortion to terminate a pregnancy resulting from rape or incest, but not otherwise. Idaho Code § 18-622.

Even if the United States could point to unambiguous statutory authority for its attempted blockade of Idaho law, EMTALA is a garden-variety statute that must give way to the Constitution insofar as they conflict. *Marbury v. Madison*, 5 U.S. 137, 177 (1803) (the constitution controls any legislative act repugnant to it."). Under that principle, the Supreme Court's final judgment in *Dobbs* must prevail over conflicting federal statutes. While EMTALA remains valid to the extent that it prescribes certain forms of medical care by institutions participating in Medicare and Medicaid, it cannot be read as the Idaho Order says. The people of Idaho enjoy constitutional authority to govern themselves with respect to abortion, and no federal statute, however overread by an Administration committed to countering *Dobbs*, can lawfully diminish that authority.

## CONCLUSION

For all these reasons, the Court should either modify its August 24 Order to reflect the blue-line document submitted by the Legislature or vacate that Order in its entirety.

Dated this 7th day of September, 2022.

/s/ Daniel W. Bower
Daniel W. Bower
MORRIS BOWER & HAWS, PLLC


/s/ Monte Neil Stewart
Monte Neil Stewart

*Attorneys for Intervenor-Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

BRIAN DAVID NETTER
DOJ-Civ
Civil Division
brian.netter@usdoj.gov

DANIEL SCHWEI
DOJ-Civ
Federal Programs Branch
daniel.s.schwei@usdoj.gov

JULIE STRAUS HARRIS
DOJ-Civ Civil Division,
Federal Programs Branch
julie.strausharris@usdoj.gov

LISA NEWMAN
DOJ-Civ Civil Division,
Federal Programs Branch
lisa.n.newman@usdoj.gov

ANNA LYNN DEFFEBACH
DOJ-Civ
Civil Division,
Federal Programs Branch
anna.l.deffebach@usdoj.gov

CHRISTOPHER A. EISWERTH
DOJ-Civ
Federal Programs Branch
christopher.a.eiswerth@usdoj.gov

EMILY NESTLER DOJ-Civ
emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff United States of America*

Brian V Church
Dayton Patrick Reed
Ingrid C Batey
Megan Ann Larrondo
Steven Lamar Olsen
Office of the Attorney General
brian.church@ag.idaho.gov
dayton.reed@ag.idaho.gov
ingrid.batey@ag.idaho.gov
megan.larrondo@ag.idaho.gov
steven.olsen@ag.idaho.gov

JOAN E. CALLAHAN, ISB #9241
NAYLOR & HALES, P.C.
Special Deputy Attorney General
joan@naylorhales.com

*Attorneys for Defendant*

JAY ALAN SEKULOW
sekulow@aclj.org
JORDAN A. SEKULOW
jordansekulow@aclj.org
STUART J. ROTH
Stuartroth1@gmail.com
OLIVIA F. SUMMERS
osummers@aclj.org
LAURA B. HERNANDEZ
lhernandez@aclj.org

*Attorneys for Amicus Curiae
American Center for Law & Justice*

LAURA ETLINGER
New York State Office
of the Attorney General
laura.Etlinger@ag.ny.gov

*Attorney for Amici States*
*California, New York, Colorado, Connecticut,*
*Delaware, Hawaii, Illinois, Maine, Maryland,*
*Massachusetts, Michigan, Minnesota,*
*Nevada, New Jersey, New Mexico, North*
*Carolina, Oregon, Pennsylvania, Rhode*
*Island, Washington, and Washington, D.C.*

WENDY OLSON
Stoel Rives LLP
wendy.olson@stoel.com

JACOB M. ROTH
AMANDA K. RICE
Jones Day
jroth@jonesday.com
arice@jonesday.com

*Attorneys for Amici Curiae*
*The American Hospital Association and the*
*Association of American Medical Colleges*

SHANNON ROSE SELDEN
Debevoise & Plimpton LLP
srselden@debevoise.com

ADAM B. AUKLAND-PECK
Debevoise & Plimpton LLP
Aaukland-peck@debevoise.com

LEAH S. MARTIN
Debevoise & Plimpton LLP
lmartin@debevoise.com

*Attorneys for Amici Curiae American College*
*of Emergency Physicians, Idaho Chapter of*
*the American College of Emergency*
*Physicians, American college of Obstetricians*
*and Gynecologists, Society for Maternal-Fetal*
*Medicine, National Medical Association,*
*National Hispanic Medical Association,*
*American Academy of Pediatrics, American*
*Academy of Family Physicians, American*
*Public Health Association, and American*
*Medical Association*

I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant via email:

CHARLOTTE H. TAYLOR
Jones Day
ctaylor@jonesday.com

*/s/ Daniel W. Bower*
Daniel W. Bower