# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>    Defendant,<br><br>and<br><br>SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE,<br><br>    Intervenor-Defendants. | Case No. 1:22-cv-329-BLW |

## IDAHO LEGISLATURE'S MEMORANDUM OF LAW SUPPORTING ITS RENEWED MOTION TO INTERVENE

_____

Monte Neil Stewart, ISB No. 8129
11000 Cherwell Court
Las Vegas, Nevada 89144
Telephone: (208)514-6360
monteneilstewart@gmail.com

Daniel W. Bower, ISB No. 7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

*Attorneys for Intervenor-Defendants*

<u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................1

I.  This Court Left The Door Open To Reconsider Its Order
    Granting The Legislature Limited Permission To Intervene ........................1

II. *Berger* Controls this Case and Permits the Legislature to
    Intervene as of Right .....................................................................................2

III. Even If *Berger* Did Not Control, the Course of this Litigation
     Demonstrates that the Attorney General's Office Is Not
     Representing the Legislature's Interests Adequately ....................................7

    A.  Different Approaches to procedural matters distinguish
        the Legislature's litigation posture from the Attorney
        General's .............................................................................................7

        1.  Delay in submitting a motion for reconsideration
            on the preliminary injunction ......................................................8

        2.  Non-opposition to the Government's motion to extend
            time ..............................................................................................9

    B.  Substantive disparities separate the Legislature's defense
        of Idaho law from the Attorney General's ......................................10

        1.  The AGO declined to present the Legislature's substantial
            legal and constitutional objections to the preliminary
            injunction motion ......................................................................10

        2.  The decision granting a preliminary injunction addressed
            none of the Legislature's constitutional objections ...................11

        3.  During the hearing on the Motion for Preliminary
            Injunction, the Attorney General made concessions
            damaging to the defense of Idaho law ......................................11

        4.  The AGO's Motion for Reconsideration on the
            Preliminary Injunction dramatically differs from
            the Legislature's earlier filed motion .........................................12

CONCLUSION ................................................................................................................ 14

CERTIFICATE OF SERVICE ....................................................................................... 16

## TABLE OF CASES AND AUTHORITIES

**Cases:**

*Berger v. North Carolina State Conference of the NAACP,*
   142 S. Ct. 2191 (2022)...............................................................1, 2, 3, 4, 5, 6, 7, 8, 12

*Dobbs v. Jackson Women's Health Organization,*
   142 S. Ct. 2228 (2022)................................................................................................14

**Statutes:**

I.C. § 18-622 .........................................................................................1, 8, 9, 11, 12, 13, 14

I.C. § 67-465 ...........................................................................................................1, 4, 5, 6

Fed. R. Civ. P. 24(a)(2)...........................................................................................................2

N.C. Gen. Stat. Ann. § 1-72.2 (2021) ....................................................................................3

**INTRODUCTION**

This motion takes up an invitation made by this Court for the Legislature to renew its motion to intervene if the course of this litigation reveals significant differences between the Legislature's litigating approach and that of the Idaho Attorney General's Office ("AGO"). Those differences are now palpable. To explain why full intervention is now warranted, the following sections describe critical procedural and substantive choices by the AGO that distinguish its perspective in this litigation from the Legislature's.

We are convinced, however, that delving into the differing litigation aims and tactics of the Legislature and the AGO is unnecessary. *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022), holds that federal courts should permit intervention as of right when a state applicant demonstrates that a state law expressly authorizes such intervention. Idaho law satisfies that qualification here. Idaho Code § 67-465 expressly authorizes the Legislature to intervene when a state law is challenged as unconstitutional or as preempted or in violation of state law. Because the United States challenges Idaho Code § 18-622 on all these grounds, Section 465 authorizes the Legislature to intervene expressly. *Berger* teaches that such a statutory delegation is entitled to respect in federal court. And that, we respectfully submit, is reason enough to let the Legislature intervene as of right.

**ARGUMENT**

I.    This Court Left The Door Open To Reconsider Its Order Granting The Legislature Limited Permission To Intervene.

On August 13, 2022, this Court issued a memorandum decision and order denying the Legislature's motion to intervene as of right under Rule 24(a)(2). *See* August 13, 2022 Memorandum Decision and Order (Dkt. 27) ("Aug. 13th Order") at 1. That conclusion rested on the Court's determination that "the Legislature has failed to show that it brings a distinct state

interest to bear on this litigation that the State cannot adequately represent." *Id.* at 12. Although the Court granted the Legislature very limited permissive intervention, it left the door open to a renewed motion for intervention as of right. "[I]f during the course of this litigation the facts develop such that it becomes clear the State and Legislature's interests diverge, and the State can no longer adequately represent the Legislature's interests, the Court will entertain a renewed motion to intervene." *Id.* at 2. Since this Court made that statement, the facts have developed such that it is now abundantly clear that "the State and Legislature's interests diverge." Moreover, there are additional legal reasons supporting intervention. But we begin with a more straightforward approach, one that is consistent with the United States Supreme Court's recent decision in *Berger*.

II.    <u>*Berger* Controls this Case and Permits the Legislature to Intervene as of Right.</u>

Federal Rule of Civil Procedure 24(a)(2) governs the Legislature's motion to intervene as of right. It provides that "the court must permit anyone to intervene" when the moving party "claims an interest relating to the … transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Berger* has given this rule its definitive explication and figured prominently in the Court's memorandum and order. *See* Aug. 13th Order at 8–12. To avoid needless repetition, we will rehearse only *Berger's* essential facts and reasoning here.

*Berger* held that the leaders of North Carolina's legislative houses could intervene as of right in a civil action challenging the constitutionality of a state voter identification law. *Id.* at 2198. That holding naturally flows from the principle that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 2201. A contrary

understanding "would risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments." *Id.* Federal interests come into play as well. "Permitting the participation of lawfully authorized state agents promotes informed federal-court decision making and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Id.* at 2202.

*Berger* chiefly rests on this insight—that federal courts should not interpose artificial barriers to intervention when state law authorizes more than one state officer or body to defend state law in court. *Id.* at 2206 ("Ordinarily, a federal court must respect that kind of sovereign choice, not assemble presumptions against it."). There, a North Carolina statute authorized the legislative leaders to represent the state when its laws were challenged. *See* N.C. Gen. Stat. Ann. § 1-72.2 (2021). Yet lower courts applied a presumption against intervention on the ground that "the legislative leaders' interest would be adequately represented by the Governor and the [State Board of Elections] and their legal representative, the attorney general." *Berger*, 142 S. Ct. at 2199. The Supreme Court firmly rejected that presumption. "Any presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests. Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* at 2204–05.

Without the obstacle of such presumptions, the "proper resolution" of the legislators' motion to intervene became clear. *Id.* at 2205. Not only did North Carolina law expressly authorize intervention, but genuine differences divided the State's litigating approach. The Attorney General's decision not to offer "expert-witness affidavits" in support of the challenged law; the Board's failure to "seek a stay" of a preliminary injunction that prevented the operation of state law; and the Attorney General's interests as "an elected official" in catering to "the voting public"

or litigating in sympathy with "the Board's administrative concerns"—these considerations suffice to find that the executive branch's representation of the legislature's interests and concerns was inadequate.

> They [legislative leaders] are not burdened by misgivings about the law's wisdom. If allowed to intervene, the legislative leaders say, they will focus on defending the law vigorously on the merits without an eye to crosscutting administrative concerns. And, they add, the differences between their interest and the Board's in this case demonstrate why state law empowers them to participate in litigation over the validity of state legislation—alive as it is to the possibility that different branches of government may seek to vindicate different and valuable state interests.

*Id.* at 2205.

The party on the other side of the table, the NAACP, complained at the impact of intervention on "trial management." *Id.* While acknowledging that "a proliferation of motions to intervene may be a cause for caution" in some instances, the Court saw no prospect of "a cascade of motions" in that case. *Id.* What's more, it noted that "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions." *Id.* at 2206. And any burdens resulting from allowing the intervention of a single additional party consisting of two legislators "fall well within the bounds of everyday case management." *Id.*

*Berger* controls here. Like the North Carolina legislative leaders, the Idaho Legislature seeks to intervene under the authority of a state statute that this Court did not account for in its initial decision:

> INTERVENTION IN ACTIONS REGARDING CONSTITUTIONALITY OF A STATUTE. When a party to an action challenges in state or federal court the constitutionality of an Idaho statute, facially or as applied, challenges an Idaho statute as violating or being preempted by federal law, or otherwise challenges the construction or validity of an Idaho statute, either or both houses of the legislature may intervene in the action as a matter of right by serving a motion upon the parties as provided in state or federal rules of civil procedure, whichever is applicable.

Idaho Code § 67-465.

4

This statute plainly authorizes the Legislature to intervene in litigation aimed at challenging the validity of Idaho Code § 18-622. The complaint brought by the United States both "challenges … the constitutionality of an Idaho statute" and "challenges an Idaho statute as violating or being preempted by federal law." *See* August 2, 2022 Complaint (Dkt. 1), ¶ 6 ("In this action, the United States seeks a declaratory judgment that Idaho's law is invalid under the Supremacy Clause and is preempted by federal law to the extent that it conflicts with EMTALA."). And like the North Carolina statute in *Berger*, Section 67-465 reflects Idaho's judgment that "leaders in different branches of government may see the State's interests at stake in litigation differently" and that "important public perspectives would be lost without a mechanism allowing multiple officials to respond." *Berger*, 142 S. Ct. at 2197. Intervention should be quite straightforward.

The Aug. 13th Order at 12 distinguished *Berger* on the ground that "the Legislature has failed to show that it brings a distinct state interest to bear on this litigation that the State cannot adequately represent." We respectfully disagree. Section 67-465 vests the Legislature with a distinct legal interest in the defense of state law. It effectively designates the Legislature as one of those "voices the State has deemed crucial to understanding the full range of its interests." *Berger*, 142 S. Ct. at 2201. That distinct interest is sufficient by itself to satisfy *Berger*.

*Berger* cannot be fairly read for the principle that a party moving for intervention as of right must also demonstrate sufficient differences in litigation aims and tactics from the existing parties to satisfy a skeptical court. Instead, *Berger* implicitly endorses the notion that "if [state] law authorizes participation by the legislative leaders on behalf of the State a federal court should find the interest requirement of Rule 24(a)(2) satisfied." *Id.* at 2202. Because Idaho law authorizes intervention by the Legislature to defend a state law assailed for unconstitutionality or an alleged violation of federal law, that same principle justifies intervention here.

When state law authorizes intervention expressly, requiring a state legislature to satisfy a court that its interests are distinct enough to justify intervention essentially smuggles in a kind of "presumption against intervention" condemned in *Berger*. 142 S. Ct. at 2204. *Berger's* teaching was that "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions. *Id.* at 2205. Having to produce evidence that a would-be intervenor's interests significantly diverge from the state's is unnecessary to satisfy the "minimal burden" required under Rule 24(a) when intervention is sought by "duly designated state agents seeking to vindicate state law." *Id.*

Concerns about case management should not overshadow the central point of *Berger*—that federal courts should respect a state's "sovereign choice" to divide authority for representing a state in court between the state attorney general and the state legislature. *Id.* at 2206. Only Justice Sotomayor complained that that rule would "foist" unacceptable burdens on federal courts. *Id.* at 2211 (Sotomayor, J., dissenting). Echoing that dissenting complaint, this Court expressed concern about the burdens of "allow[ing] a legislature the right to intervene in every federal case whenever it says it should be allowed to do so *and* without requiring the legislature to possess a distinct interest or that its interests are inadequately represented." *See* Aug. 13th Order at 15. But Idaho law, section 67-465, contains multiple limiting principles. Intervention is authorized only when a lawsuit "challenges … the constitutionality of an Idaho statute" or "challenges an Idaho statute as violating or being preempted by federal law, or otherwise challenges the construction or validity of an Idaho statute." Idaho Code § 67-465. This is hardly intervention-at-will. As in *Berger*, granting the Legislature's motion does not threaten to open the floodgates for other would-be intervenors. 142 S. Ct. at 2206. As a practical matter, accommodating the Legislature as a

Defendant-Intervenor will impose no greater logistical burdens than those "within the bounds of everyday case management." *Id.*

Under *Berger*, then, the Idaho Legislature should be allowed to intervene as of right because Idaho law authorizes it expressly.

III. Even If *Berger* Did Not Control, the Course of this Litigation Demonstrates that the Attorney General's Office Is Not Representing the Legislature's Interests Adequately.

   A. *Different Approaches to procedural matters distinguish the Legislature's litigation posture from the Attorney General's.*

Suppose, contra *Berger*, that the Legislature is obligated to show that its litigation aims or tactics significantly differ from the AGO's. This Court openly invited the Legislature to renew its motion to intervene if such differences arose. "[I]f during the course of this litigation the facts develop such that it becomes clear the State and Legislature's interests diverge, and the State can no longer adequately represent the Legislature's interests, the Court will entertain a renewed motion to intervene." Aug. 13th Order at 2. Unfortunately, events have shown that the AGO has pursued a different course than the Legislature. Those differences, encompassing procedural and substantive matters, demonstrate that the AGO's representation of the Legislature's interests is inadequate under Rule 24(a)(2).

Before mapping out the territory separating the Legislature from the AGO, we stress that *Berger* did not set a high bar when deciding whether such differences furnish a sufficient reason to find representation inadequate. Failure to offer expert-witness affidavits to counter those introduced by a party opponent, failure to seek a stay from a preliminary injunction, the removability of the state officials acting as defendants, and the nature of the Attorney General as "an elected official"—these were enough to "warrant participation by multiple state officials in federal court." *Berger,* 142 S. Ct. at 2205.

Differences between the Legislature's perspective and the AGO's actions rise to at least the standard outlined in *Berger*. In describing those differences, we do not wish to be misunderstood as "[c]ast[ing] aspersions" on the AGO's litigating choices. *Id.* at 2205. Those choices illustrate the reality that "leaders in different branches of government may see the State's interests at stake in litigation differently." *Id.* at 2197. The AGO may be animated by "crosscutting administrative concerns" that complicate its defense of Idaho Code § 18-622. It should insult no one to say that the Legislature "seek[s] to give voice to a different perspective" from the one presented by the AGO. *Id.* at 2205. Like the legislative leaders in *Berger*, the Legislature has shown abundant commitment to single-mindedly "focus on defending the law vigorously on the merits." *Id.* at 2205.

Differences in approach between the AGO and the Legislature are evident, to begin with, in certain procedural decisions.

   1.   *Delay in submitting a motion for reconsideration on the preliminary injunction.*

The Legislature filed a motion for reconsideration of the decision granting a preliminary injunction on September 7, 2022—14 days after the Court's decision granting a preliminary injunction. *See United States v. State of Idaho*, No. 1:22-cv-00329-BLW, 2022 WL 3692618 (D. Idaho Aug. 24, 2022). Not until two full weeks later, September 21, 2022 (the deadline for filing), did the AGO submit its own motion for reconsideration. This additional time evinces a lack of a sense of urgency, a lack sharply at odds with the Legislature's perspective—that every day that passes with this overbroad and legally erroneous preliminary injunction in place is damaging to vitally important Idaho interests and an affront to the people of Idaho and their elected representatives.

2.   _Non-opposition to the Government's motion to extend time._

On September 15, 2022, the United States filed a motion to extend time for submitting a response to the Legislature's motion for reconsideration on the preliminary injunction. (Dkt. 99). Specifically, the Government requested a delay until "21 days after the State files its motion for reconsideration." Mot. to Extend, at 1. Postponing the response was merited, the Government argued, because it would otherwise have to submit separate responses to the Legislature's and AGO's motions for reconsideration and because the resulting delay "would be no more than two weeks." _Id._ at 3. The following day, the AGO essentially acquiesced in this play for delay when it filed a document styled "State of Idaho's Partial Non-Opposition to United States' Motion to Extend Briefing Schedule Regarding Motions for Reconsideration." (Dkt. 100).

Now ordinarily, a motion for extension of time is a reasonable means of avoiding conflicts for lawyers engaged in multiple and sometimes conflicting representations. Acceding to such a motion is a hallmark of civil and civilized legal practice and is something that counsel for the Legislature nearly always does. But this is no ordinary case. The United States demanded and got expedited—one might say breakneck—briefing schedules when section 622 was about to come into force. Indeed, the Government in its opposition to the Legislature's motion to intervene (Dkt. 15) argued against any interference with what it described as an "extraordinarily expedited" briefing schedule. _See generally,_ United States' Response to the Idaho Legislature's Motion to Intervene (Dkt. 23), p.8.

The resulting burdens on the Legislature's two-man litigation team were irrelevant then. The parties and the Court were engaged in a full-out effort to determine whether Section 622 would be enjoined. Only five days separated the Government's reply to the motion for preliminary injunction and the Memorandum Decision and Order granting the preliminary injunction. Compare

the August 19, 2022 Reply Memorandum in Support of Motion for Preliminary Injunction (Dkt. 86) and August 24, 2022 Memorandum Decision and Order (Dkt. 95).

We rightly fault the Government for its Janus-faced approach. Speed was of the essence when it served the Government's needs, but the brake lights came on the moment that the Government had the injunction in hand. It is at the very least puzzling that the AGO would file a non-opposition to the Government's self-serving efforts to delay consideration of the Legislature's motion. The Legislature's view is simple. Again, with respect, every day that passes with the preliminary injunction in place damages vital Idaho interests, is an affront to the people of Idaho and their elected representatives, and can be touted as an ongoing victory of the current Administration's policy over Supreme Court precedent and, more fundamentally, as a victory of federal power over Idaho's fundamental right of self-government. Delay now is no more tolerable to the Legislature than it was to the United States when the injunction was a wish rather than a reality.

In sum, delay in ending the overbroad and erroneous preliminary injunction is intolerable to the Legislature, while the AGO's own recent conduct says that delay is fine by it.

B. *Substantive disparities separate the Legislature's defense of Idaho law from the Attorney General's.*

1. *The AGO declined to present the Legislature's substantial legal and constitutional objections to the preliminary injunction motion.*

Hobbled by the order granting permissive intervention only in part, counsel for the Legislature forwarded to the AGO a fully drafted legal memo describing multiple legal and constitutional arguments. The AGO refused to incorporate the memo's arguments into the State's memorandum opposing preliminary injunction. Concerned that the Court would issue the injunction without considering its weighty, substantive legal arguments, the Legislature then

10

immediately moved for leave to submit those legal arguments on its own behalf. *See* August 17, 2022 Idaho Legislature's Motion for Leave to File Legal Arguments (Dkt. 69) ("The Legislature's unique legal arguments were not made by the Attorney General's Office in its 11:51 p.m. filing last night.") and attached Exhibit (Dkt. 69-1 ("Unique Legal Arguments of the Idaho Legislature in Opposition to the Government's Motion for Preliminary Injunction.")). The Court denied that motion. (Dkt. 75 (Docket Entry Order) (Aug. 17, 2022).)  This failure highlights both the distinctly different approaches to countering the Government's preliminary injunction motion and why not allowing the Legislature to submit legal arguments was indeed harmful to the Legislature's unique interests.

>    2.   *The decision granting a preliminary injunction addressed none of the Legislature's constitutional objections.*

Significantly, given the Legislature's inability to submit legal argument, the AGO's only constitutional argument under the Spending Clause was deemed insufficiently developed because it was stated only in a footnote. This Court ruled as follows:

> To the extent this "concern" is an argument, it is not sufficiently developed here. *Cf.* Indep. Towers of Wash. v. Washington, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."). The State cannot challenge the constitutionality of a 35-year-old federal statute in a passing footnote.

*See* Aug. 13th Order, at 14.

Again, the AGO's decision to not focus on the constitutional flaws in the Government's position is sharply distinguishable from the Legislature's detailed and substantial arguments contained in the memo presented to the AGO but not used by it and then not allowed by this Court.

>    3.   <u>*During the hearing on the Motion for Preliminary Injunction, the Attorney General made concessions damaging to the defense of Idaho law.*</u>

In addition to not making substantive constitutional arguments, at oral argument, counsel for the AGO took positions at odds with a vigorous defense of Idaho Code § 18-622:

♦   AGO counsel insisted on pressing the argument that the United States was not entitled to an injunction because it had failed to satisfy the legal standard for a facial challenge. *See* Transcript of Proceedings of August 22, 2022 Hearing ("Tr.") at 25:20-23. He did so even after the Court questioned the premise of that argument, pointing out that the United States did not contend that "the entire statute is invalid, only that it's invalid when applied in an emergency room setting where there are EMTALA obligations." Tr. 26:2-6. And even after the Court asked, "Why does it [the AGO's over-labored facial-challenge argument] matter?" *Id*.

♦   AGO counsel conceded, on his proudly asserted authority as a single deputy attorney general, that ending an ectopic pregnancy would be an abortion subject to the prohibitions of the 622 Statute. Tr. 24:19-22, 24:25-25:4. This despite the Legislature's contrary explanation that "[a]n ectopic pregnancy is not an abortion … [b]ecause it will never result in a live birth …." Tr. 58-59.

♦   AGO counsel conceded hypotheticals posed by the Court, even when those hypotheticals rested on an adverse interpretation of the 622 Statute. Tr. 48:3-54:12, 54:14-55-11. The Legislature's counsel vigorously addressed those same hypotheticals in a way exactly contrary to the AGO's approach. Tr. 54-55, 58-59.

These distinctions are readily apparent from the transcript of the hearing, and they are material. It does not matter at all that this Court may find the AGO's approach more congenial than the Legislature's materially different approach. All that matters is that the two approaches are just that—different. The point is, as highlighted by *Berger*, that the Legislature would make and will continue to make substantively different arguments in defense of the 622 Statute, something the August 13th Order has greatly hindered, even prevented, the Legislature from doing.

4.   *The AGO's Motion for Reconsideration on the Preliminary Injunction dramatically differs from the Legislature's earlier filed motion.*

Given the important procedural and substantively different arguments in opposing the motion for preliminary injunction, it should come as no surprise that the Legislature and AGO have different approaches to the motions requesting reconsideration currently pending before this Court. *Compare* Legislature's Brief in Support of Motion for Reconsideration of Order Granting Preliminary Injunction (Dkt. 97-1) and Memorandum in Support of State of Idaho's Motion to

Reconsider Preliminary Injunction (Dkt. 101-1). Whereas the Legislature's motion for reconsideration is broad, focusing both on the scope of EMTALA and on legal and constitutional errors, the AGO's brief is significantly limited in scope—asserting error primarily in the context of certain subsections of EMTALA and Section 622 interpretation. Again, notwithstanding the AGO's prior knowledge of the arguments that the Legislature is making, the AGO has chosen a decidedly different direction.

The AGO's brief was filed on September 22, 2022—15 days after the Legislature filed its motion, with the AGO thus having ample time to review and consider the Legislature's arguments. However, there is no blanket or precursory statement in the AGO's supporting memorandum that the AGO is adopting the Idaho Legislature's brief. Rather, the AGO filed its own motion and supporting brief that merely singles out some of the Legislature's arguments—again, relegating important constitutional arguments, like the "major questions doctrine," to a mere footnote and even casting doubt on the applicability of those constitutional theories: "To the extent this lawsuit arises from this agency action—an issue that is currently unclear—the Court's interpretation of EMTALA and the associated Order violates the major questions doctrine and the State incorporates the Legislature's argument contained in Section III(B)(1). *See* Memorandum in Support of State of Idaho's Motion to Reconsider Preliminary Injunction, at 3, fn. 1 (Dkt. 101-1). Then, on September 28, 2022, the AGO filed a document styled "State of Idaho's Non-Opposition to Idaho Legislature's Motion for Reconsideration" (Dkt. 97). There, the AGO expressed its mere non-opposition to the Legislature's motion—and not a joinder. Once again, the AGO's own actions separate its legal position from the Legislature's.

<u>CONCLUSION</u>

The Legislature's legal position in this case can be simply stated. Section 18-622 is a lawful exercise of Idaho's authority to regulate abortion, as confirmed by the United States Supreme Court in *Dobbs*. The complaint in this case reflects the Administration's determination to thwart *Dobbs.* In pursuit of that aim, the United States has brought a claim against the State of Idaho that rests on a fundamental legal error. EMTALA does not mandate abortion as a potential medical treatment for women in distress. What's more, Congress plainly expressed its desire to avoid preempting State laws concerning the regulation of medical care. By seeking to leverage an obscure corner of the U.S. Code into a nationwide abortion mandate, the United States has interpreted EMTALA in a way that creates multiple legal and constitutional problems—beginning with the usurpation of Idaho's power to regulate abortion as determined through the democratic process. Finally, with respect, the preliminary injunction rests on serious legal errors that we have asked the Court to correct.

These arguments uniquely advanced by the Legislature—whether or not they prevail before this Court—are serious and well-founded in law. They deserve to be fully ventilated in a court of law. If Idaho law is to be preempted by EMTALA despite *Dobbs*, that determination would be put on a more solid footing by allowing the Legislature to present the full range of arguments at its disposal, something that, as demonstrated above, has not thus far happened—and will not happen if this Court continues to turn a deaf ear to the Legislature's full voice as it has heretofore done in conformity with its Aug. 13th Order.

For all these reasons, the Aug. 13th Order should be vacated and a new order issued allowing the Legislature to intervene as a matter of right.

Dated this 4th day of October, 2022.

/s/ Daniel W. Bower
_____

Daniel W. Bower
MORRIS BOWER & HAWS, PLLC


/s/ Monte Neil Stewart
_____

Monte Neil Stewart

*Attorneys for Intervenor-Defendants*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

BRIAN DAVID NETTER
DOJ-Civ
Civil Division
brian.netter@usdoj.gov

DANIEL SCHWEI
DOJ-Civ
Federal Programs Branch
daniel.s.schwei@usdoj.gov

JULIE STRAUS HARRIS
DOJ-Civ Civil Division,
Federal Programs Branch
julie.strausharris@usdoj.gov

LISA NEWMAN
DOJ-Civ Civil Division,
Federal Programs Branch
lisa.n.newman@usdoj.gov

ANNA LYNN DEFFEBACH
DOJ-Civ
Civil Division,
Federal Programs Branch
anna.l.deffebach@usdoj.gov

CHRISTOPHER A. EISWERTH
DOJ-Civ
Federal Programs Branch
christopher.a.eiswerth@usdoj.gov

EMILY NESTLER DOJ-Civ
emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff United States of America*

Brian V Church
Clay R. Smith
Dayton Patrick Reed
Ingrid C Batey
Megan Ann Larrondo
Steven Lamar Olsen
Alan Wayne Foutz
Office of the Attorney General
brian.church@ag.idaho.gov
crsmith73@outlook.com
dayton.reed@ag.idaho.gov
ingrid.batey@ag.idaho.gov
megan.larrondo@ag.idaho.gov
steven.olsen@ag.idaho.gov
alan.foutz@ag.idaho.gov

JOAN E. CALLAHAN
NAYLOR & HALES, P.C.
Special Deputy Attorney General
jec@naylorhales.com

*Attorneys for Defendant*

JAY ALAN SEKULOW
sekulow@aclj.org
JORDAN A. SEKULOW
jordansekulow@aclj.org
STUART J. ROTH
Stuartroth1@gmail.com
OLIVIA F. SUMMERS
osummers@aclj.org
LAURA B. HERNANDEZ
lhernandez@aclj.org

*Attorneys for Amicus Curiae
American Center for Law & Justice*

16

LAURA ETLINGER
New York State Office
of the Attorney General
laura.etlinger@ag.ny.gov

*Attorney for Amici States*
*California, New York, Colorado, Connecticut,*
*Delaware, Hawaii, Illinois, Maine, Maryland,*
*Massachusetts, Michigan, Minnesota,*
*Nevada, New Jersey, New Mexico, North*
*Carolina, Oregon, Pennsylvania, Rhode*
*Island, Washington, and Washington, D.C.*

THOMAS MOLNAR FISHER
Office of IN Attorney General
Solicitor General
tom.fisher@atg.in.gov

*Attorney for Amici States*
*Indiana, Alabama, Arkansas, Kentucky,*
*Louisiana, Mississippi, Montana, North*
*Dakota, Oklahoma, South Carolina, South*
*Dakota, Tennessee, Texas, Utah, West*
*Virginia, Wyoming, Nebraska*

WENDY OLSON
Stoel Rives LLP
wendy.olson@stoel.com

JACOB M. ROTH
AMANDA K. RICE
CHARLOTTE H. TAYLOR
Jones Day
jroth@jonesday.com
arice@jonesday.com
ctaylor@jonesday.com

*Attorneys for Amici Curiae*
*The American Hospital Association and the*
*Association of American Medical Colleges*

SHANNON ROSE SELDEN
ADAM B. AUKLAND-PECK
LEAH S. MARTIN
Debevoise & Plimpton LLP
srselden@debevoise.com
Aaukland-peck@debevoise.com
lmartin@debevoise.com

JEFFREY B. DUBNER
JOHN LEWIS
MAHER MAHMOOD
Democracy Forward
jdubner@democracyforward.org
jlewis@democracyforward.org
mmahmood@democracyforward.org

*Attorneys for Amici Curiae American College*
*of Emergency Physicians; Idaho Chapter of*
*the American College of Emergency*
*Physicians; American College of Obstetricians*
*and Gynecologists; Society for Maternal-Fetal*
*Medicine; National Medical Association;*
*National Hispanic Medical Association;*
*American Academy of Pediatrics; American*
*Academy of Family Physicians; American*
*Public Health Association; and American*
*Medical Association*

*/s/ Daniel W. Bower*
Daniel W. Bower

17