BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIAN D. NETTER
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
DANIEL SCHWEI
Special Counsel
**ANNA DEFFEBACH (DC Bar # 241346)**
LISA NEWMAN
EMILY NESTLER
CHRISTOPHER A. EISWERTH
Trial Attorneys
JULIE STRAUS HARRIS
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 993-5182
anna.l.deffebach@usdoj.gov

*Counsel for Plaintiff*
United States of America

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>            Defendant. | Case No. 1:22-cv-329-BLW<br><br>**UNITED STATES' OPPOSITION TO THE IDAHO LEGISLATURE'S RENEWED MOTION TO INTERVENE [Dkt. 105]** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................1

ARGUMENT .......................................................................................................................3

I.      The Court Properly Denied the Legislature's Motion to Intervene as of Right ........3

        A.     *Berger v. North Carolina State Conference of the NAACP* Does Not Compel a Different Result ...........................................................................................3

        B.     The Legislature's Interest Remains Adequately Represented by the State .......5

CONCLUSION ..................................................................................................................10

## INTRODUCTION

As explained in the United States' opposition to the Legislature's first motion to intervene, Rule 24(a) permits intervention as a matter of right "when an applicant: (i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citing Fed. R. Civ. P. 24(a)(2)). "Failure to satisfy any one of the requirements is fatal to the application[.]" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). An applicant seeking intervention bears the burden of proving that these requirements are met. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The Legislature's renewed motion to intervene as of right fails for the same reason as its initial intervention motion: its interest in this litigation is not distinct from the interest of the State of Idaho, of which it is a part, and that interest is adequately represented by the State of Idaho in this litigation. The Legislature has not demonstrated that its interest has diverged from the State of Idaho in the course of this litigation. The mere differences in litigation strategy that the Legislature describes here do not rise to the level of inadequacy of representation that justify intervention as of right because the Legislature and the State of Idaho maintain identical interests in pursuing the same objective in this lawsuit. This case involves straightforward questions of statutory interpretation regarding the meaning of EMTALA, the meaning of Idaho Code § 18-622 (the Total Abortion Ban), and whether those two statutes conflict. The Legislature's full participation as a party would not materially aid the Court's straightforward statutory analysis. The Legislature's renewed motion to intervene as of right should accordingly be denied.

## BACKGROUND

The Idaho Legislature, represented by private retained counsel, filed a motion to intervene in this lawsuit on August 8, 2022. Dkt. 15. In its intervention motion and supporting reply brief, the

1

Legislature explained that it intended to present evidence on a narrow factual question—whether "Relevant Abortions" were occurring in the state of Idaho—on which the State, represented by the Attorney General, did not intend to present evidence. Dkt. 15-1; Dkt 25. In light of the narrow factual question that the Legislature promised to address, the Court granted the Legislature's motion for permissive intervention "*on this sole issue,*" Dkt. 27 at 17, and ordered the Legislature to file its brief on the same day as the State on August 16. The Legislature filed its motion papers on August 16 and filed several declarations on August 17. Dkt. 71.

Also on August 17, the Legislature filed a motion for leave to file legal arguments, which included a brief containing legal arguments that far exceeded the scope of the Court's order granting the Legislature permissive intervention. Dkt. 69. The Court "decline[d] at this juncture to modify the conditions it imposed in its earlier order allowing the Legislature to permissively intervene" and rejected the Legislature's motion. Dkt. 75. On August 22, the Court held a hearing, at which the Legislature was permitted to present oral argument. The Legislature did not limit its argument to the narrow factual question on which its intervention was premised. *See, e.g,* Hr'g Tr. at 54-65 (raising arguments about previously unmentioned provisions of EMTALA); *see id.* at 62-64 (raising arguments about scope of proposed order). The Court issued its opinion and order granting the United States' motion for a preliminary injunction on August 24. Dkt. 95.

On September 7, the Legislature moved for reconsideration of the Court's preliminary injunction order. Dkt. 97. Notwithstanding the Court's order limiting the scope of intervention, the Legislature's motion did not address the factual issues identified in the Court's intervention order but rather focused exclusively on legal argument. Dkt. 97-1. On September 21, the State also moved for reconsideration of the Court's preliminary injunction order (Dkt. 101), raising many of the same legal arguments as were raised in the Legislature's motion. *Compare* Dkt. 101-1 at 14-17, 19 (arguing the United States lacks a cause of action); *with* Dkt. 97-1 at 11 (same). Now, the Legislature asks this Court

2

to reconsider its prior order granting the Legislature permissive intervention on a narrow factual issue and seeks to expand its role in this case to an unlimited intervention as of right. The Legislature's renewed motion should be denied.

## ARGUMENT

I. **The Court Properly Denied the Legislature's Motion to Intervene as of Right**

    A. ***Berger v. North Carolina State Conference of the NAACP* Does Not Compel a Different Result**

As this Court correctly recognized in its prior order denying the Legislature's motion for intervention as of right under Rule 24(a), the circumstances of this case are materially distinguishable from *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2205 (2022). In *Berger*, the NAACP sued select government officials including the governor and the State Board of Elections, who agreed with its position that North Carolina's recently enacted voter identification law (which the governor had vetoed) was unconstitutional. The governor and the State Board of Elections were represented by the North Carolina Attorney General, who (while serving as a state senator) had voted against an earlier version of the voter identification law and had filed a declaration in support of a legal challenge to the law. *Id.* at 2198. In fact, the governor, after he was dismissed from the case as a defendant, filed an amicus brief siding with the NAACP and arguing that the challenged statute was unconstitutional. *Id.* at 2200. The North Carolina legislature sought to intervene as a party in the lawsuit to provide a robust defense of the challenged law, which neither the Attorney General nor the named state officials were willing to provide. *Id.* at 2198-99. Because the select officials that the NAACP sued under the *Ex Parte Young* doctrine did not intend to defend the state law, the North Carolina legislature had no way, absent intervention, to ensure that the challenged law was adequately defended in court. *Id.*; *see also Karcher v. May*, 484 U.S. 72, 80 (1987) ("The Legislature was permitted to intervene because it was responsible for enacting the statute and because no other party defendant was willing to defend the statute.").

3

Here, by contrast, the United States sued the State of Idaho as a whole, including all of its components and agencies, and there is little chance that the choice of defendants by the United States will result in "a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments." *Berger*, 142 S. Ct. at 2201. As this Court previously ruled, "the practical concerns animating *Berger* do not exist here: there is no risk the United States has 'select[ed] as their defendants those individual officials [it] consider[s] most sympathetic to its cause or most inclined to settle favorably and quickly.'" Dkt. 27 at 13 (quoting *Berger*, 142. S. Ct. at 2201). This is not a case where a private plaintiff has attempted to "pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests." *Berger*,142 S. Ct. at 2203. For those reasons, *Berger* is distinguishable here.

There is no need for the Legislature to intervene as a party under Idaho Code § 67-465 because the Legislature, as part of the State of Idaho, is already a party to this lawsuit. Like the rest of Idaho's "departments, agencies, offices, officers, boards, commissions, institutions and other state entities," the Legislature is represented by the Attorney General in court. Idaho Code § 67-1401(1). *See also* Dkt. 27 at 13 ("the Legislature has presented no credible argument that it itself is distinct from 'the state,' either formally or functionally for purposes . . . under Rule 24(a)."). And the State of Idaho, including the Governor and the Attorney General, have expressed strong support for the Total Abortion Ban and have defended it at every opportunity, including via litigation of this case. This is not, as the Legislature claims, a case in which a "State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law[,]" because the State as a whole is a party to the lawsuit and its duly authorized representatives are already defending its interests. *Berger*, 142 S. Ct. at 2201. Any interest that the Legislature has in this case is indistinguishable from the interest of the State of Idaho, of which it is a part.

Moreover, no law enacted by Idaho can override the requirements of the Federal Rules of

4

Civil Procedure that parties asserting a right of intervention under Rule 24(a) must possess an interest in the litigation that is not adequately represented by the existing parties. As this Court has made clear, Rule 24 requires the Legislature to show "that it brings a distinct state interest to bear on this litigation that the State cannot adequately represent." Dkt. 27 at 12. Even if Idaho Code § 67-465 may provide a basis for the Legislature to intervene in cases where neither the State nor the Legislature is already a party to ensure that the State has an opportunity to defend its laws, Idaho Code § 67-465 does not provide a basis for the Legislature to participate as a separate entity from the State where the State, represented by the Attorney General, is forcefully defending the constitutionality of a state law. And unlike statutes enacted by some other states, Idaho Code § 67-465 does not expressly authorize the Legislature to represent the State or litigate on the State's behalf. *See*, *e.g.*, *Berger* 142 S. Ct. at 2202 (citing examples where "'state law may provide for other officials,' besides an attorney general, 'to *speak for the State* in federal court'" or authorize other officials "under state law to *represent the State's interests*' in federal court [and] defend state laws there as parties") (emphasis added) (citing *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1951, 1952 (2019) and *Karcher*, 484 U.S. at 81-82). Nor does Idaho Code § 67-465 provide that the Legislature is a "'necessary part[y]' to suits like this one." *Berger*, 142 S. Ct. at 2202.

The Legislature already is represented, like all other offices and instrumentalities of the State of Idaho, by the Attorney General's office. The Legislature's interest in this lawsuit is encompassed within the State of Idaho's interest, and the Legislature has no unique interest that should allow it a greater role as of right in this litigation.

      **B.**    **The Legislature's Interest Remains Adequately Represented by the State**

The Legislature claims its interests have diverged from the interests of the State of Idaho, such that its interest is no longer adequately represented by the State's counsel in the Attorney General's office. Dkt. 105-1. But that argument is belied by what has transpired since the Court's prior order

5

denying intervention as of right. Since then, the State of Idaho and the Idaho Legislature have defended the constitutionality of the Total Abortion Ban, making many of the same legal arguments in its defense. The divergence in interests that the Legislature now cites are "merely differences in strategy, which are not enough to justify intervention as a matter of right." *United States v. City of Los Angeles*, 288 F.3d 391, 402–03 (9th Cir. 2002). "[A] proposed intervenor must make a compelling showing of inadequate representation when her interest is identical to that of an existing party." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (discussing continued vitality of Ninth Circuit rule after *Berger*). Moreover, "[t]here is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also* 7C Charles Allen Wright et al., Fed. Prac. & Proc. Civ. § 1909 (3d ed. April 2022 update). Because both the Legislature and the State of Idaho have an identical interest in this lawsuit—defending the constitutionality of the Total Abortion Ban—the Legislature must make a compelling showing that the Attorney General is not adequately representing its interests for intervention to be appropriate. *Id.* It has not done so, pointing only to minor differences in litigation strategy. "And '[w]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *Callahan*, 42 F.4th at 1021 (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997)). Here, the Legislature has failed to identify any interest in this litigation that deviates from the interest of the State of Idaho: both parties continue to forcefully defend the constitutionality of the challenged law.

The mere differences in litigation strategy that the Legislature identifies bear no resemblance to the divergence of interests in cases where courts have granted intervention as of right. As discussed above, this case is a far cry from *Berger*, where plaintiff's selected defendants did not mount a robust

defense of the constitutionality of the challenged law. *See Berger,* 142 S. Ct. at 2199. This case is also unlike Ninth Circuit cases in which courts have found intervention as of right to be justified. *See, e.g., California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006) (granting intervention where the United States sought to defend the constitutionality of a federal statute by arguing for a limiting construction that would have excluded the conduct of the proposed intervenor-defendants from the statute's protections); *Citizens for Balanced Use*, 647 F.3d at 899 (granting intervention where environmentalist intervenor-defendants sought to defend an order limiting motorized vehicles in a national forest on the grounds that it was a necessary environmental protection whereas Forest Service defended the order on the grounds that it was compelled to do so by court order which the Forest Service was appealing and which the Forest Service thought was unnecessary). In both *Lockyer* and *Citizens for Balanced Use*, the parties to the lawsuit were seeking fundamentally different outcomes from the intervenors—outcomes that would actually have injured the intervenors and thus failed to protect their interests. *Cf. Callahan*, 42 F.4th at 1021 (disagreement over whether a case should have settled for the agreed-upon amount "amounts to a disagreement over litigation strategy" which was "insufficient to show that [defendant] did not adequately represent [intervenor's] interests.").

The State of Idaho, represented by the Attorney General, has mounted a forceful defense of the law, and the differences in preferred litigating strategy that the Legislature identifies do not render the Attorney General's representation inadequate. The Legislature cites largely matters of timing and briefing logistics. *See* Dkt. 105-1 at 8 (the Attorney General's office took the full time allotted under the local rules to file its motion for reconsideration, instead of a shorter period as the Legislature did); Dkt. 105-1 at 9 (Attorney General's office consented to a single consolidated response brief by the United States to both motions for reconsideration on the timeline triggered by the State's motion). This, the Legislature argues, demonstrates that the Attorney General's office doesn't feel the same sense of urgency in litigating this suit. But the Legislature has made no attempt to explain why a

difference of two weeks or a consolidated opposition brief matter at all. There is no indication that those two weeks have delayed a decision on the reconsideration motion. And the Legislature has not suffered harm from the injunction because the law was enjoined before it ever went into effect, maintaining the status quo. *See, e.g., Ashcroft v. ACLU*, 542 U.S. 656, 671 (2004) ("The harm done from letting the injunction stand pending a trial on the merits . . . will not be extensive. No prosecutions have yet been undertaken under the law, so none will be disrupted if the injunction stands."). If the Legislature felt that a two-week "delay" in briefing its motion for reconsideration was inappropriate, it could have filed a motion to expedite the briefing schedule, but it did not do so.[1]

These minor differences in litigation strategy do not suggest that the parties' interests have diverged. *League of United Latin Am. Citizens*, 131 F.3d at 1306 (denying intervention as of right based on intervenor's "bare allegation that the litigation is progressing too slowly" which could not "overcome the uncontroverted fact that [defendants] are more than adequately representing [intervenor's] primary interest in seeing Proposition 187 upheld."). Both the Legislature's and the State's motions for reconsideration argue that the court's decision was wrong for many of the same reasons. *Compare* Dkt. 101-1 at 14-17 (arguing the United States lacks a cause of action), 19; Dkt. 97-1 at 11 (same). Both the State and the Legislature filed motions for reconsideration (rather than seeking an immediate appeal or a stay of the injunction, for example), showing a similarity in litigation strategy. Any minor disagreements on timing and strategy do not reflect "fundamentally differing points of view between [a party and a proposed intervenor] on the litigation as a whole." *Citizens for Balanced Use*, 647 F.3d at 899.

Where the Legislature tries to show substantive differences from the Attorney General's litigation strategy, its allegations fall short. The Legislature quotes from several portions of the State's

---

[1] At one point, the Legislature stated that it "will oppose any motion to delay [the United States' response to the Legislature's motion for reconsideration] and, if such a motion is made, will file a counter-motion to expedite." Dkt. 99-1. The Legislature never filed a motion to expedite.

8

oral argument where, with the benefit of hindsight, it suggests it may have answered the Court's questions differently. Dkt. 105-1 at 12. But alternative oral argument responses are minor differences in litigating strategy and do not justify intervention as a matter of right under Rule 24(a). *See City of Los Angeles*, 288 F.3d at 402-03. Similarly, the fact that the Attorney General's office declined to make, or make more fully, some of the Legislature's preferred legal arguments does not establish a divergence of interests. For example, the Legislature faults the Attorney General's office for not relying more heavily on the "major questions doctrine," but that doctrine applies only to courts reviewing the actions of *administrative agencies* and does not apply here. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). These minor disputes about how to prioritize different legal arguments do not amount to a divergence of interests cognizable under Rule 24(a); rather, they are the common quibbles between a lawyer and his or her opinionated clients.

Here, both the State of Idaho and the Idaho Legislature defend the challenged law on the ground that it is a constitutional exercise of the authority of the State of Idaho to promote the State's interest in regulating abortion. Both defend the law as sound policy and resting on sound legal footing. Both dispute the United States' interpretation of EMTALA and preemption arguments as a constitutional overreach. Both have an identical interest in this litigation: to defend the constitutionality of the Total Abortion Ban. *Callahan*, 42 F.4th at 1021 (denying intervention where intervenor and Defendant had "the same interest in this litigation: to obtain civil penalties on behalf of the LWDA under PAGA."); *League of United Latin Am. Citizens*, 131 F.3d at 1306 (denying intervention where intervenor and defendant had the same "interest in seeing Proposition 187 upheld.").

Granting the Legislature intervention as of right in this case would pose the risk of turning this case into the "nine-headed Hydra" the Court feared in its prior order on the matter. Dkt. 27 at 15. The Legislature and the State of Idaho are part of the same entity, have identical interests in this

9

lawsuit, and are pursuing their identical objectives through virtually identical litigation strategies. The Legislature has not made a compelling showing that the State is inadequately representing their shared interest in defending the Total Abortion Ban and the Legislature has therefore failed to meet the requirements to establish that intervention as of right is warranted. *See Callahan*, 42 F.4th at 1021 n.5.

## CONCLUSION

For the foregoing reasons, the Court should deny the Legislature's Renewed Motion to Intervene.

Dated: October 20, 2022

SAMUEL BAGENSTOS
General Counsel

PAUL R. RODRÍGUEZ
Deputy General Counsel

DAVID HOSKINS
Supervisory Litigation Attorney

JESSICA BOWMAN
MELISSA HART
Attorneys
U.S. Department of Health & Human Servs.
200 Independence Ave., SW
Washington, DC  20201

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

DANIEL SCHWEI
Special Counsel

*/s/ Anna Deffebach*
ANNA DEFFEBACH (DC Bar # 241346)
LISA NEWMAN
EMILY NESTLER
CHRISTOPHER A. EISWERTH
Trial Attorneys

JULIE STRAUS HARRIS
Senior Trial Counsel

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 993-5182
anna.l.deffebach@usdoj.gov

*Counsel for Plaintiff*

10