# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>    Defendant,<br><br>and<br><br>SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE,<br><br>    Intervenor-Defendants. | Case No. 1:22-cv-329-BLW |

## IDAHO LEGISLATURE'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION [DKT. 97]

Monte Neil Stewart, ISB No. 8129
11000 Cherwell Court
Las Vegas, Nevada 89144
Telephone: (208)514-6360
monteneilstewart@gmail.com

Daniel W. Bower, ISB No. 7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

*Attorneys for Intervenor-Defendants*

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT...........................................................................................................1

    I.       The United States Misstates the Controlling Standard
           Under Rule 59(e)..........................................................................................1

    II.      Limits Placed by This Court on the Legislature's Intervention
           Do Not Prevent Granting the Legislature's Motion .....................................3

    III.     Clear Errors of Law Warrant Reconsideration of the
           Preliminary Injunction .................................................................................5

          A.      Looking beyond these fabricated obstacles, the United States
                 contests the errors in the Legislature's Motion. Most of those
                 arguments merit only a brief response.................................................5

          B.      The United States stumbles as well in attempting to explain
                 away the Legislature's constitutional objections to the
                 preliminary injunction order ................................................................6

CONCLUSION........................................................................................................8

CERTIFICATE OF SERVICE ................................................................................9

# TABLE OF CASES AND AUTHORITIES

**Cases:**

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320, 325 (2015) ...................................................................................4

*Bond v. United States*,
    564 U.S. 211, 221 (2011) ...................................................................................8

*Berger v. North Carolina State Conference of the NAACP*,
    142 S. Ct. 2191 (2022) .......................................................................................4

*Dobbs v. Jackson Women's Health Org.*,
    142 S. Ct. 2228 (2022) ...............................................................................5, 7, 8

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
    882 F.2d 364, 369 n.5 (9th Cir. 1989)................................................................3

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
    5 F.3d 1255, 1263 (9th Cir. 1993)...................................................................2, 5

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415, 1419 (9th Cir. 1984).................................................................2

*Smith v. Clark Cnty. Sch. Dist.*,
    727 F.3d 950, (9th Cir. 2013) .........................................................................1, 3

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364, 395 (1948) ...................................................................................3

*United States v. Walker*,
    601 F.2d 1051, 1058 (9th Cir. 1979)...............................................................2, 4

*Utility Air Regulatory Group v. EPA*,
    573 U.S. 302, 324 (2014) ...................................................................................6

*West Va. v. EPA*,
    142 S. Ct. 2587, 2608 (2022) .............................................................................6

**Statutes:**

I.C. § 18-622 .................................................................................................................5

42 U.S.C. § 1395 ........................................................................................................5, 6

**Other Authorities:**

Commerce Clause ...........................................................................................................8

EMTALA ...........................................................................................................5, 6, 7, 8

Exec. Order 14076,
    87 Fed. Reg. 42053, 42053 (July 13, 2022) ........................................................7

Major questions doctrine ............................................................................................6, 7

Spending Clause .............................................................................................................8

U.S. Const., amend. X ....................................................................................................8

www.hhs.gov ..................................................................................................................7

The Speaker of the Idaho House of Representatives Scott Bedke, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Sixth Idaho Legislature (Legislature) respectfully submit this reply brief in support of its Motion for Reconsideration of Order Granting Preliminary Injunction [Dkt. 97] (Legislature's Motion) and in response to the United States' Consolidated Opposition to the State of Idaho's and the [Idaho] Legislature's Motions for Reconsideration [Dkt. 106].

## INTRODUCTION

"It is common for both trial and appellate courts to reconsider and change positions when they conclude that they made a mistake. This is routine in judging, and there is nothing odd or improper about it." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The United States evidently sees things differently. Its opposition to the Legislature's Motion is premised on the false notion that amending, altering, or vacating a decision with clear legal errors is somehow a rare event. It is not.

The United States offers no good reason to deny the Motion. Rule 59(e) authorizes a district court to reconsider a preliminary injunction that rests on clear error, which is all that the Legislature has asked. Discretionary limits placed by this Court on the scope of the Legislature's intervention emphatically do not prevent the Court from granting the Legislature's Motion. Because it rests on multiple clear errors, the preliminary injunction should be vacated.

## ARGUMENT

**I. The United States Misstates the Controlling Standard Under Rule 59(e).**

In its opposition, the government contends that on a motion for reconsideration, "the moving party must clear a high bar." Op. at 3. Conceding that reconsideration may be granted "to correct manifest errors of law or fact," the government insists that such errors only reach "an

1

obvious error requiring immediate correction." *Id.* at 3, 4 (citations omitted). The Legislature's Motion describes several errors meeting that standard.

But in delineating what counts as clear error, the United States contradicts itself. On one hand, it says that the Motions for Reconsideration should be denied because the Legislature and the State add nothing to the arguments presented before the injunction was issued. *Id.* at 3–4. Yet the Ninth Circuit has said that a Rule 59(e) motion may be granted "even if it raises no new grounds." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir. 1984). On the other hand, the government criticizes the Legislature's "efforts to marshal wholly new arguments" as "likewise inappropriate." *Id.* at 4. By the government's account, reconsideration is misplaced whether the moving party asserts old arguments or new.

But that account is false. Nothing in Rule 59(e) justifies a heads-I-win, tails-you-lose approach. Reconsideration is proper when a moving party identifies "clear error" in the challenged order. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration serves the interests not only of the moving party but of the judicial system. "Errors in the trial court may be most speedily corrected by the trial judge. Frequently a trial judge has had to rule on difficult questions under time pressures and without thorough briefing by the parties. A motion for reconsideration may, in some instances, avoid the necessity of an appeal." *United States v. Walker*, 601 F.2d 1051, 1058 (9th Cir. 1979). Since the Legislature's Motion serves these purposes, it should be granted.

Additionally, the United States quibbles that the Legislature's Motion signals "disagree[ment] with the Court's decision—not that the Court made an obvious error requiring immediate correction." Op. at 4. Not so. The Legislature's Motion identifies clear errors of law calling for reconsideration. Nor is there any question that reconsideration is the apt procedural

vehicle for correcting a mistaken preliminary injunction. *See, e.g*, *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989).

Determining whether to grant the Legislature's Motion thus turns on whether it identifies flaws in the preliminary injunction that rise to the level of *clear error*. "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Legislature has met that standard, as we explain below.

## II. Limits Placed by This Court on the Legislature's Intervention Do Not Prevent Granting the Legislature's Motion.

The United States asks the Court to "disregard the Legislature's legal arguments as improper." Op. at 5. Why? Because, in the government's view, the Legislature's Motion represents "an unapproved expansion of the Legislature's limited role in this case." *Id.* at 6. But denying the Legislature's Motion because of the Legislature's status as Intervenor-Defendant is neither necessary nor logical.

Although the Legislature's permissive intervention is constrained, the United States misinterprets those limitations as a bar on considering the Legislature's meritorious legal arguments. *Id.* at 5. Those limitations are within this Court's discretion—and that discretion may (and we think should) be exercised to lift them. The Court itself invited the Legislature to renew its motion to intervene as of right if "the State can no longer adequately represent the Legislature's interests." Dkt. 27, at 2. Events since then amply satisfy that condition. A renewed motion to intervene (Dkt. 105) detailing why the Attorney General cannot adequately represent the Legislature is now pending. That motion is firmly supported by Fed. R. Civ. P. 24(a)(2) and the

Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022).

Nor does the United States get any mileage out of the Court's ruling denying the Legislature's motion to submit legal arguments (Dkt. 75). Opp. at 5–6. That ruling came two months ago, when the disparities between the Legislature's and State's litigating postures were less obvious. Not only that, a chief reason for excluding the Legislature's arguments is obsolete. The Court worried then that "[a]llowing the Legislature to file an additional brief past the deadline of the expedited briefing schedule would unduly prejudice the United States …." (Dkt. 75). Tight briefing schedules certainly pose no worry now. Abandoning its breakneck speed before a preliminary injunction issued, the United States not only took all the time allotted under the rules for responding to the Legislature's Motion, it sought and obtained an extension besides (Dkt. 102).

Even more fundamentally, limits on the Legislature's permissive intervention do not diminish the Court's authority. It makes no sense to turn a blind eye to the Legislature's well-placed legal arguments merely because the Legislature submitted its motions for reconsideration and intervention in tandem, rather than appealing the preliminary injunction beforehand. Legal errors infecting the preliminary injunction order will not look better on appellate review. *Walker*, 601 F.2d at 1058. Reconsidering the preliminary injunction in light of the substantial legal arguments asserted in the Legislature's Motion is entirely consistent with Rule 59(e).

**III. Clear Errors of Law Warrant Reconsideration of the Preliminary Injunction.**

   A. *Looking beyond these fabricated obstacles, the United States contests the errors in the Legislature's Motion. Most of those arguments merit only a brief response.*

      1. The United States lacks a cause of action under the Supremacy Clause. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). It makes no difference whether the

government couches its claim as one in equity. The Supremacy Clause is "silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.*

2. The United States misreads EMTALA as an abortion mandate, when the statute requires a hospital to extend necessary medical treatment to both a mother *and* her unborn child. 42 U.S.C. § 1395dd(c)(2)(A). Determining when the Legislature first raised this argument is immaterial. Interpreting EMTALA to mandate abortion under an undefined range of emergency circumstances is the kind of "clear error" for which reconsideration is appropriate. *Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263. The United States does not persuasively show that courts long understood EMTALA as a nationwide abortion mandate before the Administration responded to *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). To accept that construction now distorts EMTALA when read as a whole.

3. The United States also misrepresents Idaho Code § 18-622. Its affirmative defenses are "defense[s] to *prosecution*." Idaho Code § 18-622 (emphasis added). A physician entitled to such a defense does not face "indictment, arrest, pretrial detention, and trial for every abortion they perform"—and saying so is clear error. Dkt. 95, at 20. The government misstates Idaho law by endorsing that misinterpretation as "grounded in statutory text, settled legal principles, and common sense." Op. at 16–17.

4. The United States cannot convincingly explain why invoking EMTALA to preempt Idaho Code § 18-622 is not clear error. EMTALA "do[es] not preempt any State or local law requirement" unless it "directly conflicts" with that statute. 42 U.S.C. § 1395dd(f). What's more, 42 U.S.C. § 1395 prohibits "any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided"—a prohibition that applies to the application of EMTALA. Contrary to the preliminary injunction

5

order, these provisions strongly counsel against preemption. Dkt. 95, at 18–26. The United States cannot justify its preemption claim by recasting § 1395 as a provision aimed at deferring to "medical professionals' judgment," Op. at 15 n.6, when the statute is aimed at withholding federal authority over "the practice of medicine." 42 U.S.C. § 1395. It makes no difference when the Legislature raised § 1395. Op. at 15 n.6. The point of a timely motion under Rule 59(e) is to correct clear errors brought to the Court's attention.

> B. The United States stumbles as well in attempting to explain away the Legislature's constitutional objections to the preliminary injunction order.

> 1.   The major questions doctrine is anything but "irrelevant." Op. at 19.

The United States is wrong that the doctrine applies only "where there is affirmative *agency* regulatory action." *Id.* Decisions invoking it "have arisen from all corners of the administrative state." *West Va. v. EPA*, 142 S. Ct. 2587, 2608 (2022). In each instance, the Supreme Court invalidated executive action for resting on an "asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *Id.* at 2609. So too, here.

As in those cases, the United States here points to "a colorable textual basis" for its reading of EMTALA. *Id.* But that is hardly enough to justify the previously "unheralded power" to commandeer medical facilities into performing abortions or to override state laws to the contrary. *Id.* at 2610 (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). Instead, the United States must demonstrate that EMTALA contains "clear congressional authorization" for this unprecedented and politically controversial exercise of federal power. *Id.* And that the United States does not do.

*EPA* nowhere limits the major questions doctrine to the statutory constructions of a federal agency. Far from it. Fundamental concerns with the lawful exercise of executive power—whatever the source—unite decisions under that doctrine.

6

Even if the major questions doctrine did require federal agency action, it exists here. The United States' interpretation of EMTALA as a nationwide abortion mandate, along with the government's conception of the statute's preemptive force, originated with "clarifying guidance" issued by the U.S. Department of Health and Human Services. https://www.hhs.gov/about/news/2022/07/11/following-president-bidens-executive-order-protect-access-reproductive-health-care-hhs-announces-guidance-clarify-that-emergency-medical-care-includes-abortion-services.html. HHS released that guidance in response to an executive order issued in the immediate wake of *Dobbs*. Exec. Order 14076, 87 Fed. Reg. 42053, 42053 (July 13, 2022). Besides, the U.S. Department of Justice is an executive agency. The major questions doctrine is not only relevant; it's controlling.

2. The United States trivializes the Legislature's Article III argument. The question is not whether the Supremacy Clause requires states to comply with federal law, but whether the government's novel interpretation of EMTALA as an abortion mandate illicitly frustrates the Supreme Court's decision to "return that authority [to regulate abortion] to the people and their elected representatives." *Dobbs*, 42 S. Ct. at 2284. Crediting the government's reading of EMTALA puts the preliminary injunction order in direct conflict with *Dobbs*. And that conflict is another instance of clear error.

3. Spending Clause objections are no less salient. The United States insists that its lawsuit "is simply seeking to affirm that the existing provisions of the Medicare statute persist in the face of a new conflicting state law." Op. at 22. But the government fails to show that EMTALA has always required Medicare-funded emergency facilities to perform abortions in response to an unspecified range of emergency conditions. Without a long-standing judicial consensus, the United

7

States' interpretation of EMTALA operates as a novel coercive measure that violates the Spending Clause. Dkt. 97-1, at 14–15.

4.  Finally, the United States denies that the preliminary injunction contains clear error under the Tenth Amendment. Op. at 22–23. But the government's references to Commerce Clause decisions are beside the point. No one contests that Congress's valid exercise of enumerated powers may affect a state's reserved powers. Here, however, the United States' expansive reading of EMTALA prevents Idaho from exercising regulatory powers over abortion that historically belonged within the scope of its police power and that *Dobbs* self-consciously returned to the states. That consequence presents the live issue whether the preliminary injunction deprives the State of Idaho of its reserved powers, contrary to the Tenth Amendment. *Bond v. United States*, 564 U.S. 211, 221 (2011) ("The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States. The federal balance is, in part, an end in itself, to ensure that States function as political entities in their own right.").

## CONCLUSION

For these reasons, the Legislature respectfully asks this Court to grant its Motion for Reconsideration.

Dated this 26th day of October, 2022.

MORRIS BOWER & HAWS PLLC

By: /s/ *Daniel W. Bower*
     Daniel W. Bower

/s/ *Monte Neil Stewart*
Monte Neil Stewart

*Attorneys for Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

BRIAN DAVID NETTER
DOJ-Civ
Civil Division
brian.netter@usdoj.gov

DANIEL SCHWEI
DOJ-Civ
Federal Programs Branch
daniel.s.schwei@usdoj.gov

JULIE STRAUS HARRIS
DOJ-Civ Civil Division,
Federal Programs Branch
julie.strausharris@usdoj.gov

LISA NEWMAN
DOJ-Civ Civil Division,
Federal Programs Branch
lisa.n.newman@usdoj.gov

ANNA LYNN DEFFEBACH
DOJ-Civ
Civil Division,
Federal Programs Branch
anna.l.deffebach@usdoj.gov

CHRISTOPHER A. EISWERTH
DOJ-Civ
Federal Programs Branch
christopher.a.eiswerth@usdoj.gov

EMILY NESTLER DOJ-Civ
emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff United States of America*

Brian V Church
Clay R. Smith
Dayton Patrick Reed
Ingrid C Batey
Megan Ann Larrondo
Steven Lamar Olsen
Alan Wayne Foutz
Office of the Attorney General
brian.church@ag.idaho.gov
crsmith73@outlook.com
dayton.reed@ag.idaho.gov
ingrid.batey@ag.idaho.gov
megan.larrondo@ag.idaho.gov
steven.olsen@ag.idaho.gov
alan.foutz@ag.idaho.gov

JOAN E. CALLAHAN
NAYLOR & HALES, P.C.
Special Deputy Attorney General
jec@naylorhales.com

*Attorneys for Defendant*

JAY ALAN SEKULOW
sekulow@aclj.org
JORDAN A. SEKULOW
jordansekulow@aclj.org
STUART J. ROTH
Stuartroth1@gmail.com
OLIVIA F. SUMMERS
osummers@aclj.org
LAURA B. HERNANDEZ
lhernandez@aclj.org

*Attorneys for Amicus Curiae American Center for Law & Justice*

| | |
|---|---|
| LAURA ETLINGER<br>New York State Office<br>of the Attorney General<br>laura.etlinger@ag.ny.gov<br><br>*Attorney for Amici States*<br>*California, New York, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, and Washington, D.C.*<br><br>THOMAS MOLNAR FISHER<br>Office of IN Attorney General<br>Solicitor General<br>tom.fisher@atg.in.gov<br><br>*Attorney for Amici States*<br>*Indiana, Alabama, Arkansas, Kentucky, Louisiana, Mississippi, Montana, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, Wyoming, Nebraska* | WENDY OLSON<br>Stoel Rives LLP<br>wendy.olson@stoel.com<br><br>JACOB M. ROTH<br>AMANDA K. RICE<br>CHARLOTTE H. TAYLOR<br>Jones Day<br>jroth@jonesday.com<br>arice@jonesday.com<br>ctaylor@jonesday.com<br><br>*Attorneys for Amici Curiae*<br>*The American Hospital Association and the Association of American Medical Colleges*<br><br>SHANNON ROSE SELDEN<br>ADAM B. AUKLAND-PECK<br>LEAH S. MARTIN<br>Debevoise & Plimpton LLP<br>srselden@debevoise.com<br>Aaukland-peck@debevoise.com<br>lmartin@debevoise.com<br><br>JEFFREY B. DUBNER<br>JOHN LEWIS<br>MAHER MAHMOOD<br>Democracy Forward<br>jdubner@democracyforward.org<br>jlewis@democracyforward.org<br>mmahmood@democracyforward.org<br><br>*Attorneys for Amici Curiae American College of Emergency Physicians; Idaho Chapter of the American College of Emergency Physicians; American College of Obstetricians and Gynecologists; Society for Maternal-Fetal Medicine; National Medical Association; National Hispanic Medical Association; American Academy of Pediatrics; American Academy of Family Physicians; American Public Health Association; and American Medical Association* |

                                                   */s/ Daniel W. Bower*
                                                  Daniel W. Bower