LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief, Civil Litigation Division

MEGAN A. LARRONDO, ISB #10597
BRIAN V. CHURCH, ISB #9391
ALAN W. FOUTZ, ISB #11533
INGRID C. BATEY, ISB #10022
Deputy Attorneys General
CLAY R. SMITH, ISB #6385
Special Deputy Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
megan.larrondo@ag.idaho.gov
brian.church@ag.idaho.gov

JOAN E. CALLAHAN, ISB #9241
NAYLOR & HALES, P.C.
Special Deputy Attorney General
950 W. Bannock Street, Ste. 610
Boise, ID 83702
Telephone: (208) 383-9511
Facsimile: (208) 383-9516
joan@naylorhales.com

*Attorneys for Defendant State of Idaho*

# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>        Defendant. | Case No. 1:22-cv-329<br><br><br>**STATE OF IDAHO'S REPLY IN SUPPORT OF MOTION TO RECONSIDER PRELIMINARY INJUNCTION (Dkt. 95)** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION.................................................2

    I.   The preliminary injunction is still contradictory, with an interpretation of stabilizing treatment that does not align with the statutory definition .............................................2

    II.   There is a clear error in the Court's understanding of EMTALA to force a state to allow a particular treatment ..........................................................................................3

    III.   There is a clear error in the Court's understanding of Idaho Code § 18-622's exception where an abortion is necessary to prevent the death of the pregnant woman.......................................................................................................5

    IV.   The United States had not met its heavy burden of showing physical impossibility of compliance with both statutes ......................................................................................6

    V.   Idaho's regulation of abortion does not nullify the anti-patient-dumping purpose of EMTALA ......................................................................................................................8

    VI.   Threshold issues deserve reconsideration..................................................................8

    VII.   The United States is attempting to impose a new condition under EMTALA .............9

    VIII.   This is a facial challenge........................................................................................9

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Fortyune v. Am. Multi-Cinema, Inc.*,
    364 F.3d 1075 (9th Cir. 2004) ...................................................................3

*Goodman v. Sullivan*,
    891 F.2d 449 (2d Cir. 1989)......................................................................5

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010)................................................................................9, 10

*Nelson v. City of Albuquerque*,
    921 F.3d 925 (10th Cir. 2019) ..................................................................1

*Texas v. Becerra*,
    No. 5:22-CV-185-H, 2022 WL 3639525 (N.D. Tex. 2022) ......................5

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022)..............................................................................9

## FEDERAL STATUTES

Title 42, U.S.C.
    § 1395...........................................................................................................4
    § 1395dd......................................................................................................2

## STATE STATUTES

Idaho Code
    § 18-622 .........................................................................................1, 3, 5, 7, 10
    § 18-8801 ....................................................................................................5

## FEDERAL REGULATIONS

Title 42, C.F.R.
    § 489.24......................................................................................................2

**INTRODUCTION**

The United States accuses the State of Idaho of seeking a second bite at the apple with the State's motion for reconsideration. Dkt. 106 at 3-5. Not so. The State seeks to have the Court consider its opposition to a preliminary injunction with the benefit of the correct legal underpinnings. A court decision that misapprehends the controlling law, the facts, or a party's position, is appropriately revisited through a motion for reconsideration. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted). The State's motion accordingly focuses on the controlling law that the Court's Memorandum Decision and Order, Dkt. 95 ("Order"), misapprehends. Dkt. 101-1 at 2-13, 14-19.

First, this Court should correct its conclusion that EMTALA itself mandates abortions where state law does not otherwise authorize such procedure, and instead recognize that EMTALA requires stabilizing treatment within the bounds of what hospitals and physicians are allowed to provide within the state. This accords with Congress's directions concerning limitations of Medicare and respects the states' regulation of abortion within their boundaries. Second, the Court should construe Idaho Code § 18-622 as written and avoid reading words into the statute. Third, the Court should correct its erroneous physical impossibility determination, which relies upon misstatements of EMTALA and Idaho Code § 18-622. Fourth, the Court should correct its obstacle preemption determination, which is based on a misapprehension of EMTALA's purpose set forth in the Order, a determination that is at odds with the purpose found by the Ninth Circuit and other Courts of Appeal. The other legal issues noted in the motion for reconsideration also deserve correction, but they will not be rehashed in this reply.

Contrary to the United States' assertion in response, the State is not simply disagreeing with the Court's application of the law to the issue in this case, Dkt. 106 at 4; the State is pointing out that the incorrect law was identified and applied by the Court. The State is not "marshal[ing in] wholly new arguments" against preemption, *id.*; the State is pointing out that the Court misinterpreted key provisions of EMTALA and Idaho Code § 18-622, amongst other issues. As identified by the State, there is no direct conflict with EMTALA regarding those

abortions that Idaho law allows. This has been the position the State has consistently advocated. *See* Dkt. 66 at 14-19; *see also* Dkt. 66 at 11-13. The State is not taking a second bite at the apple. The State is requesting the Court correct clear errors of law.

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**

I.      **The preliminary injunction is still contradictory, with an interpretation of stabilizing treatment that does not align with the statutory definition.**

The State identified a clear error in the preliminary injunction. Dkt. 101-1 at 2. The first sentence of the injunction refers to "medical care required by [EMTALA]," which is stabilizing treatment. *Id.*; *see also* 42 U.S.C. §§ 1395dd(b)(1)(A) & (e)(3)(A). Yet the Court's second sentence enjoins Idaho from certain acts when an abortion "is necessary to avoid . . ." certain emergency medical conditions. Dkt. 101-1 at 2 (citing Dkt. 95 at 39). This is not the EMTALA legal standard. Instead, when a person has an emergency medical condition a "hospital must, within its capabilities, provide 'such medical treatment of the condition **as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely** to result from or occur during the transfer of the individual from a facility.'" *Id.* (quoting 42 U.S.C. § 1395dd(e)(3)(A) and citing 42 C.F.R. § 489.24(d)(1)(i)). As the State pointed out, EMTALA supplies a stabilization standard, not an (expanded) prevention / "'necessary to avoid' standard." *Id.*

The United States' response mischaracterizes the State's argument as concerning "abortion access beyond emergency medical care" and as such simply brushes it off as the "same overarching misapprehension." Dkt. 106 at 23 n.9. But the State's argument is that the Court's first sentence purports to apply to stabilizing treatment, while the second sentence does not use EMTALA's stabilizing treatment standard or legal definition. Instead, the Court adopted a new standard.

Also problematic is that the injunction enjoins Idaho from "seeking to impose any other form of liability on" hospitals or medical providers under the novel "necessary to avoid" standard. Dkt. 101-1 at 2. The United States argues that, in context, the language is appropriate,

and that the injunction "is limited to enjoining enforcement of § 18-622." Dkt. 106 at 24. Yet, if it is only Idaho Code § 18-622 that is at issue, and Idaho Code § 18-622 only authorizes criminal penalties and licensing sanctions, then there is no need to enjoin "any other form of liability." *See* Dkt. 106 at 23, 24 (United States' assertion that injunction "is plainly limited to the claims in this case"). Thus, the Order outstrips Idaho Code § 18-622 and EMTALA, which are the only laws at issue in this suit.

Two other issues—the second sentence's failure to limit the injunction to hospitals subject to EMTALA and the second sentence's apparent reach of "any other form of liability" to other statutes such as the Fetal Heartbeat Act—were raised by the State. Dkt. 101-1 at 2-3. The United States brushes these aside as an "overarching misapprehension" by the State. Dkt. 106 at 23 n.9. But injunctions and their text matter. A fundamental principal of Rule 65 "is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086-87 (9th Cir. 2004) (citations omitted). Moreover, "'the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.'" *Id.* at 1087 (citation omitted).

The current injunction is rife with uncertainty and contradictory language that does not track with the statutory standards at issue in this case. One might have thought the United States would have agreed to clarify the injunction—or at least defend the standard used in the injunction; instead, it doubled-down on the injunction's erroneous language. However, this does not relieve the Court of its obligation to correct the clear error in its injunction through reconsideration.

## II. There is a clear error in this Court's understanding of EMTALA to force a state to allow a particular treatment.

The Court's Order at various points understood EMTALA "to require a particular method of 'care,' even if the State does not permit the procedure in the circumstance identified." Dkt.

101-1 at 3 (footnote omitted) (citing Order 17, 19, 20, 21, 31, 32). Summarizing it differently, the Court's understanding of EMTALA in the Order was that "[i]f a physician believes an abortion would be a stabilizing treatment, the United States through EMTALA can force the State to allow the abortion, even if the State does not allow the abortion in that circumstance." *Id.* at 4. This is clear error. *Id.*

At least five reasons support the State's position: (1) Congress lacks the authority to regulate the practice of medical care or to intrude upon the states' prerogatives regarding criminal law; (2) Congress expressly disclaimed any power to regulate the practice of medical care in the Medicare Act; (3) the Court's conclusion otherwise is contrary to Congress's intent; (4) EMTALA recognizes that the "capabilities of the staff and facilities" at the hospital limit stabilizing treatment that a hospital is obligated to provide; and (5) "[a] long-extant statute such as EMTALA cannot now be given a transformative expansion of its regulatory reach by an allegedly just-discovered unheralded power to regulate abortions at the federal level." *Id.* at 4-5. The Weldon Amendment supports the State's position, as does the anti-commandeering doctrine. *Id.* at 5.

The United States' response avoids openly admitting at the outset that the State correctly captured the Court's understanding of EMTALA. But it gets there eventually, proclaiming that "[t]he Court, thus, aptly interpreted the text of EMTALA to require physicians to offer all forms of treatment." Dkt. 106 at 15. Along the way, it recasts the Court's Order, disregarding the Court's language at pages 17, 20, 21, 31, and 32 of the Order. *Id.* at 14. The United States then attempts to claim that the State conceded EMTALA required abortion in any circumstance where a physician determines an abortion is needed, although its very next paragraph clearly dispels this claim, as does the material the United States itself cited. *Id.* at 15. Finally, in a footnote, the United States suggests that the Court's interpretation of EMTALA, because it "is one of general application," "does not run afoul of 42 U.S.C. § 1395." *Id.* at 15 n.6. It provides no authority for this proposition. Further, it ignores what one federal district court noted: that "Courts across the country uniformly hold that this section prohibits Medicare regulations that 'direct or prohibit

any kind of treatment or diagnosis'; 'favor one procedure over another'; or 'influence the judgment of medical professionals.'" *Texas v. Becerra*, No. 5:22-CV-185-H, 2022 WL 3639525, at *25 (N.D. Tex. 2022) (*quoting Goodman v. Sullivan*, 891 F.2d 449, 451 (2d Cir. 1989)). The Court's misunderstanding of EMTALA would allow the federal government to manage through the federal judiciary important state policy choices of what treatments to allow in what circumstances. That is clearly erroneous.

### III.   There is a clear error in this Court's interpretation of Idaho Code § 18-622's exception where an abortion is necessary to prevent the death of the pregnant woman.

This Court's understanding of Idaho Code § 18-622 is erroneous. The Order said the statute lacked "clarity" "because of the statute's ambiguous language and the complex realities of medical judgments." Order 27. As a result, the Order interpreted Idaho Code § 18-622(3) to require that a patient's death "be imminent or certain absent an abortion." *Id.* at 21, 27.

As the State pointed out, the plain language of Idaho Code § 18-622(3) does not support the Court's interpretation that added an imminency requirement. Dkt. 101-1 at 7. In response, the United States contends that the plain language of the statute confirms the Court's addition of an imminency requirement, but it points to no text to support this assertion other than generally stating that EMTALA is broader. *See* Dkt. 106 at 18; *compare* Idaho Code § 18-622(3) *with* Idaho Code § 18-8801(5) (defining medical emergency and tying that to "the immediate abortion . . . ."). Moreover, as the State identified in its motion to reconsider, the Court should not have turned to statements from physicians to confuse the interpretation of Idaho Code § 18-622(3), nor create a purported constitutional issue. *See* Dkt. 101-1 at 7. Contrary to the Court's concern about a perceived lack of clarity in the affirmative defenses, Order 26-31, the State identified that a requirement that an abortion be necessary to prevent the death or preserve the life of the pregnant woman is long-standing and well understood, Dkt. 101-1 at 7-8.

The State also expressed that the Court misapprehended Idaho Code § 18-622 by failing to view the statute "as an exercise of the state's police power that values the life of an unborn child, but recognizes when an unborn child's life may be taken when both it and its mother are

suffering an emergency medical condition." Dkt. 101-1 at 8. Idaho's law thus acts to fill a void in EMTALA. *Id.* at 8-9. The United States' response is simply that the fact that EMTALA requires that the unborn child also be considered "does not undermine the Court's conclusion that an abortion could be the stabilizing treatment physicians must offer under EMTALA." Dkt. 106 at 12. Yet its position ignores that EMTALA obligations extend to both the pregnant patient and to the unborn child—who is also a patient.

Lastly, the United States again attempts to assert that the State has taken a contradictory position regarding abortions and stabilizing treatment. Dkt. 106 at 13. Not so. The State's position in its response to the preliminary injunction motion was that the United States' declarations presented examples where the "abortion described was necessary to prevent death." Dkt. 66 at 13. This is consistent with the State's position on the motion for reconsideration: Idaho has chosen to allow physicians to perform abortions where the abortion is necessary to prevent the death of the pregnant woman—and where the physician has made this determination in good faith based on the facts known to him or her at that time. As the State explained, there is no conflict between Idaho law and EMTALA in the example Jane Doe patients. Because EMTALA accounts for the limitations of both hospitals and its staff, and because EMTALA does not regulate the practice of medicine or the standard of medical care, any stabilizing treatment must be within the bounds of what the State allows.

## IV.   The United States had not met its heavy burden of showing physical impossibility of compliance with both statutes.

This Court's analysis of physical impossibility proceeded along a three-step path: "(1) EMTALA requires a physician to provide an abortion, regardless of what state law allows; (2) 'Idaho statutory law makes that treatment a crime'; and (3) '[W]here federal law requires the provision of care and state law criminalizes that very care, it is impossible to comply with both laws.'" Dkt. 101-1 at 9 (citing Order 19). Such analysis is erroneous because it begins with the misunderstanding that EMTALA can force a State to allow a particular "treatment," even if the State has decided not to allow the "treatment" within its boundaries. But there is also no direct

conflict between (i) a federal law that requires the provision of stabilizing treatment within the bounds of treatment a physician and hospital can provide and (ii) a state law defining the bounds of care. This is especially true given EMTALA's (and Medicare's) expectation that hospitals and physicians work within the bounds of what is available to them.

The State also noted that there was no issue with respect to abortions that it allows through exceptions in Idaho Code § 18-622. Dkt. 101-1 at 10. This Court's own words recognized that a medical professional can be "legally blameless" for providing an abortion within the bounds of Idaho law and that is stabilizing treatment under federal law. *Id.* (citing Order 20). And the State noted that although the Court faulted Idaho's policy choice of only allowing two exceptions, this again flowed from the misunderstanding of "what the State can do (control types of 'treatment') as compared to what EMTALA requires: treat or transfer within the bounds of the treatments the State authorizes." *Id.* The Court should correct its misunderstanding.

The United States' response to these assertions is a simple retort that the Court was right. Dkt. 106 at 18. In so arguing, the United States fails to heed the proper balance of what state law is permitted to do—regulate the practice of medicine—as compared to what EMTALA sometimes requires—stabilizing treatment within the bounds of what the hospital is permitted to do and not dumping the patient because of that person's inability to pay.

Finally, the State had also quoted a passage from the Court's Order that said that "neither the State nor the Legislature have convinced the Court that it is possible for healthcare workers to simultaneously comply with their obligations under EMTALA and Idaho statutory law." Dkt. 101-1 at 10. Such statement, which the State assumed from the characteristics of that paragraph to be a summation of this Court's analysis, is erroneous because it places the burden on the defendant, thereby contravening well-established law. *Id.* at 10-11. How did the United States respond? It says, "The State *misstates* the Court's opinion." Dkt. 106 at 18 (emphasis added). The State rechecked the Order, and it clearly says what the State quoted, with a paragraph that begins "In short." Instead of addressing the faulty legal analysis in the Court's summation, the

United States ascribes to the State a position not taken by the State, but instead by counsel for the Legislature regarding "conceptual textual conflicts." *Id.* (citing Order 23-24).

**V.    Idaho's regulation of abortion does not nullify the anti-patient-dumping purpose of EMTALA.**

As the State explained, obstacle preemption would require the United States to demonstrate that state law essentially nullifies or defeats the federal law's purpose. Dkt. 101-1 at 11. The purpose of EMTALA has been well recognized by various courts, including the Ninth Circuit, to prevent the dumping of patients who are unable to pay. *Id.* at 11-12. Yet this Court found that EMTALA established "a bare minimum of emergency care," i.e., that abortion would be available to all regardless of state regulation, in Medicare-funded hospitals. *See* Order 25. The Court's mischaracterization of EMTALA's purpose is a clear error of law. Dkt. 101-1 at 12.

The United States' response simply asserts the State is wrong. Dkt. 106 at 18; *see also* Dkt. 106 at 16. The United States provides no support for the Court's misapprehended purpose of EMTALA. In fact, the United States provides no substantive response to the State's point that "Idaho's policy choice of not allowing the taking of an unborn child's life except as identified by two affirmative defenses does not nullify Congress's purpose of ensuring that all individuals who arrive at an emergency medical department receive care, regardless of their insurance status." Dkt. 101-1 at 12. As the State recapped, "[s]imply because Idaho's policy choice does not align with the federal government's or individual doctors' policy preferences, does not establish a direct conflict with EMTALA." *Id.* at 13. The Court's determination otherwise was clear error.

**VI.    Threshold issues deserve reconsideration.**

The State also raised standing and the issue of whether the United States has a cause of action due to the remedial provisions of EMTALA. *Id.* at 14-17. With respect to the State's questioning of the United States' standing, the latter faults the State for not filing a sur-reply or raising objections at oral argument. Dkt. 106 at 7 n.3; *but see* Loc. Civ. R. 7.1(c). Yet standing, as a jurisdictional issue, may be raised at any time, and so the United States' objection rings hollow—particularly in light of the tight briefing schedule preceding the preliminary injunction

hearing. The United States cannot use procedure to sidestep foundational issues that it wishes to avoid.

## VII.    The United States is attempting to impose a new condition under EMTALA.

An additional assertion by the State is that the Court's understanding of EMTALA violates the State's Tenth Amendment reserved powers and amounts to coercive spending. Dkt. 101-1 at 17-19. As part of its response, the United States rejects the claim that EMTALA, through the relevant recent actions of the federal government, attempts to impose a new condition to require states to allow abortions. Dkt. 106 at 22. It argues that EMTALA has long been understood to require abortions. *Id.* Yet, the United States cites no authority or caselaw for its supposed long-standing authority, under EMTALA, to require a particular procedure, even if the State does not otherwise allow it. In contrast, the State cited much authority in its motion for reconsideration that leads to the opposite conclusion. Instead, this is a politically motivated lawsuit arising out of a policy-based disagreement with the recent *Dobbs* decision. Dkt. 66 at 5-6. A long-extant statute such as EMTALA cannot now be given a transformative expansion of its regulatory reach by an allegedly just-discovered unheralded power to regulate abortions at the federal level. *Cf. West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022).

## VIII.   This is a facial challenge.

The State, and the United States and Court, obviously view the as-applied versus facial nature of this claim differently. Pointing to *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010), the State has explained why the Court's claim that this is a "textbook, as-applied challenge" is wrong. Dkt. 101-1 at 19. The United States disagrees. Dkt. 106 at 11. It also points to a statement in the Court's Order about the facial standard, *id.* (citing Order 18), but that statement had no further analysis in the Order, and as such there was nothing further for the State to point out in its motion for reconsideration. Rather, the State has appropriately requested that the Court correct its error and apply the facial standard to its analysis.

The State cited *John Doe No. 1* because of similarities to this case. There, the plaintiffs asserted a claim that the public records act "violates the First Amendment as applied to

referendum petitions." 561 U.S. at 194 (quoting the complaint). Here, the United States has asserted a claim that Idaho Code § 18-622 violates the Supremacy Clause as applied to EMTALA. As here, the parties in *John Doe No. 1* "disagree[d] about whether [the challenge] is properly viewed as a facial or as-applied challenge." *Id.* The Supreme Court recognized the challenge had "characteristics of both" in that the plaintiffs there did not seek to strike down the public records act "in all its applications, but only to the extent it covers referendum petitions." *Id.* Yet the claim was facial because it was "not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions." *Id.* Here the United States is not concerned about one abortion involving one patient but wants a ruling that applies to all abortions that it believes could be characterized as stabilizing treatment (and that the Court believes EMTALA can mandate). Its claim and relief "reach beyond the particular circumstances" of one pregnant woman, condition, or physician. This is a facial challenge.

**CONCLUSION**

The Court should grant the State's motion for reconsideration, vacate the preliminary injunction, and on reconsideration deny the United States' motion for a preliminary injunction.

DATED this 26th day of October, 2022.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By: */s/ Brian V. Church*
BRIAN V. CHURCH
Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

BRIAN DAVID NETTER
DOJ-Civ
Civil Division
brian.netter@usdoj.gov

DANIEL SCHWEI
DOJ-Civ
Federal Programs Branch
daniel.s.schwei@usdoj.gov

JULIE STRAUS HARRIS
DOJ-Civ
Civil Division, Federal Programs Branch
julie.strausharris@usdoj.gov

LISA NEWMAN
DOJ-Civ
Civil Division, Federal Programs Branch
lisa.n.newman@usdoj.gov

ANNA LYNN DEFFEBACH
DOJ-Civ
Civil Division, Federal Programs Branch
anna.l.deffebach@usdoj.gov

CHRISTOPHER A. EISWERTH
DOJ-Civ
Federal Programs Branch
christopher.a.eiswerth@usdoj.gov

EMILY NESTLER
DOJ-Civ
emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff United States of America*

LAURA ETLINGER
New York State Office
of the Attorney General
laura.Etlinger@ag.ny.gov

*Attorney for Amici States*
*California, New York, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota,*

DANIEL W. BOWER
Morris Bower & Haws PLLC
dbower@morrisbowerhaws.com

MONTE NEIL STEWART
Attorney at Law
monteneilstewart@gmail.com

*Attorneys for Intervenors-Defendants*

JAY ALAN SEKULOW
sekulow@aclj.org

JORDAN A. SEKULOW
jordansekulow@aclj.org

STUART J. ROTH
Stuartroth1@gmail.com

OLIVIA F. SUMMERS
osummers@aclj.org

LAURA B. HERNANDEZ
lhernandez@aclj.org

*Attorneys for Amicus Curiae*
*American Center for Law & Justice*

WENDY OLSON
Stoel Rives LLP
wendy.olson@stoel.com

JACOB M. ROTH
Jones Day
jroth@jonesday.com

AMANDA K. RICE
Jones Day
arice@jonesday.com

CHARLOTTE H. TAYLOR
Jones Day

STATE OF IDAHO'S REPLY IN SUPPORT OF MOTION TO
RECONSIDER PRELIMINARY INJUNCTION (Dkt. 95) - 11

*Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, and Washington, D.C.*

ctaylor@jonesday.com

*Attorneys for Amici Curiae*
*The American Hospital Association and the Association of American Medical Colleges*

SHANNON ROSE SELDEN
Debevoise & Plimpton LLP
srselden@debevoise.com

ADAM B. AUKLAND-PECK
Debevoise & Plimpton LLP
Aaukland-peck@debevoise.com

LEAH S. MARTIN
Debevoise & Plimpton LLP
lmartin@debevoise.com

*Attorneys for Amici Curiae American College of Emergency Physicians, Idaho Chapter of the American College of Emergency Physicians, American college of Obstetricians and Gynecologists, Society for Maternal-Fetal Medicine, National Medical Association, National Hispanic Medical Association, American Academy of Pediatrics, American Academy of Family Physicians, American Public Health Association, and American Medical Association*

*/s/ Brian V. Church*
BRIAN V. CHURCH
Deputy Attorney General