RAÚL R. LABRADOR
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief, Civil Litigation Division

BRIAN V. CHURCH, ISB #9391
Deputy Attorneys General
514 W. Jefferson, 3rd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
brian.church@ag.idaho.gov

*Attorneys for Defendant State of Idaho*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF IDAHO,<br><br>Defendant. | Case No. 1:22-cv-00329-BLW<br><br>**SUPPLEMENTAL BRIEF SUPPORTING STATE OF IDAHO'S MOTION FOR RECONSIDERATION [Dkt. 101]** |

**TABLE OF CONTENTS**

DISCUSSION ........................................................................................................2

    A.    This Court's interpretation of the affirmative defense as being ambiguous and requiring physicians to make "inscrutable" decisions regarding "imminency of death" is simply incorrect ...........................................................................2

    B.    Termination of ectopic pregnancies and other non-viable pregnancies are not abortions .........................................................7

CONCLUSION .....................................................................................................8

i

# TABLE OF CASES AND AUTHORITIES

### Cases

*Planned Parenthood Great N.W., Haw., Alaska, Ind., Ky. v. State of Idaho,*
  Nos. 49615, 49817, 49899, 2023 WL 110626 (Idaho 2023) ............................... 1

*R.R. Comm'n of Tex. v. Pullman Co.,*
  312 U.S. 496 (1941) ............................................................................................ 1

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,*
  5 F.3d 1255 (9th Cir. 1993) ............................................................................... 7

*Spears v. State,*
  278 So. 2d 443 (Miss. 1973) .............................................................................. 3

*Whole Women's Health v. Jackson,*
  142 S. Ct. 522 (2021) ......................................................................................... 1

### Idaho Code

Idaho Code § 18-622 ................................................................................*passim*

### Rules

Idaho Appellate Rule 38(b) ...................................................................................... 1

After this Court entered its preliminary injunction on August 24, 2022, Dkt. 95—and after the State of Idaho filed its initial motion for reconsideration, Dkt. 101-1—the Idaho Supreme Court issued a decision holding that Idaho's general abortion ban does not violate the Idaho Constitution. *Planned Parenthood Great N.W., Haw., Alaska, Ind., Ky. v. State of Idaho,* Nos. 49615, 49817, 49899, 2023 WL 110626 (Idaho 2023); Dkt. 119-2 at 3.[1] In reaching that decision, the Idaho Supreme Court also defined the scope of Idaho Code § 18-622 in at least two ways that conflict with this Court's interpretation of that law. *First*, the Idaho Supreme Court held that Idaho Code § 18-622 "does not require *objective* certainty" nor a "medical consensus" nor "a particular level of immediacy, before the abortion can be 'necessary'" to prevent a pregnant woman's death. Dkt. 119-2 at 89-90; *cf.* Dkt. 95 at 27-29. *Second*, the Idaho Supreme Court held that ectopic and non-viable pregnancies "do not fall within [the] definition" of "abortion[s] as defined in [Title 18, Chapter 6]." Dkt. 119-2 at 88; *cf.* Dkt. 95 at 22-23.

These aspects of the Idaho Supreme Court's recent decision are binding on this Court. *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 536 (2021) (plurality opinion of Gorsuch, J., in part II-C) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)). Yet in its preliminary injunction decision, this Court relied on its own interpretation of Idaho Code § 18-622, which is now in conflict with the Idaho Supreme Court's binding decision. Under what is now known to be the authoritative interpretation of Idaho law, this Court's preliminary injunction decision would come out differently. The affirmative defense made available to physicians in Idaho Code § 18-622 does not conflict with EMTALA because it does not require a "medically impossible" determination that a pregnant woman is certain to die without an abortion, Dkt. 95 at 29, nor does it promote "delays" or "worsened patient outcomes"

---

[1] Further citations will be to the slip opinion filed at Dkt. 119-2. That opinion is now final. *See* Idaho Appellate Rule 38(b); Request for Judicial Notice.

1

by encouraging physicians to wait to provide care until a pregnant woman is "nearer and nearer to death." *Id.* at 32. Nor does Idaho law prevent a physician from treating a woman presenting with an ectopic or non-viable pregnancy in an emergency setting, since the treatment for those medical emergencies does not meet the definition of an "abortion" under Idaho law. Dkt. 95 at 7-8, 22-23. Accordingly, in light of the Idaho Supreme Court's recent decision, there is no conflict between Idaho Code § 18-622 and EMTALA.

The State continues to believe that this Court should reconsider its preliminary injunction decision for the reasons set out in its motion for reconsideration. Dkt. 101-1. But in addition, because this Court's preliminary injunction decision depends on an interpretation of Idaho law that the Idaho Supreme Court has now rejected, this Court should grant the State's motion for reconsideration and deny the United States' motion for a preliminary injunction.

## DISCUSSION

**A.    This Court's interpretation of the affirmative defense as being ambiguous and requiring physicians to make "inscrutable" decisions regarding "imminency of death" is simply incorrect.**

This Court's understanding of the "necessary to prevent the death of the pregnant woman" affirmative defense within Idaho Code § 18-622 is no longer supportable in light of the Idaho Supreme Court's definitive interpretation of state law. This Court found fault with the affirmative defense because it thought it lacked clarity due to "ambiguous language and the complex realities of medical judgments." Dkt. 95 at 27. In this Court's view, the affirmative defense would require a physician to determine "how imminent a patient's death must [be] before an abortion is necessary"—an "inscrutable" decision. *Id.* The Court found support for its view, not in the text of the statute, but from statements offered by doctors put forward by the federal government; it believed that the affirmative defense required physicians to

"know the imminency of death" in order to rely on the defense. *Id.* at 28. The Court also concluded that the affirmative defense required physicians to make an "often 'medically impossible' determination that 'death [i]s the guaranteed outcome.'" *Id.* at 29 (citations omitted).

But the Idaho Supreme Court understood the affirmative defense differently. The affirmative defense provides wide latitude for a physician's "good faith medical judgment" on whether the abortion is "necessary to prevent the death of the pregnant woman" based on the facts known to the physician at the time. Dkt. 119-2 at 89. A physician's subjective judgment is what matters. *Id.* Indeed, the defense "does not require *objective* certainty." *Id.* It does not require "a particular level of immediacy, before the abortion can be 'necessary.'" *Id.* Instead, Idaho Code § 18-622 "uses broad language to allow for the 'clinical judgment that physicians are routinely called upon to make for proper treatment of their patients.'" *Id.* (citing *Spears v. State*, 278 So. 2d 443, 445 (Miss. 1973)). "A 'medical consensus' on what is 'necessary' to prevent the death of the woman when it comes to abortion is not required." *Id.* at 90.

Not only is there no "immediacy" requirement in the affirmative defense, there is also no "'certain percent chance' requirement that the death will occur." *Id.* In fact, the affirmative defense was written broadly; the Idaho Supreme Court rejected an argument that the defense should have more guidelines. Those would "only necessarily *limit* the subjective nature of the affirmative defense." *Id.* Plus, as the supreme court noted, the petitioners' challenge to the "necessary to prevent the death of the pregnant woman" "improperly pluck[ed] the phrase from the sentence that gives it broad meaning." *Id.* The court also noted that adding factors such as immediacy and certain percent chance of death would add objective components to a subjective defense, removing the "wide room for the physician's 'good faith medical judgment' on whether the abortion was 'necessary to prevent the death of the pregnant woman.'" *Id.* at 89, 90-91.

3

The Idaho Supreme Court's decision renders essential parts of this Court's preliminary injunction order unsupportable, and as a result, this Court should deny the preliminary injunction that the United States seeks.

*First*, this Court's interpretation of Idaho Code § 18-622 and the affirmative defense is simply no longer supportable. A doctor need not make a determination of imminency of death in order to rely upon the affirmative defense. *Contrast* Dkt. 95 at 27, 28. There need not be a certain percent chance of death either. *Contrast id.* at 28-30. Death need not be an objectively "'guaranteed outcome.'" *Contrast id.* at 29 (citation omitted). Nor is the "clinical judgment that physicians are routinely called upon to make for proper treatment of their patients" a "medically impossible" determination. *Contrast id.* (citation omitted).

The affirmative defense has a core of circumstances "that a person of ordinary intelligence could unquestionably understand when it comes to whether his or her conduct satisfies the [] affirmative defense." Dkt. 119-2 at 90. It "includes every situation where, in the physician's good faith medical judgment, an abortion was 'necessary' to prevent the death of the pregnant woman." *Id.* (citation omitted). Contrary to this Court's understanding, the defense is not ambiguous, its required decision is not "uncertain," and it certainly is not an "empty promise." Dkt. 95 at 29.

*Second*, this Court's analysis of obstacle preemption regarding the affirmative defense, Dkt. 95 at 26-31, has been upended.[2] The Court built its analysis upon "[t]he uncertain scope" of the defense which led the Court to conclude the law would deter abortions. *Id.* at 27. It began by examining what a physician would need to prove to rely on the affirmative defense. *Id.* After providing an example based upon its

---

[2] As the State also noted in its motion for reconsideration, the Court's obstacle analysis got off on the wrong footing by assigning a different purpose to EMTALA than its recognized anti-patient-dumping purpose. Dkt. 101-1 at 11-13. Idaho's regulation of abortion certainly does not encourage the dumping of patients. Instead, Idaho encourages the protection of prenatal life.

4

interpretation of the defense, the Court went on to cite the federal government's physician's statements. *Id.* at 28-29. The Court cited statements from Drs. Cooper and Corrigan that were based upon imminency of death, and Dr. Corrigan who discussed predicting with certainty an outcome. *Id.* Dr. Fleisher's statement cited by the Court saw the necessary-to-prevent-the-death standard as not useful, even though the Idaho Supreme Court found it to be an act of routine clinical judgment. *Id.* at 29 (also citing Dr. Seyb's declaration).

Likewise, later statements cited by the Court from Dr. Corrigan, an amicus brief, and Dr. Fleisher, contending that the statute required a medically impossible decision that death was the guaranteed outcome, and that death must be a certainty, have been proven incorrect by the Idaho Supreme Court's interpretation of Idaho Code § 18-622. Drs. Cooper, Corrigan, and Fleisher, all had incorrect understandings of the law, and these misunderstandings certainly colored other statements made by them. *E.g.*, Dkt. 86-3 (Dr. Corrigan Suppl. Decl.) ¶ 10 (understanding Idaho law to require risk-based-percentage analysis), Dkt. 86-5 (Dr. Cooper Suppl. Decl.) ¶ 2 (understanding Idaho law to require death be "imminent"), Dkt. 86-2 (Dr. Fleisher Suppl. Decl.) ¶ 4 (understanding Idaho law to require "a certainty (or at least very high probability) of death"); *see also* Dkt. 86-4 (Dr. Huntsberger Decl.) ¶ 12 ("If we must wait until a patient's death is imminent . . . ."), Dkt. 17-8 (Dr. Seyb Decl.) ¶ 13.

*Third*, this Court's remaining obstacle preemption analysis, Dkt. 95 at 31-35, was based upon the supposition that providers would *delay* providing an abortion until death was imminent or more certain to occur—what the Court referred to as "the blurry line" of the defense. *Id.* at 32. Yet, the Idaho Supreme Court's interpretation of Idaho Code § 18-622 and the "necessary to prevent the death" phrase undermines this analysis and the basis for the statements provided by the federal government's doctors. Idaho's law does not require pregnant women "get nearer and nearer to death." *Id.* Instead, Idaho's law "leaves wide room for the physician's 'good

5

faith medical judgment,'" relies on routine clinical judgment, and provides that "'core of circumstances' that a person of ordinary intelligence could unquestionably understand when it comes to whether his or her conduct satisfies the above affirmative defense requirement." Dkt. 119-2 at 89, 90. Here, the Court's analysis of "delays" and "worsened patient outcomes" was based upon a misunderstanding of the affirmative defense in Idaho Code § 18-622. Dkt. 95 at 33. Moreover, the Court's speculative concern that it would be more difficult to recruit OB/GYNs was also based on a misinterpretation of the law, which as now interpreted by the Idaho Supreme Court, alleviates the concerns of the Court. *Id.* at 34.

*Fourth*, this Court's impossibility preemption analysis, Dkt. 95 at 19-24, concluded it was impossible for a physician to comply both with EMTALA and Idaho's law. The State has already explained why this is not the case because "there is no direct conflict between the state law defining the bounds of care that can be provided and a requirement of EMTALA to provide stabilizing treatment within those bounds." Dkt. 101-1 at 9-13. The impossibility preemption analysis also relied on an incorrect understanding of the affirmative defense, finding that "the patient's death must be imminent or certain absent an abortion." Dkt. 95 at 21. Again, this understanding is simply insupportable under the Idaho Supreme Court's interpretation discussed above. Additionally, the impossibility preemption analysis faulted the defense for having a scope that "is tremendously ambiguous" and relied on the interpretation of the defense that the Court discussed in its obstacle preemption analysis—which, as shown above, was faulty. *Id.*

*In sum*, the Idaho Supreme Court's analysis of Idaho Code § 18-622 and its affirmative defenses undermines this Court's interpretation of the statute, upends this Court's obstacle preemption analysis, and highlights faults in this Court's impossibility preemption analysis. For these reasons, and those identified in the initial motion for reconsideration, Dkt. 101, this Court should reconsider its

6

preliminary injunction order and deny the United States' motion for a preliminary injunction.

## B. Termination of ectopic pregnancies and other non-viable pregnancies are not abortions.

The Idaho Supreme Court's opinion also addressed the scope of Idaho Code § 18-622, and its conclusion is contrary to this Court's. This change in the controlling law is grounds for reconsideration and reversing its decision. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). In its opinion, the Idaho Supreme Court considered if Idaho Code § 18-622 applied and imposed criminal penalties on terminating all pregnancies. Dkt. 119-2 at 87-89. Applying a limited judicial construction, the Idaho Supreme Court determined that ectopic and non-viable pregnancies "do not fall within [the] definition" of "abortion[s] as defined in [Title 18, Chapter 6]." *Id.* at 88 (second and third alterations in original). For ectopic pregnancies, the Idaho Supreme Court found that this was "[c]onsistent with the legislature's goal of protecting prenatal fetal life at all stages of development where there is *some* chance of survival outside the womb." *Id.* As for non-viable pregnancies, the court explained in those situations "where the unborn child is no longer developing" and as such terminating those "are plainly not within the definition of 'abortion.'" *Id.*

The Idaho Supreme Court has applied a limiting judicial construction to the relevant definitions and Idaho Code § 18-622 and held that termination of ectopic pregnancies and of non-viable pregnancies are not abortions. The Idaho Supreme Court's post-preliminary-injunction holding is now binding. *See* Dkt. 121 at 4.

This Court's preliminary injunction order highlighted an ectopic pregnancy as an emergency medical condition, Dkt. 95 at 7-8, and faulted the Legislature's now-validated position that the termination of an ectopic pregnancy was not an abortion, *id.* at 22-23. This of course impacts the analysis of whether there is any conflict

7

between EMTALA and Idaho Code § 18-622, since a prime example from the Court is now—as a matter of law—not an abortion. (Of course, the State's position is that the regulation of abortion is not in conflict with EMTALA—state law can define the bounds of care that can be provided, while EMTALA can require hospitals to deliver treatment within those bounds. *See, e.g.*, Dkt. 101-1 at 3-6, 9-13.)

The impact extends beyond this Court's preliminary injunction order, however. The federal government relied on its example of ectopic pregnancies in its complaint and its preliminary injunction briefing. Dkt. 1 at 2, 7; Dkt. 17-1 at 2, 9, 10, 18; Dkt. 86 at 8-10, 16; *see also* Dkt. 106 at 18. Then the federal government's doctors relied on the erroneous interpretation of Idaho Code § 18-622 in providing their testimony regarding ectopic pregnancy. *E.g.*, Dkt. 17-3 (Dr. Fleisher) ¶¶ 13-14; Dkt. 86-4 (Dr. Huntsberger) ¶¶ 9-13, 16. As such, a significant basis for the federal government's concern no longer exists—though, again, the State's position is that its regulation of abortion does not conflict with EMTALA.

## CONCLUSION

The Idaho Supreme Court's decision is a change in the controlling law. Its interpretation of Idaho Code § 18-622 and the affirmative defenses shows not only that the Court's interpretation of the law was wrong, but also that the analysis of preemption was flawed. Second, the Court's holding regarding ectopic pregnancies (and any other non-viable pregnancies) is now unsupported. These two reasons, which supplement those identified by the State in its earlier filed motion for reconsideration, are reasons to reconsider the preliminary injunction. Upon

///

///

///

reconsideration, the federal government's preliminary injunction motion should be denied.

DATED: February 6, 2023.

>STATE OF IDAHO
>OFFICE OF THE ATTORNEY GENERAL
>
>By: */s/ Steven L. Olsen*
>    STEVEN L. OLSEN
>    Deputy Attorney General

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

BRIAN DAVID NETTER
DOJ-Civ
Civil Division
brian.netter@usdoj.gov

DANIEL SCHWEI
DOJ-Civ
Federal Programs Branch
daniel.s.schwei@usdoj.gov

JULIE STRAUS HARRIS
DOJ-Civ
Civil Division, Federal Programs Branch
julie.strausharris@usdoj.gov

LISA NEWMAN
DOJ-Civ
Civil Division, Federal Programs Branch
lisa.n.newman@usdoj.gov

ANNA LYNN DEFFEBACH
DOJ-Civ
Civil Division, Federal Programs Branch
anna.l.deffebach@usdoj.gov

CHRISTOPHER A. EISWERTH
DOJ-Civ
Federal Programs Branch
christopher.a.eiswerth@usdoj.gov

EMILY NESTLER
DOJ-Civ
emily.b.nestler@usdoj.gov

DANIEL W. BOWER
Morris Bower & Haws PLLC
dbower@morrisbowerhaws.com

MONTE NEIL STEWART
Attorney at Law
monteneilstewart@gmail.com

*Attorneys for Intervenors-Defendants*

JAY ALAN SEKULOW
sekulow@aclj.org

JORDAN A. SEKULOW
jordansekulow@aclj.org

STUART J. ROTH
Stuartroth1@gmail.com

OLIVIA F. SUMMERS
osummers@aclj.org

LAURA B. HERNANDEZ
lhernandez@aclj.org

*Attorneys for Amicus Curiae
American Center for Law & Justice*

WENDY OLSON
Stoel Rives LLP
wendy.olson@stoel.com

JACOB M. ROTH
Jones Day
jroth@jonesday.com

AMANDA K. RICE
Jones Day

*Attorneys for Plaintiff United States of America*

LAURA ETLINGER
New York State Office
of the Attorney General
laura.Etlinger@ag.ny.gov

*Attorney for Amici States
California, New York, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, and Washington, D.C.*

arice@jonesday.com

CHARLOTTE H. TAYLOR
Jones Day
ctaylor@jonesday.com
*Attorneys for Amici Curiae
The American Hospital Association and the
Association of American Medical Colleges*

SHANNON ROSE SELDEN
Debevoise & Plimpton LLP
srselden@debevoise.com

ADAM B. AUKLAND-PECK
Debevoise & Plimpton LLP
Aaukland-peck@debevoise.com

LEAH S. MARTIN
Debevoise & Plimpton LLP
lmartin@debevoise.com

*Attorneys for Amici Curiae American College of Emergency Physicians, Idaho Chapter of the American College of Emergency Physicians, American college of Obstetricians and Gynecologists, Society for Maternal-Fetal Medicine, National Medical Association, National Hispanic Medical Association, American Academy of Pediatrics, American Academy of Family Physicians, American Public Health Association, and American Medical Association*

    */s/ Steven L. Olsen*
STEVEN L. OLSEN