BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIAN D. NETTER
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
DANIEL SCHWEI
Special Counsel
**ANNA DEFFEBACH (DC Bar # 241346)**
LISA NEWMAN
EMILY NESTLER
CHRISTOPHER A. EISWERTH
Trial Attorneys
JULIE STRAUS HARRIS
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 993-5182
anna.l.deffebach@usdoj.gov

*Counsel for Plaintiff*
United States of America

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF IDAHO, <br><br> Defendant. | Case No. 1:22-cv-329-BLW <br><br> **UNITED STATES' SUPPLEMENTAL BRIEF IN OPPOSITION TO THE MOTIONS FOR RECONSIDERATION [Dkts. 97, 101]** |

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

DISCUSSION .................................................................................................................................. 2

I.  The Idaho Supreme Court's Decision Confirms the Correctness of the Preliminary Injunction Previously Entered By This Court. ............................................................... 2

    A.  The Idaho Total Abortion Ban Criminalizes Even Life-Saving Medical Care, Exposing Providers to Prosecution. ................................................................. 3

    B.  The Affirmative Defense is Narrower in Scope Than EMTALA-Required Care. ............................................................................................................... 6

    C.  Although the Idaho Supreme Court Narrowed the Scope of the Total Abortion Ban, it did not Eliminate the Conflict between the Ban and EMTALA. ......................................................................................................... 9

CONCLUSION .............................................................................................................................. 10

**INTRODUCTION**

Idaho Code § 18-622 criminalizes all abortions and provides an affirmative defense—which the defendant must prove by a preponderance of the evidence at trial—only where an abortion is "necessary to prevent the death of the pregnant woman." Before the law, which the Idaho Supreme Court refers to as the "Total Abortion Ban," went into effect, it was the subject of multiple legal challenges in both state and federal court. In this court, the United States sued to enjoin the Total Abortion Ban to the extent it conflicted with the federal Emergency Medical Treatment and Labor Act ("EMTALA") which requires hospitals that accept Medicare funds to offer stabilizing treatment—including, in some cases, treatment that would be considered an abortion—to patients who present at emergency departments with emergency medical conditions. Because the Total Abortion Ban criminalizes medical care that federal law requires hospitals to offer, this Court enjoined the Total Abortion Ban where it conflicts with EMTALA. *See* Opinion and Order, ECF No. 95.

While this litigation was ongoing, a state court challenge to the Total Abortion Ban proceeded separately. That lawsuit challenged the constitutionality of the Total Abortion Ban under the Idaho Constitution. *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. State* ("*Planned Parenthood*"), Idaho Supreme Court Docket No. 49817-2022 (Idaho June 27, 2022) (Petition for Writ of Prohibition). On January 5, 2023, while motions for reconsideration of this Court's preliminary injunction were pending, *see* ECF Nos. 100, 101, the Idaho Supreme Court issued its decision in *Planned Parenthood*, holding that the Idaho Constitution does not protect a right to abortion and thus upholding the constitutionality of the Total Abortion Ban. *See Planned Parenthood Great Nw. v. State*, Nos. 49615, 49817, 49899, 2023 WL 110626 (Idaho Jan. 5, 2023), Slip Op. available at ECF No. 119-2. The Idaho Supreme Court also construed the scope of Idaho's Total Abortion Ban. Both the State of Idaho and the Idaho Legislature now argue that the Idaho Supreme Court's opinion has eliminated the continued need for the preliminary injunction entered in this case. *See* ECF Nos. 126, 127. But neither the State nor the

1

Legislature can dispute that the Idaho Supreme Court's opinion left undisturbed the central rationale for this Court's holding: Idaho law criminalizes stabilizing medical care that federal law requires hospitals to offer. Thus, the preliminary injunction remains necessary, and this Court should deny the pending motions for reconsideration.

## DISCUSSION

### I.   The Idaho Supreme Court's Decision Confirms the Correctness of the Preliminary Injunction Previously Entered By This Court.

This Court's preliminary-injunction opinion concluded that the Total Abortion Ban conflicts with EMTALA under principles of both impossibility and obstacle preemption. *See* ECF No. 95 at 19-34. First, this Court determined that, by virtue of the Total Abortion Ban's affirmative defense structure, "it is impossible to comply with both laws" because "federal law requires the provision of care and state law criminalizes that very care." *Id.* at 19. Second, this Court found that "the plain language of the statutes demonstrates that EMTALA requires abortions that the affirmative defense would not cover." *Id.* at 20. And third, this Court concluded that "Idaho's criminal abortion law will undoubtedly deter physicians from providing abortions in some emergency situations," which "would obviously frustrate Congress's intent to ensure adequate emergency care for all patients who turn up in Medicare-funded hospitals." *Id.* at 26.

The Idaho Supreme Court's decision confirms that all three of these conclusions were correct. Specifically, the Idaho Supreme Court's decision confirms that the Total Abortion Ban criminalizes *all* abortions; that the affirmative defense covers a narrower set of circumstances than those in which EMTALA requires a hospital to offer stabilizing treatment; and that a provider's invocation of the affirmative defense may be still be challenged at trial, after the provider has been charged, arrested, and potentially detained, and thus will continue to deter the provision of medically necessary abortions. The aspects of the Idaho Supreme Court's decision on which the State and Legislature focus—*i.e.*, the portions clarifying that the affirmative defense is subjective rather than objective, and that the Total

2

Abortion Ban does not apply to ectopic or other nonviable pregnancies—do not fundamentally alter this Court's preemption analysis. The Idaho Supreme Court's decision therefore reinforces the correctness of this Court's preliminary injunction, and the motions for reconsideration should be denied.

> **A.    The Idaho Total Abortion Ban Criminalizes Even Life-Saving Medical Care, Exposing Providers to Prosecution.**

The Idaho Supreme Court confirmed that the Total Abortion Ban criminalizes all abortions—even those necessary to save the life of the pregnant patient. Slip Op. at 10.[1] The Ban provides no exemptions from criminal prosecution, only an affirmative defense to avoid conviction at trial. As this Court recognized, the affirmative defense structure itself is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. ECF No. 95 at 20 (observing that, "even though accused healthcare workers might avoid a conviction, the statute still makes it impossible to provide an abortion without also committing a crime."); *see also* U.S. Mem. in Supp. of Mot. for Preliminary Injunction, ECF No. 17-1 at 15. The Idaho Supreme Court not only endorsed this Court's view of how the affirmative defense structure differs from an exception to criminal liability, but it also emphasized the criminal consequences for those physicians who perform medically necessary abortions that fall within the scope of the affirmative defense.

In construing the Total Abortion Ban, the Idaho Supreme Court explained that "[u]nlike Idaho's historical abortion laws, which provided an exception to 'save' or 'preserve' the life of the woman, the Total Abortion Ban makes all 'abortions' a crime." Slip Op. at 10. In particular, "in place of exceptions" the Total Abortion Ban contains only "affirmative defenses to prosecution." *Id.*; *see also id.* at 10-11 (contrasting the Total Abortion Ban's affirmative defense with a different abortion restriction in Idaho law, § 18-8704, which "*exempts* from prosecution" certain cases). Moreover, the

---

[1] Because both the State's and Legislature's motion cite to the Idaho Supreme Court slip opinion, this brief's citations are to the slip opinion as well.

Idaho Supreme Court confirmed the serious criminal consequences associated with this affirmative defense structure—namely, that any physician who provides a life-saving abortion still faces potential criminal charges, arrest, and detention unless and until they can prove the affirmative defense at trial:

> [A] physician who performed an 'abortion' . . . could be charged, arrested, and confined until trial *even if* the physician initially claims they did it to preserve the life of the mother, or based on reported rape or incest. Only later, at trial, would the physician be able to raise the affirmative defenses available under the Total Abortion Ban . . . to argue it was a *justifiable* abortion that warrants acquittal and release."

*Id.* at 78; *see also id.* (noting that "the Idaho Constitution does not require that the Total Abortion Ban employ the *wisest* or *fairest* method of achieving its purpose").

Thus, the Idaho Supreme Court confirmed, as a matter of state law, the premise underlying one of this Court's preemption holdings: "An affirmative defense is an excuse, not an exception. The difference is not academic. The affirmative defense . . . can only be raised after the physician has already faced indictment, arrest, pretrial detention, and trial for every abortion they perform." ECF No. 95 at 20; *see also* ECF No. 17-1 at 15. And the burden of proof lies with the provider to *prove* their actions meet the requirements of the affirmative defense. Under this framework, the Ban's affirmative defense structure plainly conflicts with EMTALA, as this Court previously held: "[W]hen pregnant women come to a Medicare-funded hospital with an emergency medical condition, EMTALA obligates the treating physician to provide stabilizing treatment, including abortion care. But regardless of the pregnant patient's condition, Idaho state law makes that treatment a crime." ECF 95 at 19. Because "federal law requires the provision of care and state law criminalizes that very care, it is impossible to comply with both laws" and the state law is preempted. *Id.*; *see also id.* at 20 ("[E]ven though accused healthcare workers might avoid a conviction, the statute still makes it impossible to provide an abortion without also committing a crime."). This affirmative defense structure—now confirmed by the Idaho Supreme Court—is by itself sufficient to conclude that this Court's

4

preliminary injunction was correct and is still necessary.[2]

Moreover, the Idaho Supreme Court also confirmed that the Total Abortion Ban threatens the medical licenses of any health care professionals who perform or assist in performing abortions, and it forces those professionals likewise to rely on the affirmative defense. *See* Slip Op. at 10 (the Total Abortion ban "includes a provision directing the appropriate professional licensing board to implement certain penalties against 'any health care professional' who violates it"). Because these professionals—such as nurses, pharmacists, physicians' assistants, and anesthesiologists—are forced to raise an affirmative defense based on someone else's medical judgment, the obvious effect will be to deter these professionals from providing abortions, as this Court previously recognized. *See* ECF No. 95 at 27 ("[T]he process of enduring criminal prosecution and licensing authority sanctions has a deterrent effect, regardless of the outcome."); *see also* ECF No. 17-1 at 16-17. This deterrent effect— and the obstacle it serves to Congress's goal in passing EMTALA to mandate certain emergency care—is an independent reason why the Total Abortion Ban is preempted. *See* ECF No. 95 at 24-34 (discussing obstacle preemption). The Idaho Supreme Court's opinion only confirms the correctness of this Court's obstacle preemption analysis.

The Idaho Supreme Court thus confirmed that the Total Abortion Ban operates only as an affirmative defense, as this Court previously held, and that any health care provider who performs an abortion may be subject to criminal prosecution and detention until trial. The preliminary injunction

---

[2] Dr. Kylie Cooper, one of the doctor-declarants supporting the United States' motion for preliminary relief, *see* ECF Nos. 17-7, 86-5, recently explained in an op-ed that the affirmative defense structure and the resulting fear of becoming a felon for providing medically necessary abortions led her to leave practice in Idaho. *See* Kylie Cooper*, I came to provide care for complicated pregnancies; I'm leaving because of Idaho's abortion bans*, IDAHO CAPITAL SUN (Feb. 10, 2023), *available at* https://idahocapitalsun.com/2023/02/10/i-came-to-provide-care-for-complicated-pregnancies-im-leaving-because-of-idahos-abortion-bans/ ("My life as a physician has been turned upside down. How do I keep my patients safe? How do I stay safe? The total abortion ban does not have exceptions, only affirmative defenses. An affirmative defense means that the burden of proof lies with the physician to prove their innocence. . . . I need to be able to protect my patients' lives, their health and future fertility without fear of becoming a felon. This fear is why I'm leaving Idaho.").

therefore remains necessary to protect the lives and health of Idaho women and to protect the health care professionals who treat them.

### B. The Affirmative Defense is Narrower in Scope Than EMTALA-Required Care.

Even apart from the inherent flaw in the affirmative defense structure, the Total Abortion Ban's affirmative defense also applies to a narrower scope of conduct than EMTALA covers. The Idaho Supreme Court confirmed as much by contrasting the affirmative defense with another Idaho law that it construed as "substantially similar" to EMTALA. Slip Op. at 95. Thus, the Idaho Supreme Court opinion highlights that the affirmative defense applies only when the abortion was "necessary to prevent the *death* of the pregnant woman," Slip Op. at 89 (emphasis added), but that this affirmative defense does not protect physicians who act—as EMTALA also requires—when a patient's "health" is in "serious jeopardy" or when the patient risks "serious impairment to bodily functions" or "serious dysfunction of any bodily organ or part." *See* 42 U.S.C. § 1395dd(e)(1)(A).

In particular, the Idaho Supreme Court's analysis of the "medical emergency" exception in Idaho Code § 18-8804, referred to as the "6-Week Ban," reinforces that the affirmative defense in the Total Abortion Ban is narrower than EMTALA. Slip Op. at 94-95.[3] The 6-Week Ban allows abortions "in the case of a medical emergency," § 18-8804(1), which that law defines as:

> "Medical emergency" means a condition that, in reasonable medical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function.

Idaho Code § 18-8801(5). The Idaho Supreme Court construed this language as being "substantially similar" to the language in EMTALA. Slip Op. at 95. Importantly, however, the Idaho Supreme Court expressly noted the Total Abortion Ban "does *not* include the broader 'medical emergency' exception

---

[3] The 6-Week Ban is superseded by the Total Abortion Ban, but the 6-Week Ban remains in effect to the extent the Total Abortion Ban is enjoined, *i.e.*, to the extent the latter conflicts with EMTALA. *See* Slip Op. at 19.

for abortions" contained in the 6-Week Ban. *Id.* at 77 (emphasis added). As a matter of state law, then, the Idaho Supreme Court's opinion confirms that the Total Abortion Ban's affirmative defense is narrower than EMTALA—because the affirmative defense is narrower than the 6-Week Ban's exception, which the Idaho Supreme Court construed as "substantially similar" to EMTALA. *Id.* at 95.

The plain text of the affirmative defense reinforces this conclusion. The affirmative defense is limited to situations where "the abortion was necessary to prevent the death of the pregnant woman." Idaho Code § 18-622(3)(a)(ii). But EMTALA requires providing stabilizing care not just where the patient is at risk of death, but also where a patient faces serious health risks that may stop short of death, including permanent and irreversible health risks and impairment of bodily functions. 42 U.S.C. § 1395dd(e)(1)(A); *see also* ECF No. 95 at 20 ("the plain language of the statutes demonstrates that EMTALA requires abortions that the affirmative defense would not cover"). Nothing in the Idaho Supreme Court's decision purported to alter the scope of this affirmative defense or extend it to any of the myriad situations where an abortion is necessary to prevent serious health risks or serious impairment to bodily functions but where the physician does not believe that the abortion is necessary to prevent death. *See* Slip Op. at 90 (acknowledging that the affirmative defense requires a belief, "based on the individual physician's good faith medical judgment, that the abortion was necessary to prevent the death of the woman"); *see also* U.S. Reply in Supp. of Preliminary Injunction, ECF No. 86 at 13-16 (discussing in detail cases where an abortion is necessary to prevent risks to a patient's health, organs, and bodily functions that, while serious, may not lead to death); ECF No. 17-1 at 9 (discussing example of pre-eclampsia, which "can result in a coma, pneumonia, kidney failure, stroke, or cardiac arrest," but which may not be fatal).

To be sure, the Idaho Supreme Court clarified that the affirmative defense does not require a "certain percent chance" of death, or "a particular level of immediacy[] before the abortion can be

7

'necessary' to save the woman's life." Slip Op. at 89-90. But the affirmative defense still requires a "good faith medical judgment[] that the abortion was necessary to prevent the *death* of the woman." *Id.* at 90 (emphasis added). Thus, this Court's prior analysis remains correct: "EMTALA directs physicians to provide that care if they reasonably expect the patient's condition will result in serious impairment to bodily functions, serious dysfunction of any bodily organ or part, or serious jeopardy to the patient's health. In contrast, the criminal abortion statute admits to no such exception." ECF No. 95 at 20 (citation omitted).

The subjective nature of the affirmative defense likewise does not change this result. The State contends that, because the Idaho Supreme Court held that the affirmative defense focuses on the physician's subjective medical judgment, *see* Slip Op. at 89, that alleviates any obstacle or impossibility preemption. ECF No. 127 at 3-6. But again, the affirmative defense's subjective (rather than objective) standard does not alter the *scope* of that defense, which remains available only where a physician believes the abortion was necessary to prevent *death*—and is not available where the abortion was necessary to prevent other serious health conditions covered by EMTALA. *See* Slip Op. at 90; ECF No. 95 at 20-21. Moreover, the Idaho Supreme Court expressly noted that a physician's *assertion* of their subjective belief is not guaranteed to prevail at trial, because the prosecutor can always present evidence to disprove the physician's medical judgment: "Of course, a prosecutor may attempt to prove that the physician's subjective judgment . . . was not made in 'good faith' by pointing to other medical experts on whether the abortion was, in their expert opinion, medically necessary." *Id.* at 91. The affirmative defense still functions as a powerful deterrent, therefore, to any provider who wishes to avoid a five-year prison sentence, and the possibility of their subjective judgment being challenged in court only confirms this dilemma. *See* ECF No. 95 at 21 ("[A]n abortion is only justified under the statute if the treating physician can persuade the jury that she made a good faith determination that the patient would have died if the abortion had not been performed."); *see also id.* at 24-34 (discussing

8

how the law's criminal penalties will deter hospitals from offering necessary care). This deterrent effect may be especially strong for non-physician healthcare professionals, who must expose themselves to licensure actions based on the subjective judgment of another individual.

Thus, the Idaho Supreme Court's construction of the affirmative defense does not eliminate the Total Abortion Ban's conflict with EMTALA. This Court's prior reasoning that EMTALA "demands abortion care to prevent injuries that are more wide-ranging than death" continues to support the necessity of the preliminary injunction. ECF No. 95 at 21.

### C. Although the Idaho Supreme Court Narrowed the Scope of the Total Abortion Ban, it did not Eliminate the Conflict between the Ban and EMTALA.

The Idaho Supreme Court applied a limiting judicial construction to the Total Abortion Ban to conclude that the ban does not apply to ectopic pregnancies and other "non-viable pregnancies." Slip Op. at 88.[4] Under this limiting construction, some of the examples that the United States relied upon to demonstrate that life-saving medical care would be prohibited by the Total Abortion Ban no longer fall within the scope of the Ban. *See, e.g.*, ECF No. 17-1 at 9 (discussing example of ectopic pregnancy). Both the Legislature and the State argue that this limiting construction eliminates any conflict between EMTALA and the Total Abortion Ban by pointing to the United States' examples involving ectopic pregnancies. *See* ECF No. 126 at 2, ECF No. 127 at 7-8. But the Idaho Supreme Court only narrowed the scope of the Total Abortion Ban; it did not eliminate the conflict between it and EMTALA given the myriad other circumstances in which EMTALA requires that treatment be offered but the Total Abortion Ban criminalizes such treatment.

Specifically, the United States' motion for a preliminary injunction, and the physician

---

[4] The Idaho Supreme Court defined a "non-viable pregnancy" as a pregnancy where the fetus "is no longer developing." Slip Op. at 88. It is unclear whether this definition of "non-viable pregnancy" aligns with the medical consensus definition of what constitute a non-viable pregnancy, and whether it encompasses situations in which a fetus has a fatal condition yet continues to develop in utero. This potential vagueness is another reason the preliminary injunction remains necessary.

9

declarations that were submitted in support of that motion, demonstrate that there are complications that arise during pregnancy that pose health risks severe enough to require stabilizing treatment under EMTALA but are not excluded from the definition of "abortion" as construed by the Idaho Supreme Court. To take just one example, the condition of pre-eclampsia is neither an ectopic pregnancy nor a condition when a fetus is "no longer developing." Slip Op. at 88. In many cases, pre-eclampsia and eclampsia can be managed with medications that allow the fetus to mature. ECF No. 17-1 at 9. But in some cases, the risks to the pregnant patient grow so severe that an abortion may be required to prevent stroke, seizure, and pulmonary edema. *See* ECF No. 17-8 Seyb Decl. at ¶¶ 9-10; ECF No. 17-7 Cooper Decl. ¶¶ 6-7; ECF No. 17-6 Corrigan Decl. ¶¶ 27-29. Thus, even if a fetus has the potential to continue developing until it has "*some* chance of survival outside of the womb," Slip Op. at 88, that development might come at the cost of a pregnant patient's future fertility, kidney function, brain function, or life. *See* ECF No. 17-3 Fleisher Decl. ¶ 15; ECF No. 86-3 Corrigan Supp. Decl. ¶ 8; ECF No. 86-5 Cooper Supp. Decl. ¶¶ 3-5. Moreover, pregnant patients may suffer from conditions not directly caused by pregnancy that may require stabilizing care under EMTALA that results in termination of a still-developing pregnancy. Accordingly, both the plain text of the Total Abortion Ban and the factual record before this Court confirm that the preliminary injunction is still necessary, notwithstanding the Idaho Supreme Court's limiting construction excluding ectopic and other non-viable pregnancies.

## CONCLUSION

The Idaho Supreme Court opinion in *Planned Parenthood* confirmed that (1) the Total Abortion Ban criminalizes all abortions, even medically necessary or life-saving abortions; (2) the affirmative defense does not apply where a physician believes the abortion was necessary to prevent serious health risks or impairment of bodily functions, but not the life of the patient; and (3) the affirmative defense is still subject to challenge at trial so will continue to operate as a deterrent. The Idaho Supreme Court

may have narrowed the scope of when a pregnancy termination is considered an "abortion" under the Total Abortion Ban, but it did not eliminate the conflict between Idaho Code § 18-622 and EMTALA. Thus, as construed by the Idaho Supreme Court, the Total Abortion Ban criminalizes conduct that EMTALA requires, just as this Court previously concluded. The preliminary injunction remains necessary to protect the health and lives of Idaho women and to protect the health care providers who should not be required to risk their freedom and livelihood to treat them. This Court should therefore deny the motions for reconsideration.

Dated: February 21, 2023

SAMUEL BAGENSTOS
General Counsel

PAUL R. RODRÍGUEZ
Deputy General Counsel

DAVID HOSKINS
Supervisory Litigation Attorney

JESSICA BOWMAN
MELISSA HART
Attorneys
U.S. Department of Health & Human Servs.
200 Independence Ave., SW
Washington, DC  20201

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

DANIEL SCHWEI
Special Counsel

*/s/ Anna Deffebach*
ANNA DEFFEBACH (DC Bar # 241346)
LISA NEWMAN
EMILY NESTLER
CHRISTOPHER A. EISWERTH
Trial Attorneys

JULIE STRAUS HARRIS
Senior Trial Counsel

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 993-5182
anna.l.deffebach@usdoj.gov

*Counsel for Plaintiff*

11