UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:22-cv-00329-BLW |
| v. | |
| THE STATE OF IDAHO, | **MEMORANDUM DECISION AND ORDER** |
| Defendant, | |
| SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE, | |
| Intervenor-Defendants | |

**INTRODUCTION**

Idaho Code § 18-622 makes it a felony for anyone to perform or attempt to

perform or assist with an abortion. Idaho Code § 18-622(2). The law, which the Idaho

Supreme Court refers to as the "Total Abortion Ban," criminalizes *all* abortions, without

exception – offering only the "cold comfort" of two narrow affirmative defenses.

*Memorandum Decision and Order dated August 24, 2022*, p. 1, Dkt. 95. As relevant here,

an accused physician may avoid *conviction* when the physician determines in her good faith medical judgment that the abortion is necessary to prevent the death of a pregnant woman. *Id.* § 18- 622(3). The affirmative defense does not protect a physician who performs an abortion "merely" to prevent serious harm to the patient, rather than to save her life. Nor does the affirmative defense insulate the physician from criminal *prosecution* under any circumstances. Instead, it shifts the burden of proof from the prosecution to the criminal defendant to prove at trial that the abortion was necessary to prevent the death of the mother – in a sense, presuming the defendant guilty until she proves herself innocent.

The Total Abortion Ban, even before it went into effect, has engendered various legal challenges in both federal and state court. In this Court, the United States sued to enjoin the ban to the extent it conflicted with the federal Emergency Medical Treatment and Labor Act ("EMTALA"), which requires hospitals that accept Medicare funds to offer stabilizing treatment—including, in some cases, treatment that would be considered an abortion—to patients who present at emergency departments with emergency medical conditions. Because the Total Abortion Ban criminalizes medical care that federal law requires hospitals to offer, this Court enjoined Idaho Code § 18-622 to the extent it conflicts with EMTALA. *See Memorandum Decision and Order, dated August 24, 2022* ("*August 24, 2022 Injunction*"). Rather than appealing this decision the State of Idaho and the Idaho Legislature have filed motions for reconsideration, which are now pending before the Court. (Dkt. 97 & 101).

Parallel to this litigation, a challenge to the constitutionality of the ban under the Idaho Constitution proceeded separately before the Idaho Supreme Court. *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. State ("Planned Parenthood")*, Idaho Supreme Court Docket No. 49817-2022 (Idaho June 27, 2022) (Petition for Writ of Prohibition). On January 5, 2023, while the motions for reconsideration remained pending, the Idaho Supreme Court issued its decision in *Planned Parenthood*, upholding the constitutionality of the Total Abortion Ban under the Idaho Constitution. *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132 (2023). The Idaho Supreme Court also construed the scope of Idaho's Total Abortion Ban in rendering its decision.

After the Idaho Supreme Court issued its decision in *Planned Parenthood*, both the State and the Legislature requested to file supplemental briefing in support of their motions for reconsideration. This Court granted their request. Now, in addition to their arguments raised in their initial round of briefing, both the State and the Legislature argue that the *Planned Parenthood* decision eliminated any conflict between EMTALA and the Total Abortion Ban, obviating any need for the preliminary injunction entered in this case. *See* Dkts. 126, 127. As explained below, the Court will deny the motions for reconsideration.

## ANALYSIS

### 1. Motion to Reconsider Standard

"Reconsideration is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1179 (D. Or. 2008) (quoting *Kona Enterprises,*

*Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)) (internal quotation marks omitted); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). A motion to reconsider should therefore be granted only if the moving party can show an intervening change in controlling law, new evidence has become available, or the district court committed clear error, or the initial decision was manifestly unjust. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 649 F.Supp.2d 1063, 1069-70 (E.D. Cal. 2009) (citing *Sch. Dist. No. 1J Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

"Motions for reconsideration are generally disfavored, and, in the absence of new evidence or change in the law, a party may not use a motion to reconsider to present new arguments or evidence that could have been raised earlier." *Adidas*, 540 F. Supp. 2d at 1180 (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)). "Motions to reconsider are also not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented." *Cachil Dehe Band*, 649 F. Supp. 2d at 1069–70 (quoting *United States v. Navarro*, 972 F.Supp. 1296, 1299 (E.D.Cal.1997), *rev'd on other grounds*, 160 F.3d 1254 (9th Cir. 1998) (internal quotation marks omitted)). "Ultimately, a party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Id.* (quoting *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D.Cal. 2001). (internal quotation marks omitted)).

2.  **The Legislature and State Fail to Meet the Demanding Standard for Reconsideration in their Initial Briefing.**

The Legislature and the State's motions fail to meet the demanding standard the Ninth Circuit has set for succeeding on reconsideration. In their original round of briefing on their motions to reconsider, the Legislature and the State do not identify an intervening change in controlling law or newly discovered evidence. Instead, they argue that this Court "committed clear error or made a decision that was manifestly unjust" when it granted the United States' motion for preliminary injunction. But then the Legislature and the State simply proceed in rehashing arguments previously presented or in making additional arguments that they could have raised earlier.

To the extent the Legislature and the State merely express their disagreement with the Court's decision and recapitulate the cases and arguments considered by the Court before rendering its initial decision, they have failed to carry their heavy burden on reconsideration. The Court will therefore deny their motions to reconsider on any of the grounds raised in their initial round of briefing. To the extent, however, the Idaho Supreme Court decision in *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132 (2023), somewhat altered the legal landscape since the Court issued its preliminary injunction, it merits some discussion.

3.  **The *Planned Parenthood* Decision Did Not Negate the Fundamental Principles Underpinning the Court's Preliminary Injunction.**

In their supplemental briefing, the Legislature and the State suggests the Idaho Supreme Court's decision in *Planned Parenthood* amounts to an intervening change of controlling law, warranting reconsideration of the Court's preliminary injunction order.

They argue the Idaho Supreme Court "defined the scope of Idaho Code § 18-622 in at least two ways that conflict with this Court's interpretation of that law," upending this Court's analysis finding a conflict between the Total Abortion Ban and EMTALA. *See Id's Supp. Br.*, Dkt. 127. The Court disagrees.

In its preliminary injunction decision, the Court concluded that the Total Abortion Ban conflicts with EMTALA under principles of both impossibility and obstacle preemption. *August 24, 2022 Injunction*, pp. 19-34, Dkt. 95. First, the Court determined that, by virtue of the Total Abortion Ban's affirmative defense structure, "it is impossible to comply with both laws" because "federal law requires the provision of care and state law criminalizes that very care." *Id.* at 19. Second, this Court found that "the plain language of the statutes demonstrates that EMTALA requires abortions that the affirmative defense would not cover." *Id*. at 20. And third, this Court concluded that "Idaho's criminal abortion law will undoubtedly deter physicians from providing abortions in some emergency situations," which "would obviously frustrate Congress's intent to ensure adequate emergency care for all patients who turn up in Medicare-funded hospitals." *Id.* at 26.

In the *Planned Parenthood* decision, the Idaho Supreme Court confirmed that: (1) Idaho Code § 18-622 criminalizes *all* abortions, 522 P.3d at 1152 ("Unlike Idaho's historical abortion laws, which provided an exception to 'save' or 'preserve' the life of the woman, the Total Abortion Ban makes all 'abortions' a crime."); (2) the affirmative defense covers a narrower set of circumstances than those in which EMTALA requires a

MEMORANDUM DECISION AND ORDER - 6

hospital to offer stabilizing treatment, *id.* at 1196 (noting Idaho Code § 18-622 "does *not* include the broader 'medical emergency' exception for abortions" contained in Idaho Code § 18-8804(1)); and (3) a provider's invocation of the affirmative defense may still be challenged at trial, after the provider has been charged, arrested, and potentially detained, and thus will continue to deter the provision of medically necessary abortions, *id.* (noting "a physician who performed an "abortion' …could be charged, arrested, and confined until trial *even if* the physician initially claims they did it to preserve the life of the mother….[and] "[o]nly later, at trial, would the physician be able to raise the affirmative defenses available in the Total Abortion Ban").

In other words, the Idaho Supreme Court's decision in *Planned Parenthood* confirms each of the fundamental principles that underpinned this Court's decision enjoining Idaho Code § 18-622 to the extent it conflicts with EMTALA; it therefore does not provide a basis for this Court to reconsider its decision. By contrast, the aspects of the Idaho Supreme Court's decision on which the State and Legislature focus—i.e., that the affirmative defense is subjective rather than objective, and that the Total Abortion Ban does not apply to ectopic or other nonviable pregnancies—do not fundamentally alter this Court's preemption analysis.

The Idaho Supreme Court held that the necessary-to-prevent-death affirmative defense "does not require *objective* certainty" nor "a particular level of immediacy" before the abortion can be "necessary" to prevent a pregnant woman's death. *Planned Parenthood*, 522 P.3d at 1203.  Thus, according to the State, because the affirmative

defense is "subjective" rather than objective, "there is no conflict" between the Total Abortion Ban and EMTALA because the ban "does not require a 'medically impossible' determination that a pregnant woman is certain to die without an abortion," and neither does it promote delays or worsened patient outcomes by encouraging physicians to wait to provide care until a pregnant woman is nearer to death. *Id. Supp. Br.*, pp. 1-2, Dkt. 127.

First, this argument ignores – as the Idaho Supreme Court decision makes clear – that "the Total Abortion Ban makes all 'abortions' a crime," and "a physician who perform[s] an 'abortion'… [can] be charged, arrested, and confined until trial *even if* the physician initially claims they did it to preserve the life of the mother." *Planned Parenthood*, 522 P.3d at 78 (emphasis in original). "Only later, at trial, would the physician be able to raise the affirmative defenses available under the Total Abortion Ban…to argue it was a *justifiable* abortion that warrants acquittal and release." *Id.*  This is true regardless of whether the affirmative defense is "subjective" or "objective." It also remains true that EMTALA requires physicians to offer medical care that state law criminalizes. Thus, the Idaho Supreme Court's decision, as consistent with this Court's holding, confirmed – rather than eliminated – the conflict between EMTALA and the Total Abortion Ban: Because "federal law requires the provision of care and state law criminalizes that very care, it is impossible to comply with both laws" and the state law is preempted. *August 24, 2022 Injunction*, p. 19, Dkt. 95.

Second, this argument ignores a second key rationale undergirding this Court's preliminary injunction decision: the affirmative defense applies to a narrower scope of

conduct than EMTALA covers. *August 24, 2022 Injunction*, p. 20, Dkt. 95. A physician may only assert the affirmative defense at trial when "the abortion was necessary to prevent the death of the pregnant woman." I.C. § 18-622(3)(a)(ii). But EMTALA requires providing stabilizing care not just when the patient faces death, but also when a patient faces serious health risks that may stop short of death, including permanent and irreversible health risks and impairment of bodily functions. 42 U.S.C. § 1395dd(e)(1)(A). As the Court explained in its decision, the pregnant patient may face grave risks to her health, "such as severe sepsis requiring limb amputation, uncontrollable uterine hemorrhage requiring hysterectomy, kidney failure requiring lifelong dialysis, or hypoxic brain injury" – but if the pregnant patient does not face death, the ban's affirmative defense offers no protection to a physician who performs an abortion. *August 24, 2022 Injunction*, pp. 2-3, 20, Dkt. 95. The Idaho Supreme Court confirmed as much when it noted that the Total Abortion Ban "does not include the broader 'medical emergency' exception for abortions present in [another Idaho abortion statute]." *Planned Parenthood*, 522 P.3d at 1196. The lack of such an exception, or even affirmative defense, is yet another reason that a conflict exists between EMTALA and § 18-622. *August 24, 2022 Injunction*, p. 20, Dkt. 95. Again, the subjective nature of the affirmative defense does not change this result, given that the *Planned Parenthood* decision did not expand the scope of the defense to include health-threatening conditions.

Likewise, the Idaho Supreme Court's narrowing the scope of the Total Abortion Ban to exclude ectopic and other "non-viable pregnancies" did not eliminate the conflict

between Idaho law and EMTALA. In *Planned Parenthood*, contrary to this Court's interpretation, the Idaho Supreme Court applied a "limiting judicial construction, consistent with apparent legislative intent" to conclude that § 18-622 does not "contemplate ectopic pregnancies" or other "non-viable pregnancies." *Id.* at 1202-1203. Both the State and the Legislature argue that this limiting construction eliminates any conflict between EMTALA and the Total Abortion Ban by pointing to the United States' examples involving ectopic pregnancies. *Leg.'s Supp. Br.*, p. 2, Dkt. 126, *Id. Supp. Br.*, pp. 7-8, Dkt. 127. But this Court's decision finding a conflict between § 18-622 and EMTALA did not rest on its conclusion that the ban encompasses ectopic pregnancies.

In its decision enjoining the Total Abortion Ban, this Court pointed to "many other complications," in addition to ectopic pregnancy, that "may place the patient's health in serious jeopardy or threaten bodily functions." *August 24, 2022 Injunction*, p. 8, Dkt. 95. As noted by the Court in its decision, "[s]ome examples include the following scenarios":

- A patient arrives at an emergency room with nausea and shortness of breath, leading to a diagnosis of preeclampsia. Preeclampsia can quickly progress to eclampsia, with the onset of seizures.

- A woman arrives at an emergency room with an infection after the amniotic sac surrounding the fetus has ruptured. That condition can progress into sepsis, at which point the patient's organs may fail.

- A patient arrives at the hospital with chest pain or shortness of breath, which leads the physician to discover elevated blood pressure or a blood clot.

- A patient arrives at the emergency room with vaginal bleeding caused by a placental abruption. Placental abruption is when the placenta partly or completely separates from the inner wall of the uterus. It can lead to catastrophic or uncontrollable bleeding. If the bleeding is uncontrollable, the patient may go into shock, which

> could result in organ disfunction such as kidney failure, and even
> cardiac arrest

*Id.* at 8-9 (citing *Fleisher Dec.* ¶¶ 15-22, Dkt. 17-3). In each of these scenarios, the stabilizing care EMTALA requires a physician to offer may include terminating a-still developing pregnancy covered under the Idaho Supreme Court's more limited definition of "abortion." Thus, the exclusion of ectopic and other nonviable pregnancies from the Total Abortion Ban does not negate the continuing need to enjoin the ban to the extent it still clearly conflicts with EMTALA.

In short, the Court finds no reason to reconsider its decision granting the United States' motion for a preliminary injunction, and the injunction stands. To contest the preliminary injunction, the State and the Legislature may appeal and seek remedy with the Ninth Circuit. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) ("So I'm going to deny your motion and let's let the law lords of the Ninth Circuit reach a judgment.").

## ORDER

**IT IS ORDERED that:**

1. The Idaho Legislature's Motion for Reconsideration of Order Granting Preliminary Injunction (Dkt. 97) is **DENIED**.

2. The State of Idaho's Motion to Reconsider Preliminary Injunction (Dkt. 101) is **DENIED.**

DATED: May 4, 2023

B. Lynn Winmill
U.S. District Court Judge