Daniel W. Bower, ISB #7204
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, Idaho 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

Monte Neil Stewart, ISB #8129
11000 Cherwell Court
Las Vegas, Nevada 89144
monteneilstewart@gmail.com

*Attorneys for Defendant-Intervenor Idaho Legislature*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:22-cv-00329-BLW |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF IDAHO LEGISLATURE'S MOTION TO STAY PRELIMINARY INJUNCTION [Dkt. 95] PENDING APPEAL** |
| v. | |
| THE STATE OF IDAHO, | |
| Defendant. | |

The Speaker of the Idaho House of Representatives Mike Moyle, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Seventh Legislature respectfully move this Court for a stay of its orders dated August 24, 2022 (Dkt. 95) (August Order) and May 4, 2023 (Dkt. 135) (May Order), pending disposition of an appeal to the United

States Court of Appeals for the Ninth Circuit and proceedings, if any, before the Supreme Court of the United States.

## DISCUSSION

This motion requests a stay of the preliminary injunction reaffirmed in the Court's August Order and May Order, pending appellate review.

Issuing a stay is appropriate when the moving party meets four conditions. (1) Has it made "a strong showing that [it] is likely to succeed on the merits"? (2) Will it be "irreparably injured absent a stay"? (3) Will a stay substantially injure other parties? (4) Where does the public interest lie? *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation omitted). The first two conditions—likelihood of prevailing on the merits and irreparable injury—"are the most critical." *Id.* at 434. We begin with irreparable harm. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam) (citation omitted).

## I.     The Idaho Legislature Will Suffer Irreparable Injury without a Stay.

The Legislature "will be irreparably injured" without a stay. *Nken*, 556 U.S. at 434. Supreme Court precedent teaches that "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (citing *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers)).

Here, the Idaho Legislature enacted Idaho Code § 18-622 (section 622) in anticipation of a decision by the Supreme Court abandoning the constitutional right to abortion. *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) is that decision. It held that "[t]he Constitution does not prohibit the citizens of each State from

regulating or prohibiting abortion," and, accordingly, "return[ed] that authority to the people and their elected representatives." *Id.* at 2284. The preliminary injunction here blocks that return of sovereign authority and thwarts Idaho's exercise of democratic self-government.

Continuing to enjoin section 622 is not harmless even if it issued months ago. Federal injunctions are the exception, not the norm. Every day that passes with an injunction in place inflicts irreparable harm on the Legislature.

Conversely, the government will not suffer irreparable harm from a stay pending appeal. Any harm from having to persuade an appellate panel that section 622 poses a genuine conflict with the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd (EMTALA) is hardly "irreparable" since the government "may yet pursue and vindicate its interests in the full course of this litigation." *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam), *cert. denied sub nom. Golden v. Washington*, 138 S. Ct. 448 (2017).[1]

## II.   The Idaho Legislature Has a Strong Likelihood of Prevailing on the Merits.

*Nken* requires "a strong showing" that the party requesting a stay is likely to prevail on the merits. 556 U.S. at 433. "[S]atisfaction of this factor is the irreducible minimum requirement to granting any equitable and extraordinary relief." *City and Cnty. of San Francisco v. U.S. Citizenship and Immigr. Servs.*, 944 F.3d 773, 789 (9th Cir.

---

[1] The government cannot cite third-party harm as the source of any supposed irreparable injury to itself. Third-party harm is an independent issue separately addressed in the third prong of the *Nken* standard. *See* 556 U.S. at 426; *accord Doe v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020).

3

2019). In this motion, "we will not address the merits in detail, but only as necessary to apply the *Nken* factors." *Doe*, 957 F.3d at 1062.

### A.   The Preliminary Injunction Rests on an Asserted Conflict Between Federal and Idaho law.

The May Order reaffirmed the preliminary injunction issued in August 2022. *See* May Order at 11. That injunction "restrains and enjoins the State of Idaho, including all of its officers, employees, and agents, from enforcing Idaho Code § 18-622(2)-(3) as applied to medical care required by [EMTALA], 42 U.S.C. § 1395dd." August Order at 38. Hence, the injunction prohibits Idaho officials from enforcing section 622 against the following:

> [A]ny medical provider or hospital based on their performance of conduct that (1) is defined as an "abortion" under Idaho Code § 18-604(1), but that is necessary to avoid (i) "placing the health of" a pregnant patient "in serious jeopardy"; (ii) a "serious impairment to bodily functions" of the pregnant patient; or (iii) a "serious dysfunction of any bodily organ or part" of the pregnant patient, pursuant to 42 U.S.C. § 1395dd(e)(1)(A)(i)–(iii).

*Id.* at 39.

The injunction was issued in the name of federal supremacy, the Court explained. "[T]he Supremacy Clause says state law must yield to federal law when it's impossible to comply with both," and section 622 "conflicts with" EMTALA. *Id.* at 3. Section 622 is enjoined "to the extent that statute conflicts with EMTALA-mandated care." *Id.* But the injunction and its rationale harbor multiple errors.

## B.    EMTALA Cannot Preempt Idaho's Regulation of Medicine.

The preliminary injunction stands on the district court's chief ruling that "there will always be a conflict between EMTALA and Idaho Code § 18-622" because "EMTALA obligates the treating physician to provide stabilizing treatment, including abortion care." Aug. Order at 18, 19. While acknowledging that EMTALA contains "an express preemption provision," the court concluded that section 622 fails both impossibility and obstacle preemption. *Id.* at 19 (citing *Draper v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993)). This approach to preemption fails to account for the Ninth Circuit's instruction to "construe [EMTALA's] preemptive effect as narrowly as possible." *Draper*, 9 F.3d at 1393. It also does not apply a controlling non-preemption provision of the Medicare Act governing EMTALA.

EMTALA says that "[t]he provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1359dd(f). Because the baseline is that EMTALA's provisions "do not preempt," *id.*, this is a "non-preemption provision." *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001). EMTALA has preemptive force only when state law "directly conflicts" with EMTALA's provisions. 42 U.S.C. § 1359dd(f). The adverb is to be taken seriously; an implied duty under EMTALA does not pose a direct conflict with state law. Yet the ostensible duty to provide an abortion arises not from the statutory text, but from EMTALA's generic requirement for a physician to "provide stabilizing treatment" for a patient with an emergency medical

condition." Aug. Order at 19. And an implied duty under EMTALA, if it exists at all, does not "directly" conflict with state law.

Even if one questioned this interpretation, a provision of the Medicare Act applies. There, Congress directed that "[n]othing in this subchapter [the Medicare Act] shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided." 42 U.S.C. § 1395. EMTALA is bound by this provision as part of the Medicare Act. EMTALA does not authorize the federal government "to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided." *Id.*; *accord Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995) ("Congress enacted the EMTALA not to improve the overall standard of medical care, but to ensure that hospitals do not refuse essential emergency care because of a patient's inability to pay."). Enjoining Idaho law violates this prohibition.

Given all this, EMTALA cannot preempt Idaho law on the basis of a judicially implied duty to perform abortions or, at all events, preempt Idaho standards of medical care—including the conditions when an abortion is lawful. Neglecting the limits of EMTALA's preemptive reach is an error that renders the preliminary injunction void.

## C.    EMTALA Does Not Mandate Abortion.

The preliminary injunction rests on this Court's conclusion that "EMTALA obligates the treating physician to provide stabilizing treatment, including abortion care." Aug. Order at 19. That conclusion is also wrong.

EMTALA says nothing about abortion. Neither do the regulations issued by the U.S. Department of Health and Human Services (HHS). *See* 42 C.F.R. § 489.24. The duty of Medicare-participating hospitals to perform abortions as emergency care arises, if at all, by implication. But a close reading of EMTALA shows that Congress intended hospitals to provide emergency medical care to a pregnant woman *and* her unborn child.

EMTALA obligates a Medicare-participating hospital to (1) perform "an appropriate medical screening examination" to see whether the patient has an emergency medical condition, 42 U.S.C. § 1395dd(a); (2) conduct a further medical exam along with "such treatment as may be required to stabilize the medical condition" or send the patient "to another medical facility," *id.* § 1395dd(b)(1); and (3) transfer a patient with an emergency medical condition that has not been stabilized only as provided and where "appropriate," *id.* § 1395dd(c)(1). A pregnant woman in labor with an unstabilized emergency medical condition may be transferred only if a physician certifies that "the medical benefits reasonably expected" from medical treatment at a different medical facility "outweigh the increased risks … to the unborn child from effecting the transfer." *Id.*

These duties arise when a patient has an "emergency medical condition," as the statute defines it. 42 U.S.C. § 1395dd(e)(1); *accord* 42 C.F.R. § 489.24 (HHS regulations). Under subsection (A), a pregnant woman has an "emergency medical condition" triggering the hospital's duty of care if "the absence of immediate medical attention" could put "the health of the woman or her unborn child in serious jeopardy."

42 U.S.C. § 1395dd(e)(1)(A) (punctuation altered). Congress thus directed Medicare-participating hospitals to give emergency medical treatment to preserve the health of "an unborn child" no less than to preserve the health of the mother. *Id.* Subsection (B) prescribes the necessary emergency care for "a pregnant woman who is having contractions." 42 U.S.C. § 1395dd(e)(1). She has an emergency medical condition if a physician determines that "(i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or (ii) that transfer may pose a threat to the health or safety of the woman or the unborn child." *Id.* § 1395dd(e)(1)(B). Transferring her to another facility is forbidden unless there is time enough for "a safe transfer … *before* delivery." *Id.* § 1395dd(e)(1)(B)(i) (emphasis added). This prohibition avoids the prospect of delivering a child during an ambulance ride or in a related circumstance away from the comfort and safety of a hospital. Then there is a catchall prohibition on any transfer that "may pose a threat to the health or safety of the woman or the unborn child." *Id.* § 1395dd(e)(1)(B)(ii). Even the prospect of such a threat bars a transfer. The hospital is thus obliged to consider not only the unborn child's life, but his or her "health or safety." *Id.*; *accord* 42 C.F.R. § 489.24 (same).

EMTALA is replete with evidence of Congress's commitment to protect both a pregnant woman and her unborn child. *See* 42 U.S.C. §§ 1395dd(e)(1)(A)(i) (defining "emergency medical condition," in part as a condition that "with respect to a pregnant woman, [puts] the health of the woman or her unborn child in serious jeopardy") (parenthesis removed); 1395dd(e)(1)(B)(ii) (defining as an "emergency medical

condition" for a "pregnant woman who is having contractions" as a situation where transferring her to another facility "may pose a threat to the health or safety of the woman or the unborn child"); 1395dd(c)(1)(A)(ii) (requiring a physician, as condition of transferring a pregnant woman in labor, to determine that "the medical benefits" of transfer "outweigh the increased risks … to the unborn child from effecting the transfer"); and 1395dd(c)(2)(A) (providing that an "appropriate transfer" is one that "minimizes the risks to … the health of the unborn child"). At no point does EMTALA pit the mother's health or safety against the child's. Only the preliminary injunction (and the government's complaint) does that.

### D.    The Court's Orders Misconstrue EMTALA in Other Ways.

*First*, it is error to disregard subsection (B) of EMTALA's definition of *emergency medical condition*, 42 U.S.C. § 1395dd(e)(1), as the August Order does. *See* Aug. Order at 4 n.1. EMTALA's directions regarding the proper treatment of "a pregnant woman who is having contractions" are plainly relevant to the government's claim challenging Idaho's restrictions on the availability of abortion. 42 U.S.C. § 1395dd(e)(1).

*Second*, it is a fundamental error to rewrite EMTALA's definition of *emergency medical condition* by removing references to the medical treatment of an unborn child. The injunction applies whenever section 622 would interfere with an abortion considered "necessary to avoid (i) 'placing the health of' a pregnant patient 'in serious jeopardy'; (ii) a 'serious impairment to bodily functions' of the pregnant patient; or (iii)

a 'serious dysfunction of any bodily organ or part' of the pregnant patient, pursuant to 42 U.S.C. § 1395dd(e)(1)(A)(i)–(iii)." Aug. Order at 38–39. Compare that quotation from EMTALA with the original:

> The term "emergency medical condition" means—(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman ~~or her unborn child~~) in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part ….

42 U.S.C. § 1395dd(e)(1)(A) (deletions added).

Altering EMTALA in this way contravenes the "well established principle of statutory construction that legislative enactments should not be construed to render their provisions mere surplusage." *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (cleaned up). Surplusage is exactly what the phrase "unborn child" becomes under the Court's rendering of EMTALA in the preliminary injunction. 42 U.S.C. § 1395dd(e)(1)(A). Removing those words is particularly objectionable in a case where the fate of such children in Idaho is at stake. Reading EMTALA as an abortion mandate is plausible only because references to the health and safety of unborn children have been erased.

*Third*, it is error to say that EMTALA "calls for stabilizing treatment, which of course may include abortion care." August Order at 21. The statute requires stabilizing treatment only when a patient with an emergency medical condition cannot be transferred to another facility, consistent with statutory criteria. *See* 42 U.S.C. §§

1395dd(b)(1); 1395dd(c). Even then, the definition of *stabilized* undermines the notion of requiring a hospital to perform an abortion for that purpose. After all, EMTALA provides that a pregnant woman is stabilized when "the woman has delivered (including the placenta)." *Id.* Delivering a child is the antithesis of aborting him.

In short, EMTALA requires Medicare-participating hospitals to deliver limited medical care for patients suffering from emergency medical conditions. But it distorts the statute to interpret it as an abortion mandate.

### E.   Idaho Code § 18-622 Does Not Conflict with EMTALA.

Abortion was a crime under Idaho law from territorial days until *Roe v. Wade*, 410 U.S. 113 (1973). *See Planned Parenthood Great Nw v. State*, __ P.3d __, 2022 WL 3335696, at *6 (Idaho Aug. 12, 2022). Section 622 restores Idaho law to its pre-*Roe* condition by classifying abortion generally as a crime.

Having said that, not all abortions are crimes under Idaho law. Recent amendments clarify that section 622 contains straightforward exceptions rather than affirmative defenses. *See* H.B. 374, 67th Leg., 1st Sess. (Idaho 2023) (eff. July 1, 2023). Section 622 now provides that an abortion to save a woman's life or (during the first trimester) to address a pregnancy from rape or incest "shall not be considered criminal abortions." Idaho Code §§ 18-622(2); 18-622(2)(b) (as amended). Section 622 should no longer "deter physicians from providing abortions in some emergency situations." August Order at 26. The May Order is silent about these amendments. But they enhance the Legislature's likelihood of prevailing on the merits since the Ninth Circuit will "apply the

law in effect at the time it renders its decision." *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974). That principle holds even if "the law has been changed pending appeal." 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (3d ed. 2023 update).

### F.   Construing EMTALA as an Abortion Mandate Raises Significant Constitutional Objections.

#### 1.   *Enjoining section 622 under the Supremacy Clause is error.*

The Supremacy Clause does not support the implied right of action on which the government's case rests. *See* Complaint at 15–16. In another case against Idaho, the Supreme Court held that the Supremacy Clause did not support a cause of action challenging the disparity between Idaho's Medicaid reimbursement rates and the alleged requirements of the Medicaid Act. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). Such a suit was barred, the Court explained, because the Supremacy Clause "creates a rule of decision," but not "any federal rights" or "a cause of action." *Id.* at 324–25. *Armstrong* forecloses the government from suing Idaho under the Supremacy Clause. Enjoining section 622 on that basis is error.

#### 2.   *Construing EMTALA as an abortion mandate violates the Major Questions Doctrine.*

The injunction also offends the major questions doctrine, which requires "Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). When the doctrine applies, "something more than a merely plausible textual basis for

the agency action is necessary." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022).

Three times since 2021, the Supreme Court has invoked the doctrine to decide major

challenges to executive power. *Id.* at 2616 (invalidating an EPA rule because "[a]

decision of such magnitude and consequence rests with Congress itself, or an agency

acting pursuant to a clear delegation from that representative body"); *NFIB v. OSHA*,

142 S. Ct. 661, 666 (2022) (setting aside an OSHA standard requiring large employers

to ensure that their employees were vaccinated against COVID-19); *Ala. Assoc. of

Realtors v. Dep't of Health and Hum. Servs.*, 141 S. Ct. 2485 (2021) (voiding a

nationwide eviction moratorium imposed by the Centers for Disease Control).

The May Order violates the major questions doctrine by accepting a reading of

EMTALA that grants the government unprecedented authority over abortion without

express congressional approval. The United States boldly claims that section 622

"conflicts with federal law" whenever Idaho's ban on criminal abortion prevents a

physician from acting on his or her determination "that an abortion is the necessary

stabilizing treatment for a patient's emergency medical treatment." Complaint at 10.

Since federal control over Idaho abortion law is a matter of "vast … political

significance," *Utility Air Regulatory Group*, 573 U.S. at 324, "more than a merely

plausible textual basis" must justify it. Like the CDC's eviction moratorium, the

government's reading of EMTALA seizes "a breathtaking amount of authority" by

purporting to supersede state abortion laws. *Ala. Assoc. of Realtors*, 141 S. Ct. at 2489.

The major questions doctrine condemns that undelegated exercise of executive power.

Nor does it matter that this suit was brought by the United States. Decisions invoking the major questions doctrine "have arisen from all corners of the administrative state." *West Virginia*, 142 S. Ct. at 2608. Although the major questions doctrine does not apply to actions of the President, *Mayes v. Biden*, 67 F.4th 921 (9th Cir. 2023), the complaint was brought by the United States in its own name—not by the President. There is no reason to believe that a rule to resolve the problem of "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted" somehow becomes inapt when like power is exercised by the executive branch as a whole. *West Virginia*, 142 S. Ct. at 2609.

### 3. As construed in the May Order, EMTALA exceeds Congress's authority under the Spending Clause.

Construing EMTALA as an abortion mandate also violates the Spending Clause. *See* U.S. CONST. art. I, § 8. The Constitution places "limits on Congress's power … to secure state compliance with federal objectives." *NFIB v. Sebelius*, 567 U.S. 519, 576 (2012). When "conditions take the form of threats to terminate other significant independent grants, the conditions are properly viewed as a means of pressuring the States to accept policy changes." *Id.* at 580. Retroactive conditions are also forbidden. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981).

*First*, the United States threatens to withhold all Medicare funding unless Idaho complies with the government's novel abortion mandate under EMTALA. That threat is evident from an insistence that "a hospital participating in Medicare must comply with EMTALA as a condition of receiving federal funds" and that "hospitals enter into written

14

agreements with the [HHS] Secretary confirming they will comply with EMTALA."
Mem. in Supp. of Mot. for a Prelim. Inj., Dkt. 17 (attachment #1) at 5. The government
further insists that EMTALA imposes duties for "all patients, not just for Medicare
beneficiaries." *Id.* at 19. Because section 622 governs all abortions performed in the state,
the government says, Idaho law will "disrupt the [Medicare] program and deprive the
United States of the benefit of its bargain by prohibiting Idaho hospitals from performing
EMTALA-mandated services, notwithstanding that hospitals' receipt of Medicare funds
is conditioned on them doing so." *Id.* On that view, Idaho hospitals must perform
abortions whenever the government says that EMTALA demands it; noncompliance
could mean the loss of Medicare funds.

Threatening to withhold all Medicare-related funding for hospitals in Idaho
unless they adhere to an expansive interpretation of EMTALA exceeds the
government's authority under the Spending Clause. Consider a similar dispute under the
Affordable Care Act. Multiple states complained that "Congress [was] coercing the
States to adopt the changes it wants by threatening to withhold all of a State's Medicaid
grants, unless the State accepts the new expanded funding and complies with the
conditions that come with it." *NFIB*, 567 U.S. at 575. Agreeing with that objection, the
Court held that the challenged provision of ACA amounted to "economic dragooning
that leaves the States with no real option but to acquiesce in the Medicaid expansion."
*Id.* at 582 (footnote omitted). Likewise here. The government's threat to withhold all

federal funding to any Idaho hospital found to violate EMTALA is not a policy nudge—but "a gun to the head." *NFIB*, 567 U.S. at 581.

*Second*, the United States has sprung this abortion mandate under EMTALA on Idaho long after it agreed to the conditions of participating in Medicare. Imposing its abortion mandate on Idaho hospitals retroactively is another reason to find that the government is violating the Spending Clause. *Pennhurst*, 451 U.S. at 25.

4. *Construing EMTALA as an abortion mandate violates the Tenth Amendment by trenching on Idaho's reserved powers.*

The preliminary injunction violates the State of Idaho's reserved powers over abortion. *Dobbs* held that that authority now belongs "to the people and their elected representatives." 142 S. Ct. at 2284. Idaho thus holds the authority to regulate abortion as a matter of federal constitutional law, but the preliminary injunction thwarts the exercise of that authority. Under the Court's orders, Idaho cannot carry out Idaho Code §§ 18-622(2) and (3), insofar as they collide with EMTALA's duty to protect a pregnant woman's health from "serious jeopardy," pose a "serious impairment to [her] bodily functions," or threaten to cause a "serious dysfunction of any bodily organ or part." Aug. Order at 15 (quoting 42 U.S.C. §§ 1395dd(e)(1)(A)(i)-(iii)). This order overrides the political, practical, and moral judgment of Idaho's elected officials—and the voters who supported them. *See* Idaho Code § 18-622.

Because the preliminary injunction lacks clear statutory authority to preempt section 622, enjoining Idaho law on that basis distorts our system of federalism. For now, *Dobbs* is the last word on the question of which level of government—federal or state—

16

holds the authority to regulate abortions performed in emergency rooms. If in the future Congress adopts a law plainly superseding state abortion laws, and if judicial review sustains that law as a valid exercise of the federal government's enumerated powers, then federal law could preempt state law to the extent they conflict. But until then, blocking Idaho law based on a misinterpretation of EMTALA seriously disrupts our federal system in violation of the Tenth Amendment.

### III.    Granting a Stay Serves the Public Interest and Aptly Balances the Equities.

*Nken* holds that the remaining factors—harm to the opposing party and the public interest—"merge when the Government is the opposing party." 556 U.S. at 435. These factors too weigh in favor of a stay.

The public interest is served by confining the government within its lawful bounds and "maintaining our constitutional structure" of powers divided among the three branches of the national government and between the federal government and the states. *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). *See also Sierra Club v. Trump*, 929 F.3d 670, 677 (9th Cir. 2019) (concluding that the public interest would be served by "respecting the Constitution's assignment of the power of the purse to Congress, and by deferring to Congress's understanding of the public interest").

Here, the public interest is served by acknowledging that section 622 comes to this Court with a "strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). As such, Idaho's statute "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Dobbs*, 142

S. Ct. at 2284. The United States has not tried to overcome this presumption, nor could it. *Dobbs* recognizes that under our federal system, the State of Idaho is free to strike its own balance between safeguarding the health and safety of its women and the lives of its unborn children. That same interest is reflected in EMTALA's requirement to furnish emergency medical care for both a pregnant woman and her unborn child. *See* 42 U.S.C. § 1395dd(e)(1). And it is consistent with Congress's non-preemption provisions in EMTALA, 42 U.S.C. § 1395dd(f), and the Medicare Act. 42 U.S.C. § 1395.

Presumably the United States will argue that granting a stay pending appeal would harm third parties. Even if true, the possibility of harm to third parties cannot obliterate the rest of the *Nken* factors; such harm is not among the "critical" factors of irreparable harm or the likelihood of success. Also, the government's concern for women who might face physical injury unless the injunction remains unchanged ignores mitigating factors to the contrary. EMTALA requires hospitals to provide emergency care for both a pregnant mother and her unborn child. *See* 42 U.S.C. § 1395dd(e)(1). Section 622 (as amended) flatly eliminates liability when an abortion is reasonably necessary to save a woman's life. *See* Idaho Code §§ 18-622(2); 18-622(2)(b) (as amended). And the Idaho Supreme Court has clarified that section 622 does not govern ectopic and other non-viable pregnancies. *See Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1202–03 (Idaho 2023). It cannot be true that "a showing of harm to the government [or the interests it prefers] commands the conclusion that the public interest weighs entirely in favor of

whichever outcome the government seeks." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020).

## CONCLUSION

For these reasons, the Legislature respectfully requests this Court to stay its orders dated August 24, 2022 and May 4, 2023, pending disposition of an appeal by the United States Court of Appeals for the Ninth Circuit and proceedings, if any, before the Supreme Court of the United States.

Dated this 3rd day of July, 2023.

MORRIS BOWER & HAWS PLLC

By:   */s/ Daniel W. Bower*
      Daniel W. Bower

*/s/ Monte Neil Stewart*
Monte Neil Stewart

*Attorneys for Intervenors-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2023, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| Brian David Netter | ☐ | U.S. Mail |
| DOJ-Civ | ☐ | Hand Delivered |
| Civil Division | ☐ | Facsimile: |
| 950 Pennsylvania Avenue NW | ☒ | ECF Email: brian.netter@usdoj.gov |
| Washington, D.C. 20530 | | |

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Daniel Schwei | ☐ | U.S. Mail |
| DOJ-Civ | ☐ | Hand Delivered |
| Federal Programs Branch | ☐ | Facsimile: |
| 1100 L Street, N.W., Ste. 11532 | ☒ | ECF Email: daniel.s.schwei@usdoj.gov |
| Washington, D.C. 20530 | | |

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Julie Straus Harris | ☐ | U.S. Mail |
| DOJ-Civ | ☐ | Hand Delivered |
| Civil Division, Federal Programs | ☐ | Facsimile: |
| Branch | ☒ | ECF Email: |
| 1100 L Street, N.W. | | julie.strausharris@usdoj.gov |
| Washington, D.C. 20530 | | |

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Lisa Newman | ☐ | U.S. Mail |
| U.S. Department of Justice | ☐ | Hand Delivered |
| Civil Division, Federal Programs | ☐ | Facsimile: |
| Branch | ☒ | ECF Email: lisa.n.newman@usdoj.gov |
| 1100 L Street, N.W. | | |
| Washington, D.C. 20005 | | |

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Anna Lynn Deffebach | ☐ | U.S. Mail |

DOJ-Civ
Civil Division, Federal Programs
Branch
1100 L Street, N.W., Ste. 12104
Washington, D.C. 20005

☐   Hand Delivered
☐   Facsimile:
☒   ECF Email:
anna.l.deffebach@usdoj.gov

*Attorneys for Plaintiff*

Christopher A. Eiswerth
DOJ-Civ
Federal Programs Branch
1100 L Street, N.W., Ste. 12310
Washington, D.C. 20005

☐   U.S. Mail
☐   Hand Delivered
☐   Facsimile:
☒   ECF Email:
      christopher.a.eiswerth@usdoj.gov

*Attorneys for Plaintiff*

Emily Nestler
DOJ-Civ
1100 L Street
Washington, D.C. 20005

☐   U.S. Mail
☐   Hand Delivered
☐   Facsimile:
☒   ECF Email: emily.b.nestler@usdoj.gov

*Attorneys for Plaintiff*

Lawrence G. Wasden
Attorney General

Steven L. Olsen
Chief of Civil Litigation
Megan A. Larrondo
Dayton P. Reed
Ingrid C. Batey
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010

☐   U.S. Mail
☐   Hand Delivered
☐   Facsimile: (208) 334-2400
☒   ECF Email: steven.olsen@ag.idaho.gov

      megan.larrondo@ag.idaho.gov
            dayton.reed@ag.idaho.gov
            ingrid.batey@ag.idaho.gov

*Attorneys for Defendant*

_/s/ Daniel W. Bower_

Daniel W. Bower