RAÚL R. LABRADOR
ATTORNEY GENERAL

Joshua N. Turner, ISB #12193
Chief of Constitutional Litigation
and Policy

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation
and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Lead Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        *Plaintiff,*<br>  v.<br><br>STATE OF IDAHO<br>        *Defendant.* | Case No. 1:22-cv-329-BLW<br><br>**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO MODIFY PRELIMINARY INJUNCTION [Dkt. 95]** |

**INTRODUCTION**

Much has changed since this Court preliminarily enjoined Idaho's Defense of Life Act in August 2022. Most significantly, the United States has walked back its interpretation of EMTALA so dramatically that a majority of the Supreme Court either believes there is no conflict whatsoever between the two laws or the conflict is so minimal that Idaho's Defense of Life Act ought to be "almost entirely intact." Dkt. 165-2 at 15 (Barrett, J., concurring); *see also* Dkt. 165-2 at 40 (Alito, J., dissenting). But it isn't because this Court has not had the opportunity to modify the scope of the preliminary injunction to catch up with all of the judicial admissions made by the United States. This motion provides that opportunity.

Modification is particularly needed because the United States is sowing confusion. Before the Supreme Court, it made "important" and "critical" judicial admissions that narrowed—dramatically and materially—the scope of any potential conflict between EMTALA and the Defense of Life Act. *Id.* at 12 (Barrett, J., concurring). But in the past few days, the United States has tried to walk away from those judicial admissions. It is warning hospitals of their supposed "obligation" to perform abortions for *all* emergency medical conditions. And it is telling healthcare providers that nothing has changed from its 2022 reinterpretation of EMTALA. The only reasonable interpretation of the United States' most recent communications regarding EMTALA simply cannot be squared with its judicial admissions. The State of Idaho, thus, respectfully asks this Court to modify the preliminary injunction to hold the United States to the official positions it has taken in this litigation. Those are binding judicial admissions, and the State and the public have a right to see them incorporated into the preliminary injunction.

**BACKGROUND**

In this case challenging Idaho's Defense of Life Act, Idaho Code § 18-622, the United States alleges that the Defense of Life Act violates the Supremacy Clause and is preempted as conflicting with the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. *See generally* Dkt. 1. The federal government brought its suit little more than three weeks before the Defense of Life Act was to take effect, and so the Court set an expedited hearing and the parties submitted expedited briefing. *See* Dkts. 13, 22. Just a day before the law was to take effect, the Court entered a preliminary injunction. Dkt. 95. It enjoined the State from enforcing the Defense of Life Act by

> initiating any criminal prosecution against, attempting to suspend or revoke the professional license of, or seeking to impose any other form of liability on, any medical provider or hospital based on their performance of conduct that (1) is defined as an "abortion" under Idaho Code § 18-604(1), but that is necessary to avoid (i) "placing the health of" a pregnant patient "in serious jeopardy"; (ii) a "serious impairment to bodily functions" of the pregnant patient; or (iii) a "serious dysfunction of any bodily organ or part" of the pregnant patient, pursuant to 42 U.S.C. § 1395dd(e)(1)(A)(i)-(iii).

*Id.* at 39.

Although the State moved the Court to reconsider its ruling, including after the Idaho Supreme Court issued *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 522 P.3d 1132 (2023), this Court denied reconsidering its injunction. Dkt. 135. After a Ninth Circuit appeal was taken, Dkt. 136, that court initially stayed the injunction, but the en banc Ninth Circuit vacated the stay and set the merits of the preliminary injunction appeal for argument before the en banc court. *See* Dkt. 156; *see also* Dkts. 147, 148, 153. Before the Ninth Circuit argument occurred, the Supreme Court of the United States stayed this Court's injunction and granted

certiorari before judgment. Dkt. 158. The Supreme Court, however, recently vacated its stay and dismissed its writs granting certiorari as improvidently granted. Dkt. 165-2.

Justice Barrett, joined by the Chief Justice and Justice Kavanaugh, explained that the Supreme Court took this action because of the evolution of the case after certiorari was granted. *Id.* at 13 (Barrett, J., concurring). The stay of this Court's injunction was no longer necessary because of "[t]he dramatic narrowing of the dispute—especially the Government's position on abortions to address mental health and conscience exemptions for healthcare providers." *Id.* at 14 (Barrett, J., concurring). Those judicial admissions were in addition to two other judicial admissions made by the federal government. *Id.* at 12 n.\* (Barrett, J., concurring).

Yet only days after the Supreme Court relied on the United States' important judicial admissions, the Department of Health and Human Services and the Centers for Medicare and Medicaid Services issued a letter to hospital and provider associations.[1] The July 2nd letter broadly proclaimed that "EMTALA requires that hospitals offer stabilizing treatment, including abortion care (or transfer, if appropriate) when necessary to stabilize the patient's emergency medical condition and ensure that the patient's condition does not materially worsen." The letter nowhere informs healthcare providers of the material and "critical" judicial admissions the United States made before the Supreme Court, namely, that (1) abortion is not stabilizing treatment for mental health conditions; (2) abortions need not be performed by doctors or hospitals who have conscience objections; (3) EMTALA requires delivery, not abortion, postviability, and (4) EMTALA only requires abortion "in an emergency acute

---

[1] Press Release, U.S. Dep't of Health and Hum. Servs., Biden-Harris Administration Reaffirms Commitment to EMTALA Enforcement (July 2, 2024) https://tinyurl.com/2p9c3vvs.

medical situation where a woman's health is in jeopardy if she does not receive an abortion then and there." Dkt. 165-2 at 12 n.* (Barrett, J., concurring) (cleaned up).

Given the United States' judicial admissions before the Supreme Court, and to avoid any confusion caused by the July 2nd HHS/CMS letter, the preliminary injunction, as it currently exists, should be modified and narrowed based on those judicial admissions. Two days ago, counsel for the State asked counsel for the United States if the United States would agree to stipulate to modify the scope of the injunction, but the United States declined earlier today. Counsel Decl. Ex. A. Counsel for the State then advised counsel for the United States that it intended to file this motion. *Id.*

## LEGAL STANDARD AND JURISDICTION

Federal Rule of Civil Procedure 62(d) permits this Court, while an appeal is pending, to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Where there has been a significant change in the facts or law, as shown by the party seeking the modification of a preliminary injunction, a court should revise the injunction. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). That is the case here.

## ARGUMENT

The United States made four, important judicial admissions before the Supreme Court:

1. Abortion is not stabilizing treatment for mental health conditions, period.
2. Doctors and hospitals do not have to perform or provide abortions to which they object on conscience grounds, period.
3. EMTALA requires delivery, not abortion, postviability.
4. EMTALA only requires abortions for emergency acute medical situations where the woman's health is in jeopardy if she does not receive an abortion "then and there."

Dkt. 165-2 at 12–13 and 12 n.* (Barrett, J., concurring (citing United States' brief before the Supreme Court and oral argument representations)). Those judicial admissions are not reflected in the Court's preliminary injunction. *See* Dkt. 95 at 39. And the recent HHS/CMS letter fails to acknowledge these judicial admissions and limitations on the scope of EMTALA. This Court should modify the preliminary injunction to accurately reflect the judicial admissions made by the United States and recognized by the Supreme Court.

There can be no doubt that the United States' judicial admissions are and were significant changes in the facts and law (or at least the fact of the United States' position on what the law is). The significance of them is inherent in the Supreme Court's decision to not consider the matter before judgment and to vacate its stay of this Court's injunction. Dkt. 165-2 at 1. Justice Barrett's concurrence discussed how the evolution of the case, specifically "the parties' litigation positions have rendered the scope of the dispute unclear, at best." *Id.* at 11 (Barrett, J., concurring). And the "dramatic narrowing of the dispute—especially the Government's position on abortions to address mental health and conscience exemptions for healthcare providers" impacted whether the Court's injunction should be stayed. *Id.* at 14 (Barrett, J., concurring).

These four judicial admissions bind the United States. Having made these judicial admissions, and having obtained a vacatur of the Supreme Court's stay of the injunction as a result, the United States is estopped from now denying them. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

The judicial admission regarding mental health is significant because it now materially narrows any alleged conflict between EMTALA and Idaho Code § 18-622. It is also new. In the last reasoned briefing before this Court, the United States' position was that the Defense of Life Act conflicted with EMTALA as to physicians who performed an abortion "when a patient's 'health' is in 'serious jeopardy.'" Dkt. 130 at 8. The United States did not limit its position to just physical health. Likewise, in the briefing before the Ninth Circuit, the United States was of the position that "EMTALA requires whatever treatment a provider concludes is medically necessary to stabilize *whatever* emergency condition is present." Answering Br. at 31, *United States of Am. v. Idaho*, Nos. 23-35440, 23-35450 (Sept. 8, 2023), Dkt. 35 (emphasis added). HHS has long considered an emergency medical condition to include mental health conditions. *E.g.,* 42 C.F.R. § 489.24(b) (defining emergency medical condition as "manifesting itself by acute symptoms of sufficient severity (including severe pain, *psychiatric disturbances* and/or symptoms of substances abuse) …."). (emphasis added). But now the United States has conceded that abortion is never a stabilizing treatment for mental health conditions, and so there can be no conflict between the Defense of Life Act and EMTALA as to pregnant women whose emergency conditions are mental health conditions. *See also* Dkt. 165-2 at 45–47 (Alito, J., dissenting). The Court's injunction currently covers situations where the medical condition is a mental health condition. *See* Dkt. 95 at 39.

The judicial admission regarding conscience protections is also significant. The United States has now taken the position that EMTALA "does not override" the conscience protections recognized in federal law, including the Weldon Amendment, Church Amendment, and Coats-Snowe Amendment (and presumably the Hyde Amendment too). Tr.

Oral Argument at 87–90, *Moyle v. United States,* 144 S. Ct. 2015 (2024) (Nos. 23-726, 23-727).[2] In fact, the United States acknowledged that federal conscience protections mean that EMTALA does not require abortions even if the entire medical staff of a hospital or the hospital itself objects to providing an abortion. *See id* at 90 (lines 11–18). Yet the United States' position, articulated clearest before the Ninth Circuit, was that those laws "do not apply on their own terms" and that those laws "reinforce[d]" that abortion was stabilizing treatment. Answering Br. at 56, *Idaho*, Nos. 23-35440, 23-35450, Dkt. 35. And according to the United States then, "EMTALA requires hospitals to offer abortion care when treating physicians deem it necessary." *Id.* at 28 (heading, emphasis removed). Moreover, to add even further confusion, Secretary Becerra at a recent House Committee on Education and the Workforce hearing, acknowledged physician conscience objections, but was adamant that hospitals lacked such protection and said, "If a healthcare facility is violating the law and not providing the service they're required to … they are not entitled to the resources."[3]

The preliminary injunction does not account for the United States' judicial admission that doctors *and* hospitals who have conscience objections are not required to provide abortions. *See* Dkt. 95 at 39. The United States cannot have its cake and eat it too—take one position before the Supreme Court and then take an opposing position in public statements to hospitals and doctors. Modifying the injunction is necessary to ensure the regulated

---

[2] A copy of the transcript is also attached as Exhibit B to the Declaration of Counsel.

[3] House Committee on Education & the Workforce, *Examining the Policies and Priorities of the Department of Health and Human Services,* at 02:02:08 YouTube (May 15, 2024), https://www.youtube.com/watch?v=TlMqoOE0YQ0.

community is protected, Idaho's law is enjoined no further than necessary, and the United States is held to its judicial admissions.

The judicial admission that abortions are not stabilizing care for postviability emergency medical conditions is also new and significant. Before the Ninth Circuit, the United States clearly articulated its position that the physician chooses "whatever treatment" the physician believes is medically necessary. Answering Br. at 31, *Idaho*, Nos. 23-35440, 23-35450, Dkt. 35 (emphasis added). It has now scrapped that position in part to say that stabilizing treatment for an emergency medical condition that arises postviability is delivery not abortion. *See also* Dkt. 162-5 at 40 (Alito, J., dissenting). Thus, there can now be no conflict between EMTALA and the Defense of Life Act postviability, because the United States has conceded that abortion is *not* required by EMTALA—indeed, delivery is required by EMTALA. The preliminary injunction does not reflect that understanding of EMTALA. *See* Dkt. 95 at 39.

And finally, the "acute medical situation" judicial admission is a significant and new position taken by the United States. For example, in its reply briefing before this Court, the United States' position was that EMTALA had a "much broader definition of when treatment is required, *i.e.,* for an emergency medical condition *that could result* in 'placing the health of the individual . . . in serious jeopardy." Dkt. 86 at 17 (emphasis added). The United States then defended that position again, arguing that EMTALA may require abortions "when harm is probable." Dkt. 106 at 24 (citing Dkt. 95 at 21). Its new position is that "EMTALA requires abortion only in an 'emergency acute medical situation,' where a woman's health is in jeopardy if she does not receive an abortion 'then and there.'" Dkt. 165-2 at 12 n.* (Barrett, J., concurring (citing Tr. of Oral Arg. 79–80)); *see also* Dkt. 165-2 at 41–42 (Alito, J., dissenting).

And yet the preliminary injunction does not reflect EMTALA's "temporal limitation" that stabilizing treatment is only required for an "acute medical situation" that demands treatment "then and there." Dkt. 95 at 39. By permitting abortions to merely "avoid" an emergency medical condition, the preliminary injunction is unjustifiably broader and permits prophylactic abortions for distant conditions that the United States now admits EMTALA does not require.[4]

## CONCLUSION

Each of the United States' four judicial admissions represent significant changes of fact or law. The preliminary injunction cannot remain unchanged in light of those admissions. Any potential conflict between the Defense of Life Act and EMTALA is now dramatically narrower, and the preliminary injunction should reflect that. But it doesn't. It should be modified to account for these judicial admissions.

DATED:  July 12, 2024.

                                STATE OF IDAHO
                                OFFICE OF THE ATTORNEY GENERAL


                                By:  /s/ *Brian V. Church*
                                    BRIAN V. CHURCH
                                    Lead Deputy Attorney General

---

[4] The United States did not contest, before the Supreme Court, that the injunction currently exceeds EMTALA's scope. *See* Reply Br. at 24, *Idaho v. United States of Am.,* No. 23-727, 2024 WL 1657762 (2024); *see also* Opening Br. at 41, *Idaho v. United States of Am.*, No. 23-727, 2024 WL 752335 (2024) (explaining how the Court's "necessary to avoid an emergency medical condition" standard did not align with EMTALA's definition of stabilizing treatment).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Brian David Netter
brian.netter@usdoj.gov
Daniel Schwei
daniel.s.schwei@usdoj.gov
Julie Straus Harris
julie.strausharris@usdoj.gov
Lisa Newman
lisa.n.newman@usdoj.gov
Anna Lynn Deffebach
anna.l.deffebach@usdoj.gov
Christopher A. Eiswerth
chrisopher.a.eiswerth@usdoj.gov

Emily Nestler
emily.b.nestler@usdoj.gov
*Attorneys for Plaintiff United States of America*

Monte Neil Stewart
monteneilstewart@gmail.com
Daniel W. Bower
dbower@morrisbowerhaws.com
*Attorney for Speaker of the Idaho House of Representatives Scott Bedke, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Sixth Idaho Legislature*

Laura Etlinger
laura.etlinger@ag.ny.gov
*Attorney for Amici States California, New York, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersy, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington and Washington, D.C*

Jay Alan Sekulow
seulow@aclj.org
Olivia F. Summers
osummers@aclj.org
Laura B. Hernandez
lhernandey@aclj.org
Jordan A. Sekulow
jordansekulow@aclj.org
Stuart J. Roth
stuartroth1@gmail.com
*Attorneys for Amicus Curiae
American Center for Law & Justice*

Wendy Olson
wendy.olson@stoel.com
Jacob M. Roth
jroth@jonesday.com
Amanda K. Rice
arice@jonesday.com
Charlotte H. Taylor
ctaylor@jonesday.com
*Attorneys for Amici Curiae, The American Hospital Association and The Association of American Medical Colleges*

James A. Barta
james.barta@atg.in.gov
*Attorney for Amici States Indiana, Alabama, Arkansas, Kentucky, Mississippi, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming*

Shannon Rose Seldon
srselden@debevoise.com
Adam B. Aukland-Peck
aaukland-peck@debevoise.com
Leah S. Martin
lmartin@debevoise.com
Jeffrey B. Dubner
jdubner@democracyforward.org
John T. Lewis
john.t.lewis.iii@usdoj.gov
Maher Mahmood
mmahmood@democracyforward.org
*Attorneys for Amici Curiae American College of Emergency Physicians, Idaho Chapter of the American College of Emergency Physicians, American College of Obstetricians and Gynecologists, Society for Maternal-Fetal Medicine, National Medical Association, National Hispanic Medical Association, American Academy of Pediatrics, American Academy of Family Physicians, American Public Health Association, and American Medical Association*

      /s/ *Brian V. Church*
BRIAN V. CHURCH
Lead Deputy Attorney General