BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIAN D. NETTER
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
DANIEL SCHWEI
Special Counsel
JULIE STRAUS HARRIS
EMILY NESTLER
Assistant Branch Directors
**LISA NEWMAN (TX Bar No. 24107878)**
ANNA DEFFEBACH
CHRISTOPHER A. EISWERTH
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-5578
lisa.n.newman@usdoj.gov

*Counsel for Plaintiff*
United States of America

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF IDAHO, <br><br> Defendant. | Case No. 1:22-cv-329-BLW <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO MODIFY PRELIMINARY INJUNCTION (Dkt. 166)** |

## TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

BACKGROUND................................................................................................................2

ARGUMENT................................................................................................................3

I.     The Court Lacks Jurisdiction to Grant Idaho's Requested Relief. ................................4

II.    Idaho's Request is Contrary to the Supreme Court's Decision to Reinstate the
       Injunction Without Modification................................................................................6

III.   Idaho Has Not Established a Basis for Modifying the Injunction. ................................8

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

### Cases

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
557 F. Supp. 3d 1 (D.D.C. 2021) ........................................................................... 7

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075–98 (9th Cir. 2021) ......................................................................... 9

*Briggs v. Pennsylvania R.R.*,
334 U.S. 304 (1948) ............................................................................................. 7

*Centennial Broad., LLC v. Burns*,
433 F. Supp. 2d 730 (W.D. Va. 2006) ........................................................ 8, 10, 11, 12

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ............................................................................................. 4

*Favia v. Ind. Univ. of Pa.*,
7 F.3d 332 (3d Cir. 1993) ................................................................................... 8

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ............................................................................................... 4

*H&R Block Tax Servs. LLC v. Kutzman*,
No. CV 10-03-M-DWM, 2010 WL 11534361 (D. Mont. Feb. 23, 2010) ......................... 8

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ......................................................................... 7, 8, 9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ............................................................................... 8

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
686 F.2d 731 (9th Cir. 1982) ............................................................................... 5

*Moyle v. United States*,
144 S. Ct. 540 (Jan. 5, 2024) ............................................................................... 2

*Moyle v. United States*,
144 S. Ct. 2015 (2024) ................................................................................. 1, 3, 6, 7

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ........................................................................... 4, 5

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
204 F.3d 867 (9th Cir. 2000) ............................................................................. 1, 2

*Sharp v. Weston*,
233 F.3d 1166 (9th Cir. 2000) ............................................................................. 8

*Small v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local 200,*
    611 F.3d 483 (9th Cir. 2010) ................................................................ 4, 6

*United States Reply Br. at 25, Texas v. Becerra, No. 23-10246,*
    89 F.4th 529 (5th Cir. 2024) ...................................................... 12, 13, 14

*United States v. Asarco Inc.,*
    430 F.3d 972 (9th Cir. 2005) ....................................................................... 9

*Volkswagenwerk A. G. v. Falzon,*
    461 U.S. 1303 (1983) .................................................................................. 7

**Statutes**

42 U.S.C. § 1385dd ......................................................................................... 14

42 U.S.C. § 1395dd ...................................................................................... 1, 9

Idaho Code § 18-622 ............................................................................... 1, 9, 10

**Rules**

Federal Rule of Civil Procedure 62 ................................................................. 4

**Other Authorities**

House Committee on Education & the Workforce, *Examining the Policies and Priorities of the Department of Health and Human Services,* YouTube (May 15, 2024),
    https://www.youtube.com/watch?v=TlMqoOE0YQ0 ................................... 12

## INTRODUCTION

The Court's preliminary injunction bars Idaho from criminalizing or punishing medical providers under Idaho Code § 18-622 for providing women with stabilizing emergency health care guaranteed by the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd. *See* Dkt. 95 at 38-39.[1]  About a year after that injunction was issued, Idaho appealed the preliminary-injunction order and sought relief from the Ninth Circuit and the Supreme Court.  Although the Supreme Court initially stayed this Court's preliminary injunction, after full briefing and oral argument, the Supreme Court reinstated the injunction without modification.  *See Moyle v. United States*, 144 S. Ct. 2015, 2015 (2024). The Supreme Court's judgment issued on July 31, 2024.  Dkt. 170.

Idaho's appeal remains pending before the Ninth Circuit.  Yet the State now asks this Court to do what the Supreme Court did not: modify the terms of the injunction.  *See* Emergency Mot. to Modify Prelim. Inj., Dkt. 166-1 (Motion); *see also* Legislature's Joinder, Dkt. 169.   The State's emergency motion to modify the preliminary injunction is improper for three reasons.  *First*, as this Court has recognized, *see* Order, Dkt. 168 at 1-2, "[a] district court lacks jurisdiction to modify an injunction once it has been appealed" except in limited circumstances not present here, *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000).  *Second*, even if the Court had jurisdiction to make substantive changes to the injunction, Idaho's request is inconsistent both with the Supreme Court's order in *Moyle*, which reinstated the injunction without modification, and with the stated expectation of six Justices that the reinstated injunction would continue to govern during further lower court proceedings.  *Third*, Idaho has not established any justification for modifying the preliminary injunction based on statements that the United States made to the Supreme Court. Throughout the course of the case, the United States has responded to Idaho's new (and forfeited) arguments made for the first time in the Ninth Circuit and the Supreme Court.  But nothing about the United States' responses conflicts with or undermines the government's arguments in this Court, let alone the appropriateness of the preliminary injunction, which straightforwardly prohibits the State

---

[1] Citations to documents filed in this case reference the page numbers in the upper righthand corner of each page generated by the ECF system.

from penalizing individuals who provide emergency stabilizing care that is required by EMTALA. Idaho has offered no basis for this Court to modify the terms of the injunction that the Supreme Court reinstated in full. Idaho's motion should be denied.

## BACKGROUND

On August 24, 2022, this Court preliminarily enjoined Idaho from enforcing its abortion ban "as applied to medical care required by the Emergency Medical Treatment and Labor Act (EMTALA)." Dkt. 95 at 38. The Court specifically enjoined Idaho from:

> initiating any criminal prosecution against, attempting to suspend or revoke the professional license of, or seeking to impose any other form of liability on, any medical provider or hospital based on their performance of conduct that (1) is defined as an "abortion" under Idaho Code § 18-604(1), but that is necessary to avoid (i) "placing the health of" a pregnant patient "in serious jeopardy"; (ii) a "serious impairment to bodily functions" of the pregnant patient; or (iii) a "serious dysfunction of any bodily organ or part" of the pregnant patient, pursuant to 42 U.S.C. § 1395dd(e)(1)(A)(i)-(iii).

*Id.* at 39.

Idaho filed a notice of appeal ten months later, *see* Dkts. 101, 137, and the Idaho Legislature sought a stay of the injunction pending appeal. *See* Dkt. 140. A panel of the Ninth Circuit granted the Legislature's stay motion. *See* Sept. 28, 2023 Order, *Idaho v. United States*, Case Nos. 23-35440, 23-35450 (9th Cir. 2023). The Ninth Circuit, sitting *en banc*, vacated that stay and restored this Court's injunction when it elected to rehear the matter *en banc*. *See* Oct. 10, 2023 Order & Nov. 13, 2023 Order, Case Nos. 23-35440, 23-35450 (9th Cir. 2023).

Idaho and the Legislature then sought a stay of the preliminary injunction from the Supreme Court, and also sought a writ of certiorari before judgment. *See* Idaho Legislature's Application for Stay of the Preliminary Injunction, *Moyle v. United States*, Nos. 23-726, 23-727 (U.S. Nov. 20, 2023); State of Idaho's Emergency Application For a Stay Pending Appeal, *Idaho v. United States*, No. 23A-470 (U.S. Nov. 20, 2023); Reply Br. for Legislature, *Moyle v. United States*, No. 23-726, No. 23-727 (U.S. Apr. 11, 2024). The Supreme Court stayed the preliminary injunction and granted certiorari before judgment. *See Moyle v. United States*, 144 S. Ct. 540 (Jan. 5, 2024). Then, at the end of June, after briefing and oral argument, the Supreme Court dismissed the writs of certiorari as improvidently

granted and—as particularly relevant here—vacated the stay of the preliminary injunction it had issued when it granted certiorari. *See Moyle*, 144 S. Ct. 2015 (per curiam). The Supreme Court's order thus reinstated the preliminary injunction—without modification—as it was originally entered by this Court nearly two years ago.

In separate opinions concurring in the vacatur of the stay, six Justices confirmed that this Court's preliminary injunction would be reinstated, and expressed their expectation that the injunction would continue to govern during further proceedings. *See id.* at 2018 (Kagan, J., concurring) ("Today's ruling thus puts the case back where it belongs, and with the preliminary injunction in place."); *id.* at 2022-2023 (Barrett, J., concurring) ("I also agree that we should vacate the stay," leaving "the preliminary injunction in place"); *id.* at 2023 (Jackson, J., concurring in part and dissenting in part) ("I concur in the Court's *per curiam* decision to lift its stay, which should not have been entered in the first place.").

Nevertheless, several weeks later, Idaho filed before this Court an emergency motion to modify the preliminary injunction. Idaho contends that the United States made four "judicial admissions before the Supreme Court" that necessitate changes in the preliminary injunction "to avoid any confusion." Mot. at 5. Idaho characterizes those admissions as:

1. Doctors and hospitals can object to performing or providing pregnancy termination "on conscience grounds."
2. Pregnancy termination "is not stabilizing treatment" for mental health emergencies.
3. "EMTALA requires delivery, not abortion, postviability."
4. EMTALA requires offering pregnancy termination as stabilizing treatment only for "emergency acute medical situations."

*Id.* The Legislature has joined the motion. *See* Dkt. 169. In setting a briefing schedule on the motion, this Court sought to ensure that the parties would have sufficient time to fully brief the issues, including "whether the Court has jurisdiction to modify the injunction as requested by the State." Order, Dkt. 168 at 1.

## ARGUMENT

This Court should deny Idaho's motion for three reasons. First, Idaho itself characterizes its motion as seeking a substantive modification of the Court's injunction, which this Court lacks

jurisdiction to grant.  Second, Idaho's request is fundamentally inconsistent with the Supreme Court's determination in *Moyle* to reinstate this Court's preliminary injunction, without modification, pending further proceedings in this case.  And third, even if considered on its own terms, Idaho's motion fails to identify any basis to modify the preliminary injunction, given that the existing injunction is entirely consistent with all of the United States' arguments to the Supreme Court.  This Court should therefore deny Idaho's motion to modify the injunction.

## I.      The Court Lacks Jurisdiction to Grant Idaho's Requested Relief.

Idaho asks the Court to "dramatically narrow[]" the preliminary injunction to account for what it deems to be "significant changes of fact or law."  Mot. at 10.  There is no basis to do so.  *See infra* Part III.  Even taking Idaho's request at face value, however, Idaho's appeal of the preliminary-injunction order remains pending before the Ninth Circuit, this Court lacks jurisdiction to "materially alter the status of the case on appeal."  *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).  Accordingly, Idaho's motion should be denied.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *accord Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023).  This rule is intended to "promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously."  *Nat. Res. Def. Council*, 242 F.3d at 1166.  Federal Rule of Civil Procedure 62(d) creates an exception, allowing modifications of injunctions to "secure the opposing party's rights," but that rule "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case,'" *Nat. Res. Def. Council*, 242 F.3d at 1166; *accord Small v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 495 (9th Cir. 2010) (District courts "only 'retain[] jurisdiction during the pendency of an appeal to act to preserve the status quo.'").  A district court cannot "materially alter the status of the case on appeal," *Nat. Res. Def. Council*, 242 F.3d at 1166, "remov[e]" a "prohibition" in the injunction, *Small*, 611 F.3d at 495, or "adjudicate anew

the merits of the case," *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982).

Contrary to these well-established principles, Idaho's motion urges the Court to change the status quo by, as Idaho describes it, making substantive changes to the preliminary injunction. Specifically, Idaho's motion requests that the injunction be "modified and narrowed" based on supposed judicial admissions, Mot. at 5, which Idaho argues should result in a "dramatically narrower" preliminary injunction, *id.* at 10. The very premise of Idaho's motion thus confirms this Court's lack of jurisdiction over its request, because "dramatically narrow[ing]" the injunction would materially alter the status of the case on appeal—particularly when the proper scope of the injunction is one of the very issues Idaho is pursuing on appeal. *Compare* Mot. at 9 & n.4 (arguing that the preliminary injunction is "unjustifiably broader" than what EMTALA requires), *with* Idaho Br. at 35-38, *United States v. Idaho*, Nos. 23-35440, 23-35450 (9th Cir. filed Aug. 7, 2023) (same). Entertaining Idaho's motion would thus result in "having the same issues before two courts simultaneously," the very outcome that this jurisdictional rule was intended to avoid. *Nat. Res. Def. Council*, 242 F.3d at 1166.

Further, Idaho's discussion of the supposed judicial admissions makes plain that it is asking for substantive changes to the scope of the injunction. For instance, Idaho asks the Court to modify the preliminary injunction, which governs when the State may prosecute or penalize physicians for providing EMTALA required health care, to additionally address when physicians or hospitals may assert conscience objections to participating in certain procedures. *See* Mot. at 7-9. But the injunction enjoins *Idaho* from imposing criminal liability on physicians and hospitals who *are* providing emergency medical care required under EMTALA. A doctor or hospital who refuses to provide such care on conscience grounds would not be exposed to such criminal liability in the first instance. Expanding the reach of the injunction to other parties who are not before the Court and other issues that the Court's injunction did not address would "materially alter" the case on appeal.

The same is true with respect to the other alleged "judicial admissions," at least according to Idaho, because each one has in its view resulted in an overbroad injunction. *See* Mot. at 6, 8, 9. The United States disagrees with that assertion. *See* Part III *infra*. But if Idaho were correct, this Court

would lack jurisdiction to "remov[e]" or narrow the injunction's "prohibition[s]," *Small*, 611 F.3d at 495, and thus the very premise of Idaho's motion confirms the Court's lack of jurisdiction to grant Idaho's requested relief.

## II. Idaho's Request is Contrary to the Supreme Court's Decision to Reinstate the Injunction Without Modification.

On June 27, 2024, after full briefing and oral argument, the Supreme Court reinstated this Court's preliminary injunction without modification. Approximately two weeks later, Idaho filed its emergency motion asking this Court to modify that reinstated injunction, citing the very same arguments that the Supreme Court had just considered before vacating the stay of the injunction. The Supreme Court was plainly aware of and considered the United States' statements, and Idaho's motion is thus contrary to the Supreme Court's determination to reinstate this Court's injunction without modification.

Although there was no majority opinion in *Moyle*, the Court's *per curiam* order vacated the stay of the preliminary injunction previously entered by the Supreme Court. *See* 144 S. Ct. at 2015. That had the immediate effect of reinstating the preliminary injunction entered by this Court. *Id.* Moreover, in separate opinions concurring in the vacatur of the stay, six Justices expressly confirmed that the injunction would be reinstated and would continue to govern during further proceedings. *See id.* at 2018 (Kagan, J., concurring) ("Today's ruling thus puts the case back where it belongs, and with the preliminary injunction in place."); *id.* at 2022-2023 (Barrett, J., concurring) ("I also agree that we should vacate the stay," leaving "the preliminary injunction in place"); *id.* at 2023 (Jackson, J., concurring in part and dissenting in part) ("I concur in the Court's *per curiam* decision to lift its stay, which should not have been entered in the first place.").

Notwithstanding the Supreme Court's order reinstating the injunction, Idaho now asks this Court to countermand that decision by modifying the injunction. In particular, Idaho believes that the United States' arguments to the Supreme Court require a "dramatically narrower" preliminary injunction. Mot. at 10. But if the Supreme Court believed a modification to the injunction was necessary based on statements the United States made in its briefs or at oral argument, the Court could

have modified the stay or directed changes be made to the injunction on remand. But it did not do so, and this Court should reject Idaho's invitation to do what the Supreme Court itself declined to do when faced with the same statements and arguments that Idaho's motion invokes here.

The conflict between Idaho's motion and the Supreme Court's judgment is particularly stark given that Idaho's request to modify the injunction is governed by the same factors the Supreme Court already weighed when it reinstated the injunction. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (The inquiry into whether an injunction should be modified or dissolved is "guided by the same criteria that govern the issuance of a preliminary injunction."). In dissolving the stay of the injunction, the Court necessarily concluded that Idaho had failed to demonstrate irreparable harm sufficient to warrant relief from the injunction during further proceedings in this case. *See Moyle*, 144 S. Ct. at 2022 (Barrett, J., concurring) (concluding that "it appears that the injunction will not stop Idaho from enforcing its law in the vast majority of circumstances," which "has undercut the conclusion that Idaho would suffer irreparable harm under the preliminary injunction"); *id.* at 2017 (Kagan, J., concurring) ("Idaho's arguments about EMTALA do not justify . . . emergency relief" from the injunction).

Idaho's motion necessarily asks this Court to make a different determination than the Supreme Court as to the propriety of maintaining the preliminary injunction during further proceedings. But it would "flaunt basic principles of vertical stare decisis," *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 8 (D.D.C. 2021), for this Court to reach a different conclusion about the same factors, based on the same statements, that the Supreme Court already considered. *Cf. id.* at 10 ("[T]his Court lacks the 'power or authority' to reach the opposite conclusion of [a higher court] on the same issues, in the same emergency posture, and in the same case." (quoting *Briggs v. Pennsylvania R.R.*, 334 U.S. 304, 306 (1948)); *Volkswagenwerk A. G. v. Falzon*, 461 U.S. 1303 (1983) (O'Connor, J., in chambers). And Idaho does not claim that the equities have meaningfully shifted in the two weeks since the Supreme Court reinstated the preliminary injunction and Idaho filed its emergency request. To the contrary, Idaho has submitted no evidence alongside its motion, and instead asserts the same equitable interests that it did before the Supreme Court. *Compare* Dkt. 167 at 1 (invoking "the serious

interests at stake" and "the continuing injury to the State"), *with* Idaho Br. at 39, *Idaho v. United States*, No. 23-727 (U.S. Feb. 20, 2024) ("The harm to the State is substantial.  A State's 'inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.'") (internal citations omitted).

The Supreme Court already weighed the statements and arguments on which Idaho's motion relies, as well as the equitable factors presented by the parties, and concluded that the existing preliminary injunction should govern while the case proceeds.  This Court should not disturb that assessment and should deny Idaho's request to modify the injunction that the Supreme Court just reinstated.

**III.     Idaho Has Not Established a Basis for Modifying the Injunction.**

Even assuming that the Court has jurisdiction to consider Idaho's request, and even assuming that modifying the injunction would not be inconsistent with the Supreme Court's order reinstating that injunction, Idaho still has not established a basis for the relief it seeks.  Idaho cites statements that the United States made to the Supreme Court, but those statements are consistent with the injunction entered by this Court and with the United States' position throughout the litigation.

Idaho "bears the burden of establishing that a significant change in facts or law" warrants modifying the preliminary injunction.  *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).  "If this showing has been made," *Karnoski*, 926 F.3d at 1198, the Court must then determine whether the change "warrants revision or dissolution of the injunction," *Sharp*, 233 F.3d at 1170.  "A motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order," *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 338 (3d Cir. 1993), and this Court should not modify the injunction based on new arguments that "could reasonably have been raised earlier," *H&R Block Tax Servs. LLC v. Kutzman*, No. CV 10-03-M-DWM, 2010 WL 11534361, at *3 (D. Mont. Feb. 23, 2010) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)) (internal quotation marks omitted).  *See also Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 734 (W.D. Va. 2006) ("[T]he district court should not consider arguments 'that could have been raised at the time the preliminary injunction was issued.'") (citation omitted).

Additionally, the inquiry into whether an injunction should be modified or dissolved is "guided

by the same criteria that govern the issuance of a preliminary injunction." *Karnoski*, 926 F.3d at 1198. Any modification "must be 'suitably tailored to resolve the problems created by the changed factual or legal conditions,'" and the moving party must also show that the "changed conditions" would make compliance with the injunction "more onerous, unworkable, or detrimental to the public interest." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097–98 (9th Cir. 2021) (quoting *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005)).

Idaho contends that this Court should modify the preliminary injunction based on various statements made by the United States to the Supreme Court. Mot. at 5. Idaho repeatedly (and incorrectly) characterizes the United States as having taken "inconsistent" and "conflicting" positions in this litigation about the care required by EMTALA. *Id.* at 7-10. That assertion cannot be squared with the record here and certainly does not constitute a "significant change in the facts and law" warranting modification of the injunction.

As an initial matter, Idaho points to nothing in the preliminary injunction itself that conflicts with any of the United States' arguments regarding EMTALA. The injunction straightforwardly prohibits Idaho from enforcing its abortion ban with respect to "medical care required by the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd." Dkt. 95 at 38. Nor can the State point to anything in the record before this Court suggesting that the preliminary injunction should be understood in a way that conflicts with the United States' arguments to the Supreme Court. Notably, the State never raised before this Court any of the four arguments on which it now claims the United States has shifted position—*i.e.*, mental health emergencies; conscience provisions; post-viability delivery; and the temporal nature of an emergency medical condition. The State cannot demonstrate that there has been a significant change warranting modification of the injunction, especially because the supposed "change" is that the United States responded to new (and forfeited) arguments that Idaho raised for the first time on appeal.

The United States has responded to Idaho's new arguments, including by explaining its understanding of EMTALA and the conflict posed by Idaho Code § 18-622. But none of that qualifies for judicial estoppel, let alone modification of the injunction here. As explained below, the United

States has been consistent throughout this litigation about the care required by EMTALA.  None of the representations to which Idaho points conflict with or are inconsistent with previous arguments made by the United States and considered by this Court in rendering its preliminary injunction. Because Idaho has failed to demonstrate that there has been a significant change in the facts of this case sufficient to warrant modifying the just-reinstated injunction, this Court should deny the motion.

      **1.** Idaho first argues that, by acknowledging that pregnancy termination is not stabilizing treatment under EMTALA for a mental health emergency, the United States took a "new" position "regarding mental health" that "materially narrows any alleged conflict between EMTALA" and Idaho law.  Mot. at 7.  Because the United States supposedly did not previously "limit its position to just physical health," Idaho erroneously asserts that "the Court's injunction currently covers situations where the medical condition is a mental health condition."  *Id.*  Idaho is incorrect.  The injunction is limited to "medical care required by [EMTALA]"; because the stabilizing treatment under EMTALA for an acute mental-health emergency is not pregnancy termination (as the United States has explained), the Court's injunction has nothing to say about such situations.   Moreover, the United States has been consistent about what EMTALA requires: when a patient presents with an emergency medical condition endangering her life or health, and the *medically necessary stabilizing treatment* for such condition involves termination of pregnancy, a hospital must offer such treatment.  At no point in the proceedings before this Court did Idaho raise a concern that, under the United States' requested injunction, stabilizing treatment for a psychiatric emergency would include pregnancy termination.  *Cf. Centennial Broad.*, 433 F. Supp. 2d at 734 (rejecting a request to dissolve injunction based on an argument that "could have been raised at the time the preliminary injunction was issued").  Nor has Idaho identified any instance where the United States took the position that pregnancy termination would be considered stabilizing treatment under EMTALA for an emergency mental health condition, *see* Dkt. 17-1 at 15-16.  This Court did not address any such conditions in its opinion, and nothing in this Court's injunction or opinion suggests that EMTALA requires that pregnancy termination be offered to stabilize an emergency mental health condition.

      Indeed, Idaho did not voice this "significant" concern until nearly a year and a half after the

injunction had been entered, Mot. at 7, first referencing it in passing in its reply brief seeking a stay from the Supreme Court. *See* Reply in Support of Emergency Application For a Stay Pending Appeal at 6, *Idaho v. United States*, No. 23A-470 (U.S. Dec. 1, 2023) ("[T]he United States' theory would require emergency-room doctors to perform abortions whenever they think (or the United States says in hindsight) those abortions are necessary to avoid 'serious jeopardy' to the mental health of the mother" which would have the effect of "turn[ing] emergency rooms into federal abortion enclaves."). Once Idaho raised that argument, the United States explained that, although an "emergency medical condition" for a pregnant patient "can include grave mental health emergencies," stabilizing treatment under EMTALA for such a condition "could never lead to pregnancy termination because that is not the accepted standard of practice to treat any mental health emergency." Transcript of Oral Argument at 77-78, *Idaho v. United States*, No. 23-727 (Apr. 24, 2024); *see also* Br. for the Respondent at 26 n. 5, *Moyle v. United States*, Nos. 23-726, 23-727 (U.S. Mar. 21, 2024) ("Idaho neither identifies a single case where an emergency-room physician terminated a pregnancy to stabilize a mental-health condition, nor cites any clinical standard identifying termination as necessary stabilizing care in such circumstances."). Nothing suggests that "the Court's injunction currently covers situations where the medical condition is a mental health condition," Mot. At 7, and the injunction need not be modified on that basis.

**2.** Idaho next contends that the preliminary injunction should be modified to account for the United States' position that conscience protections exist under federal law. *Id.* at 7. As discussed above, however, the availability of conscience protections for individual doctors or hospitals that do *not* want to provide care has nothing to do with this Court's injunction, which governs whether Idaho is permitted to penalize those who *do* provide such care. And again, Idaho cannot point to anything in the injunction or the record before this Court suggesting a conflict between the injunction and the United States' arguments.

Idaho attempts to manufacture a conflict by incorrectly asserting that the United States had discussed conscience protections in its brief before the Ninth Circuit. *See* Mot. at 8 (characterizing the United States as arguing that conscience protections "'do not apply on their own terms' and that those

laws 'reinforced' that abortion was stabilizing treatment").  But the quote Idaho references was not discussing the ability of individual doctors or hospitals to invoke those conscience protections, much less taking the position that conscience protections are inapplicable under EMTALA.  Rather, the United States was rebutting Idaho's argument that EMTALA categorically excludes pregnancy termination from the definition of "stabilizing treatment" by pointing to other statutory provisions (including appropriations riders and legislative history of conscience protections) to demonstrate Congress's understanding that "stabilizing treatment under EMTALA can encompass abortion."  U.S. Br. at 56, *United States v. Idaho*, Nos. 23-35440, 23-35450 (9th Cir. filed Sept. 8, 2023).

Only later, before the Supreme Court, did Idaho begin raising arguments about the interaction between EMTALA and various federal conscience protections.  *Cf. Centennial Broad.*, 433 F. Supp. 2d at 734 (rejecting a request to dissolve injunction based on an argument that "could have been raised at the time the preliminary injunction was issued").  Once raised, the United States made clear that "EMTALA does not override" federal conscience protections, Tr. at 87-89, a position that the United States has maintained, including in separate litigation, *see, e.g.*, Br. for the Fed. Petitioners at 23 n. 3, *FDA v. All. For Hippocratic Med.*, Nos. 23-235, 23-236 (Jan. 23, 2024); United States Reply Br. at 25, *Texas v. Becerra*, No. 23-10246, 89 F.4th 529 (5th Cir. 2024).

Idaho also claims that HHS Secretary Becerra's recent congressional testimony, specifically his response to a question about conscience protections for gender affirming care, has caused confusion. Mot. at 8; *see id.* at 1 (quoting House Committee on Education & the Workforce, *Examining the Policies and Priorities of the Department of Health and Human Services,* at 02:02:08 YouTube (May 15, 2024), https://www.youtube.com/watch?v=TlMqoOE0YQ0).  But Idaho does not submit any factual evidence demonstrating any such confusion, or even explain how confusion could reasonably result. To begin, Idaho does not explain how a response to a question about gender affirming care is relevant to an injunction barring Idaho from enforcing its law to prohibit doctors from providing emergency medical care to pregnant women.  Nor does Idaho explain how anything in the testimony is inconsistent with the United States' arguments about conscience protections.  The Secretary was not asked about federal conscience protections at the hospital level and, contrary to Idaho's assertion, did

not state that hospitals "lacked" conscience protections or otherwise take "an opposing position in public statements to hospitals and doctors."  Mot. at 8.

Idaho focuses on the Secretary's statement that "[i]f a healthcare facility is violating the law and not providing the service they're required to . . .  they are not entitled to the resources," *id.*, but that statement does not say the Federal Government would withdraw resources from hospitals *in the face of federal conscience objections*; instead, it talks only about a hospital that is "not providing the service they're required to."  And here, the United States has been explicit that there are "federal conscience protections that apply at the entity level to hospitals."  Tr. of Oral Arg. at 88.  The Secretary did not take a position that is inconsistent with that statement, and Idaho's assertion that the United States is attempting to "have its cake and eat it too" falls flat.  Mot. at 8.

**3.**  The Court also need not modify the injunction to account for stabilizing care post fetal viability.  This issue was not raised in this Court or before the Ninth Circuit, which wholly undermines Idaho's attempt to characterize general language in a brief as opining on this question, *see* Mot. at 9 ("Before the Ninth Circuit, the United States clearly articulated its position that the physician chooses 'whatever treatment' the physician believes is medically necessary." (quoting U.S. Br. at 31, *United States v. Idaho*, Nos. 23-35440, 23-35450, (9th Cir. filed Sept. 8, 2023)).  The phrase "whatever treatment" was used in the context of refuting the argument that, because pregnancy termination is not specifically mentioned in EMTALA, it must be excluded; that portion of the brief cannot reasonably be understood as implying that EMTALA allows physicians to offer "whatever treatment" they want, even if such treatment would violate medically accepted standards of care or flout EMTALA's definitional provisions.  The United States therefore cannot have "scrapped" a position it never took.  Mot. at 9.  And when this issue was presented for the first time, the United States stated: "If the condition arises later in pregnancy and the fetus can be delivered safely, Idaho law does not conflict with EMTALA."  Br. for the United States at 26 n. 5, *Moyle v. United States*, Nos. 23-726, 23-727 (U.S. Mar. 21, 2024); *see also* Tr. of Oral Arg. at 75-76.  Nothing in this Court's injunction is inconsistent with the United States' position; nor is this position a significant change in the facts such that a modification of the injunction is necessary.

**4.** Finally, Idaho is also wrong that the United States has a "new position" about the temporal limits of EMTALA's stabilization requirement, such that pregnancy termination may be offered only to treat an "acute medical situation" that demands treatment "then and there." Mot. at 9-10 (citing Barrett, J., concurring (citing Tr. of Oral Arg. 79-80)). The relevant passage from oral argument before the Supreme Court makes plain that the United States was expounding upon the relevant statutory standard under EMTALA:

> So the statutory standard itself is focused on immediate health risks. It's looking at the possibility that if the woman doesn't get treatment then and there, what will happen, what will reasonably be expected to occur is that her organs could start shutting down or she might lose her fertility or have other serious health consequences.

Tr. of Oral Arg. at 79; *see also id.* at 80 ("The instruction that Congress gave in EMTALA is you need to stabilize to guard against those very serious health risks."). That is the same statutory standard this Court interpreted, *see* Dkt. 95 at 20, and Idaho points to no inconsistency among the United States' arguments, the injunction, or this Court's understanding of EMTALA.

The State goes on to contend that the injunction is broader than EMTALA because it allegedly "permits prophylactic abortions for distant conditions that the United States now admits EMTALA does not require." Mot. at 10. But again, this Court's injunction tracks the language of EMTALA, and it is consistent with the position the United States has taken throughout this litigation that pregnancy termination may be stabilizing treatment if the patient's health or life would be at serious risk without "immediate medical attention." 42 U.S.C. § 1385dd(e)(1)(A). Idaho has not demonstrated that the United States' position—which also tracks the language of EMTALA—constitutes any change—much less a change that would justify modifying the injunction. Moreover, Idaho is actively litigating this same issue on appeal, which further highlights the inappropriateness of Idaho's request to this Court for relief. *See* Br. for Petitioner at 36-37, *Idaho v. United States*, No. 23-727 (U.S. Feb. 20, 2024) (arguing that EMTALA's standard is "much narrower than[] the necessary-to-avoid an emergency medical condition standard adopted by the district court").

For all these reasons, Idaho has not demonstrated any significant changes of fact or law warranting a modification of the injunction. Even if this Court had jurisdiction and the authority to

deviate from the Supreme Court's judgment reinstating the injunction, this Court should therefore still deny Idaho's request for a modification.

## CONCLUSION

For the foregoing reasons, the Court should deny Idaho's emergency motion to modify the preliminary injunction.

Dated: August 2, 2024                                        Respectfully submitted,

SAMUEL R. BAGENSTOS                              BRIAN M. BOYNTON
General Counsel                                              Principal Deputy Assistant Attorney General

JOEL McELVAIN                                            BRIAN D. NETTER
Acting Deputy General Counsel                       Deputy Assistant Attorney General

DAVID HOSKINS                                          ALEXANDER K. HAAS
Supervisory Litigation Attorney                       Director, Federal Programs Branch

JESSICA BOWMAN                                        DANIEL SCHWEI
MELISSA HART                                              Special Counsel
CATHERINE L. HESS
Attorneys
U.S. Department of Health & Human Servs.
200 Independence Ave., SW                          JULIE STRAUS HARRIS
Washington, DC 20201                                  EMILY NESTLER
                                                                    Assistant Directors

                                                                    */s/ Lisa Newman*
                                                                    LISA NEWMAN (TX Bar No. 24107878)
                                                                    ANNA DEFFEBACH
                                                                    CHRISTOPHER A. EISWERTH
                                                                    Trial Attorneys
                                                                    U.S. Department of Justice
                                                                    Civil Division, Federal Programs Branch
                                                                    1100 L Street, N.W.
                                                                    Washington, D.C. 20005
                                                                    Tel: (202) 514-5578
                                                                    lisa.n.newman@usdoj.gov

                                                                    *Counsel for Plaintiff*