RAÚL R. LABRADOR
ATTORNEY GENERAL

Joshua N. Turner, ISB #12193
Chief of Constitutional Litigation
and Policy

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation
and Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Lead Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-cv-329-BLW |
| *Plaintiff,* | |
| *v.* | **REPLY IN SUPPORT OF MOTION TO MODIFY PRELIMINARY INJUNCTION [Dkt. 95]** |
| STATE OF IDAHO | |
| *Defendant.* | |

## INTRODUCTION

This Court enjoined the enforcement of Idaho's Defense of Life Act in August of 2022, citing a conflict between that law and EMTALA. At the time, the parties diverged vastly in their interpretations of the respective statutes. The scope of this Court's August 2022 preliminary injunction reflected the parties' diverging views. Now, after two years of litigation—wherein the Defense of Life Act was amended; the parties fleshed out their interpretations; and the United States made significant judicial admissions before the Supreme Court of the United States—that divergence has narrowed. Accordingly, this Court should modify the scope of its preliminary injunction to reflect the narrowing.

The United States contradictorily argues against this request. On the one hand, the United States claims its significant judicial admissions before the Supreme Court were "consistent with the injunction entered by this Court and with the United States' position throughout the litigation." Dkt. 171 at 12. But on the other hand, the United States argues the State's request to narrow the Court's preliminary injunction, based on those same judicial admissions, is a request to substantively change the preliminary injunction in a way that would "materially alter the status of the case on appeal." *Id.* at 9. But how would mere clarification of a position the United States has purportedly held throughout this case result in a "substantive change" to the preliminary injunction? The answer is that the State is *not* seeking to alter the status quo. Rather, the State is asking the Court to invoke its Rule 62(d) authority to modify and clarify its preliminary injunction in light of new facts, namely the United States' "critical" judicial admissions. *See* Fed. R. Civ. P. 62(d); *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2002); *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir.

1994) (holding modification of preliminary injunction during pendency of appeal was proper to clarify injunction and supervise compliance in light of new facts).

## ARGUMENT

The State asks this Court to modify and clarify the scope of its August 2022 preliminary injunction to reflect the status quo, which has developed over the two years of this case's ongoing litigation. The State's request to narrow the Court's preliminary injunction based on the United States' judicial admissions is not an attempt to re-hash disputed points. It is a recognition that there are fewer disputed points than the parties previously supposed. The practical effect of this narrowing should be to modify and clarify the Court's August 2022 injunction to ensure it is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *See Meinhold*, 34 F.3d at 1480 (cleaned up).

First, this Court has jurisdiction under Rule 62(d) to provide the requested clarification based on the United States' judicial admissions at the Supreme Court. Second, such clarification is in no way inconsistent with the Supreme Court's vacatur of its emergency stay. And third, the narrowed scope of EMTALA's potential conflict with the Defense of Life Act, if any, based on the judicial admissions before the Supreme Court, undoubtedly provides a basis for this Court to modify its preliminary injunction.

## I. The State's Requested Clarification Would Not "Materially Alter" the Status of the Case on Appeal

This Court has jurisdiction to modify the injunction under Rule 62. The default rule is that a district court is divested of jurisdiction once a notice of appeal is filed. *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). "This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having

the same issues before two courts simultaneously." *Id.* (citing *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983)). There is, however, an exception to this default rule, granting district courts the authority to "suspend, modify, restore, or grant an injunction during the pendency of the appeal." *Id.* (quoting Fed. R. Civ. P. 62(c) pre-2018 (reorganized, no change in meaning)). A district court's authority to modify a preliminary injunction pending appeal stems from its authority to supervise compliance with and further clarify the scope of its original injunction. *Meinhold*, 34 F.3d at 1480 n.14. Where a district court modifies a preliminary injunction to clarify vague provisions, the status of the case is not materially altered on appeal as long as the "core questions before the appellate panel" remain unchanged. *Nat. Res.*, 242 F.3d at 1167.

  ***The Core Questions Before the Appellate Court Would Not Change.*** The State's request to modify the Court's preliminary injunction in order to clarify the scope of that injunction would not materially alter the status of this case on appeal. Indeed, the State merely requests clarification of the necessarily vague provisions within the Court's original injunction. For example, the Court ordered that medical providers are permitted to perform abortions when they are "necessary to avoid placing the health of a pregnant patient in serious jeopardy." Dkt. 95 at 39 (cleaned up). Under this provision, does the health of the pregnant patient include her "mental health?" The answer, as the United States conceded at oral arguments before the Supreme Court, is no. As another example, when the Court decided that EMTALA requires doctors to perform "necessary" abortions pursuant to EMTALA, *id.*, does this requirement override not only the Defense of Life Act, but also the conscience objections of

doctors and hospitals? Again, as the United States conceded at oral arguments before the Supreme Court, the answer is no.

As is plainly demonstrated by these examples, the clarifications the State is requesting would not materially alter the status of this case on appeal. The core questions of the case would still be squarely in front of the appellate court, unaltered. The State vehemently challenges the proposition that EMTALA ever requires abortions as stabilizing care. *See* Dkt. 165-2 at 11 (Barrett, J., concurring). This core question remains untouched by the State's requested clarifications. There are undoubtedly disagreements about the scope of the conflict—or whether there even is a conflict—between the Defense of Life Act and EMTALA. The Defense of Life Act provides for an exception for medical providers to perform abortions necessary to save the life of the mother. EMTALA, as the United States interprets it, requires stabilizing care, including abortions, to prevent "serious jeopardy" to the mother's health. *See id.* at 14. This core question regarding the scope of the perceived conflict between the two laws remains. Simply clarifying that the scope is narrower than the parties had previously supposed does not change the core question on appeal.

The State's request for clarification is not novel or extraordinary. Indeed, district courts are empowered by Rule 62(d) to make such modifications. *See Nat. Res.,* 242 F.3d at 1166-67. In the *Natural Resources* case, cited by the United States, the Ninth Circuit reviewed a district court's modification of its preliminary injunction that clarified a vague requirement in the injunction. The Ninth Circuit affirmed the district court's authority to make such a modification even though the case was pending appeal, finding that the clarification did not materially alter the case on appeal. The court further explained that even with the district

court's clarification of the vague requirement, the core issue of the requirement itself remained unchanged on appeal, such that a full reversal on appeal would effectively reverse the modification. *See id.* The same holds in this case, where the core question of whether EMTALA requires abortions as stabilizing care, notwithstanding state law, remains intact. Were the Court to clarify this requirement in its preliminary injunction, it would not substantially change the core issue of the requirement itself.

**Clarity is in Everyone's Interest.** As noted above, the United States simultaneously claims that the State's requested clarifications would materially alter the case, *and also* that those clarifications reflect the position the United States has held throughout this case. It does not make sense for the United States to oppose these modifications, if doing so would more clearly express a position the United States has always held. Indeed, clarity would serve the interests of the United States, the State's employees and officers who are enjoined, and the medical professionals who must operate in this environment. Clarifying the Court's preliminary injunction makes sense given where the parties are in the case. Providing clarification as to the scope of the Court's two-year-old preliminary injunction, after it has recently been put back into effect, should be welcomed by all stakeholders.

At bottom, much of the litigation in this case has centered on clarifying what the Defense of Life Act prohibits, what EMTALA requires, and under what circumstances, if any, the two conflict. In August 2022, the parties had widely diverging answers to these questions (or at least that was the perception). Clarifying the fact that the parties actually agree on many of these answers is important, not only for narrowing the field of litigation, but also for the

actors on the ground. Modifying the injunction to offer clarity for those actors is in everyone's interest.

**The Requested Clarification Would Not Frustrate Judicial Economy.** The United States argues that the State's requested clarifications would frustrate judicial economy by having the same issues before two courts simultaneously. Dkt. 171 at 9. As explained above, a modification that clarifies the scope of the preliminary injunction is supported by the Federal Rules of Civil Procedure and Ninth Circuit precedent. But more to the point, the United States' argument about frustrating judicial economy misapprehends the nature of the State's request. The State is not asking this Court to decide disputed issues. Nor is the State asking the Court to estop the United States in future litigation from denying its judicial admissions before the Supreme Court. Those judicial admissions are already part of this case and all future litigation. The admissions have already narrowed the field of litigation in the case, and judicial economy will thereby be served. What the State is requesting is for this Court to update its preliminary injunction in order to reflect the narrowing of the case. In other words, the State is requesting that this Court's preliminary injunction "catch up" with the status quo of this case.

## II.   Modifying the Injunction to Acknowledge the United States' Judicial Admissions Does Not Contravene the Supreme Court's Decision

The United States asserts that the State's current request to modify the Court's preliminary injunction was already: (1) presented to the Supreme Court and (2) rejected. Dkt. 171 at 10. Its argument fails on both counts.

In its application for a stay to the Supreme Court, the State requested full relief from this Court's preliminary injunction. On that application, the Supreme Court granted certiorari. Nothing about the case at that point suggested there were areas of broad agreement between

the parties, as the United States' judicial admissions in oral arguments subsequently revealed. Indeed, "[i]n its stay application, Idaho argued that the Government's interpretation of EMTALA would render Idaho's Act virtually unenforceable. As Idaho understood it, the Government's theory would allow physicians to perform abortions whenever necessary to avoid 'serious jeopardy' to the mother's *mental* health." Dkt. 165-2 at 11 (Barrett, J. concurring) (citation omitted) (emphasis in original). At oral arguments, the United States clearly disavowed this interpretation of EMTALA. But it was not because the State was arguing for that disavowal. The State argued that the preliminary injunction should be dissolved *because* the United States, prior to this judicial admission, held such a broad interpretation. In other words, the issue of *modifying* the preliminary injunction, in this way or in any other way, was not presented to the Supreme Court.

Similarly, the Supreme Court in no way rejected the State's request to modify the preliminary injunction when the Court vacated its stay. As noted above, the Supreme Court could not have rejected the State's arguments requesting *modification* of the preliminary injunction because the State never made any such arguments to the Supreme Court in the first place. More fundamentally, vacating its stay of the preliminary injunction was a logical extension of the Supreme Court's decision to dismiss the writ of certiorari as improvidently granted. The effect of this dismissal would be the same as if the Supreme Court had denied certiorari in the first place. It suggests nothing about what argument the Supreme Court considered or rejected at all.

The Supreme Court simply decided there were no issues appropriate for its resolution at this stage of the case. It made no sense, then, for the Supreme Court to modify, or even

consider modifying, the preliminary injunction. Suggesting that the Supreme Court actually considered and rejected arguments to narrow the scope of the preliminary injunction here greatly exaggerates the import of the Supreme Court's vacatur. Likewise, the claim that the State is now seeking to "countermand" the Supreme Court's June 27 per curiam order has no foundation whatsoever.

## III.    The Supreme Court's Dismissal Shows Positions Have Changed

Finally, the United States argues that there is no basis for modifying the Court's preliminary injunction because nothing has changed. *See* Dkt. 171 at 12-18. The United States then spends *seven* pages arguing that its judicial admissions before the Supreme Court are "consistent with . . . the United States' position throughout the litigation." *Id.* at 12. It doth protest too much. One need only look at the Supreme Court's actions in this case to see the narrowed issues and changed positions.

The Supreme Court initially granted certiorari in this case to consider the Court's preliminary injunction based on the assessment that the State "would suffer irreparable harm under the injunction." Dkt. 165-2 at 10 (Barrett, J. concurring). The Supreme Court thereafter dismissed the writ as improvidently granted and vacated its stay of the preliminary injunction. And at least in the opinion of three Justices, the parties' positions had changed such that "even with the preliminary injunction in place, Idaho's ability to enforce its law remains almost entirely intact." *Id.* at 15. One needn't fully adopt the view in Justice Barrett's concurrence to appreciate the point. The Supreme Court granted a writ of certiorari. After briefings and arguments, the Supreme Court dismissed the writ as improvidently granted. A "significant change in facts or law" most assuredly occurred. The United States' shift in position, as

evidenced by its judicial admissions before the Supreme Court, presents new judicial facts that warrant modifying this Court's preliminary injunction. And as explained above, this Court has authority to make such modifications to clarify its injunction. *Meinhold*, 34 F.3d at 1480 n.14 (holding modification of preliminary injunction during pendency of appeal was proper to clarify injunction and supervise compliance in light of new facts).

The State is not attempting to re-litigate its arguments at the Supreme Court or any other court. That's why the State reached out to counsel for the United States in an attempt to stipulate to the clarifications the State now requests. The facts have indeed changed, but they are facts both sides agree upon. As Justice Barrett noted in her concurrence, "based on the parties' representations, it appears that the injunction will not stop Idaho from enforcing its law in the vast majority of circumstances." Dkt. 165-2 at 14 The State simply seeks to give practical effect to those representations, and have the injunction catch up to the status quo.

## CONCLUSION

The State requests that this Court modify its preliminary injunction based on the United States' four judicial admissions. Those admissions reflect the narrowing of the conflict, if any, between the Defense of Life Act and EMTALA. Such narrowing warrants this Court's clarification of its original injunction. And such clarification is within the Court's jurisdiction.

DATED:  August 16, 2024.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By*:*   /s/ *Brian V. Church*
BRIAN V. CHURCH
Lead Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Brian David Netter
brian.netter@usdoj.gov
Daniel Schwei
daniel.s.schwei@usdoj.gov
Julie Straus Harris
julie.strausharris@usdoj.gov
Lisa Newman
lisa.n.newman@usdoj.gov
Anna Lynn Deffebach
anna.l.deffebach@usdoj.gov
Christopher A. Eiswerth
chrisopher.a.eiswerth@usdoj.gov

Emily Nestler
emily.b.nestler@usdoj.gov
*Attorneys for Plaintiff United States of America*

Monte Neil Stewart
monteneilstewart@gmail.com
Daniel W. Bower
dbower@morrisbowerhaws.com
*Attorney for Speaker of the Idaho House of Representatives Scott Bedke, Idaho Senate President Pro Tempore Chuck Winder, and the Sixty-Sixth Idaho Legislature*

Laura Etlinger
laura.etlinger@ag.ny.gov
*Attorney for Amici States California, New York, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington and Washington, D.C.*

Jay Alan Sekulow
seulow@aclj.org
Olivia F. Summers
osummers@aclj.org
Laura B. Hernandez
lhernandey@aclj.org
Jordan A. Sekulow
jordansekulow@aclj.org
Stuart J. Roth
stuartroth1@gmail.com
*Attorneys for Amicus Curiae American Center for Law & Justice*

Wendy Olson
wendy.olson@stoel.com
Jacob M. Roth
jroth@jonesday.com
Amanda K. Rice
arice@jonesday.com
Charlotte H. Taylor
ctaylor@jonesday.com
*Attorneys for Amici Curiae, The American Hospital Association and The Association of American Medical Colleges*

James A. Barta
james.barta@atg.in.gov
*Attorney for Amici States Indiana, Alabama, Arkansas, Kentucky, Mississippi, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming*

REPLY IN SUPPORT OF MOTION
TO MODIFY PRELIMINARY INJUNCTION [Dkt. 95] — 10

Shannon Rose Seldon
srselden@debevoise.com
Adam B. Aukland-Peck
aaukland-peck@debevoise.com
Leah S. Martin
lmartin@debevoise.com
Jeffrey B. Dubner
jdubner@democracyforward.org
John T. Lewis
john.t.lewis.iii@usdoj.gov
Maher Mahmood
mmahmood@democracyforward.org
*Attorneys for Amici Curiae American College of Emergency Physicians, Idaho Chapter of the American College of Emergency Physicians, American College of Obstetricians and Gynecologists, Society for Maternal-Fetal Medicine, National Medical Association, National Hispanic Medical Association, American Academy of Pediatrics, American Academy of Family Physicians, American Public Health Association, and American Medical Association*

   /s/ *Brian V. Church*   
BRIAN V. CHURCH
Lead Deputy Attorney General